Isaac M. Pachulski (Cal. State Bar No. 62337 – Admitted Pro Hac Vice)
Frank A. Merola (Cal. State Bar No. 136934 - Admitted Pro Hac Vice)
Andrew M. Parlen (Cal. State Bar No. 230429 - Admitted Pro Hac Vice)
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600 Telephone
(310) 228-5788 Facsimile

Jeffrey M. Tillotson, P.C.
State Bar No. 20039200
John Volney
State Bar No. 24003118
LYNN TILLOTSON & PINKER, L.L.P.
750 North St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Counsel to Creditors Gary M. Kornman and
GMK Family Holdings, LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **THE HERITAGE ORGANIZATION, L.L.C.** | ) | **Case No. 04-35574-BJH-11** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| _____ | ) | |

---

## OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE" [Docket 1090]

---

_____
OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 1

415931v5

TO THE HONORABLE BARBARA J. HOUSER
UNITED STATES BANKRUPTCY JUDGE:

Gary M. Kornman and GMK Family Holdings, LLC ("GMK")
(collectively, "Kornman Parties"), creditors of The Heritage Organization, LLC (the
"Debtor") hereby object ("Objection") to confirmation of the "Trustee's and Client
Claimants' First Amended Joint Plan of Liquidation Under Chapter 11 of the United
States Bankruptcy Code" (Docket No. 1090) (the "Plan").[1]  This Objection is based on the
following grounds:

A.      The Plan does not comply with "applicable provisions" of the
Bankruptcy Code (the "Code"), as required by section 1129(a)(2) of the Code, because
the Plan violates the classification requirements of section 1122 of the Code.  The Plan
improperly classifies non-priority unsecured claims that are "substantially similar" into
three separate classes in violation of section 1122, in an improper effort to gerrymander
an impaired consenting class for purposes of attempting to comply with section
1129(a)(10) of the Code.

B.      The Plan also fails to comply with "applicable provisions" of the
Code as required by section 1129(a)(2) because the Plan includes provisions for the
settlement of claims against the estate that are not authorized by section 1123 of the
Code.  Section 1123 sets forth the mandatory and permissible provisions of a chapter 11
plan.  Although section 1123 expressly permits a plan to provide for the settlement of
claims *by* a bankruptcy estate, there is no comparable provision that authorizes a plan to
provide for a settlement of claims a*gainst* the estate, which the Plan purports to do.

C.      The Trustee, a Plan Proponent, has not complied with "applicable
provisions of this title," as required by section 1129(a)(3) of the Code, because the

---

[1]      Capitalized terms used herein that are not otherwise defined have the meanings set forth in
the Plan.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 2

415931v5

Trustee violated section 1125(b) of the Code by soliciting the Client Claimants' acceptance of the Plan prior to the transmittal to them and other creditors of a disclosure statement approved by this Court.  For the same reason, the Plan has been proposed by "means forbidden by law," in violation of section 1129(a)(3) of the Code.

D.     The Plan has not been accepted by at least one class of impaired claims, after discounting the votes of the Client Claimants that warrant designation under section 1126(e) of the Code and/or rectifying the Plan's improper gerrymandering of general unsecured creditors into three separate classes.

E.     The Plan Proponents have not met their burden of establishing the feasibility of the Plan, as required by 11 U.S.C. § 1129(a)(11), because they have not demonstrated that sufficient funds will be available to satisfy not only the administrative and priority claims referenced in the Disclosure Statement, but also the ongoing costs that will be incurred in connection with the substantial litigation that will be required following confirmation of the Plan in order to fund any meaningful distribution to general unsecured creditors.

F.     The Plan discriminates unfairly against Class 5, and cannot be confirmed in the face of a rejection of the Plan by Class 5, because the treatment of Class 5 claims that are not equitably subordinated is substantially worse than that of Class 3 claims, even though Class 5 claims that are not equitably subordinated and Class 3 claims are non-priority unsecured claims of the same rank and priority.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 3

415931v5

# I.

## ARGUMENT

**A.    The Plan Does Not Comply with the Applicable Provisions of the Bankruptcy Code, as Required by Section 1129(a)(2) of the Code, Because the Separate Classification of "Substantially Similar" Non-Priority Unsecured Claims Into Three Separate Classes Violates Section 1122 of the Code and Represents an Improper Effort to Gerrymander an Impaired Consenting Class for Purposes of Section 1129(a)(10).**

1.    Section 1129(a)(1) of the Bankruptcy Code specifies, as one of the requirements for confirmation of a plan, that, "(1) the plan complies with the applicable provisions of this title."  The "applicable provisions of this title" with which a plan must comply include the classification requirements of section 1122 of the Code.  *See In re J T Thorpe Co.*, 308 B.R. 782, 785 (Bankr. S.D. Tex. 2003), *aff'd, adopted*, No. 02-41487-H5-11, 2004 U.S. Dist. LEXIS 13589 (S.D. Tex. Mar. 3, 2004).  The Plan violates section 1122 because it improperly classifies "substantially similar" general unsecured claims into three separate classes, consisting of:

(1)    Class 3, a 16-creditor "administrative convenience" class whose separate classification is not "reasonable and necessary for administrative convenience," as required by section 1122(b);

(2)    Class 4, a class carefully crafted to consist solely of the Client Claimants who will benefit from the allowance of their disputed claims in substantial amounts under the settlement provided in the Plan; Class 4 is intended to serve as the "impaired consenting class" that the Trustee needs to confirm the Plan under section 1129(a)(10); and

(3)    Class 5, a class consisting of creditors who are separately classified only because they are "Insiders," whose claims will be treated *identically* with those of non-"Insiders" in Class 4 unless equitably subordinated under section 510(c), and against whom no equitable subordination proceeding is currently pending.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 4

415931v5

This classification regime violates section 1122 of the Code.

2.      Section 1122 of the Code provides that:

(a)      Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)      A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

3.      It is axiomatic that non-priority unsecured claims are "substantially similar" and generally should be classified together, regardless of whether they arise out of a note, in contract, in tort, or otherwise:

> As a general matter, similar claims are placed into the same class. Substantially similar claims are those which share common priority status and other legal rights against the debtor's assets. Accordingly, unsecured claims will, generally speaking, comprise one class, whether trade, tort, publicly held debt, or a deficiency of a secured creditor because they are claimants of equal legal rank entitled to share pro rata in values remaining after payment of secured and priority claims.

*Fairfield Executive Assocs. v. Hyperion Credit Capital Partners*, L.P., 161 B.R. 595, 600 n.6 (D.N.J. 1993) (citations and quotations omitted).

4.      The fact that Congress expressly authorized the separate classification of "convenience" claims when "reasonable and necessary for administrative convenience" highlights the presumption that "substantially similar" claims—such as the non-priority unsecured claims here—should be classified together.  Otherwise, the exception to the common classification of "substantially similar" claims in section 1122(b) would be superfluous:

> [T]he . . . suggestion that § 1122 does not prevent classification of like claims in separate classes is oversimplified.  It is true that § 1122(a) in terms only governs permissible *inclusions* of claims in class rather requiring that all similar claims be grouped together. One cannot conclude categorically that § 1122(a) prohibits the

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 5

415931v5

formation of different classes from similar types of claims.  But if
§ 1122(a) is wholly permissive regarding the creation of such
classes, there would be no need for § 1122(b) specifically to
authorize a class of smaller unsecured claims . . . .  The broad
interpretation of § 1122(a) adopted by the lower courts would
render § 1122(b) anathema to elementary principles of statutory
construction.

Section 1122 . . . must contemplate some limits on classification of
claims of similar priority. . . . *[O]rdinarily "substantially similar
claims," those which share common priority and rights against
the debtor's estate, should be placed in the same class. . . .*

*[T]hou shall not classify similar claims differently in order to
gerrymander an affirmative vote on a reorganization plan. . . .*

[I]f [the debtor's] proffered "reasons" for separately classifying the
[creditor's] deficiency claim simply mask the intent to gerrymander
the voting process, that classification scheme should not have been
approved.

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995

F.2d 1274, 1278-79 (5th Cir. 1991) (noting that same treatment of separately classified creditor

and other unsecured creditors under the plan belied debtor's argument that separate classification

was justified for "good business reasons," and that even if plan had treated creditor differently,

classification scheme would still be improper due to lack of evidence of ongoing business

justification).  *See also In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 861 (Bankr. S.D.

Tex. 2001) (concluding that plan proponents failed to meet their burden to demonstrate that

segregation of certain unsecured creditors into separate class was appropriately designed to

enhance future operation value of the reorganized debtor, and finding instead that classification

scheme served "the proscribed purpose of gerrymandering").

     5.    Here, a quick tally of unsecured creditors highlights the vote-driven

motivation for the Trustee's classification scheme.  Class 4 consists exclusively of fourteen

general unsecured claims of the Client Claimants that will be allowed under the Plan as a result

of the Trustee's proposed settlements.  *See* Trustee's Objection and Responses to Kornman

Parties' First Set of Written Discovery Requests Propounded to the Trustee, Response to

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 6

415931v5

Interrogatory No. 3.  Class 3 consists of sixteen "convenience" claims, and the Class 5 consists of nine[2] "Insider" claims.  S*ee id.*, Response to Interrogatory No. 4.  Properly placing these 39 (or 40) substantially similar, non-priority unsecured creditor claims into a single class would jeopardize the ability of the Client Claimants to (a) control their class's acceptance or rejection of the Plan, both in terms of the "majority in number" requirement and the "two-thirds in amount" requirement of section 1126(c) of the Code; and (b) constitute an impaired consenting class for purposes of satisfying the requirements of section 1129(a)(10) of the Code.

1.    **The Separate Classification of Sixteen Creditors Into Class 3 Is Not "Reasonable And Necessary For Administrative Convenience," As Required By Section 1122(b).**

6.    Class 3 under the Plan – the so-called "administrative convenience" class, -- includes just sixteen creditors.  *See* Disclosure Statement at 3; Trustee's Objection and Responses to Kornman Parties' First Set of Written Discovery Requests Propounded to the Trustee, Response to Interrogatory No. 3.  To justify the separate classification of these claims, the Trustee must establish that the creation of this class is "reasonable and necessary for administrative convenience."  *See* 11 U.S.C. § 1122(b).  The Trustee cannot meet this burden here, because the creation of a 16-creditor class is neither "reasonable" nor "necessary" for "administrative convenience."

7.    The Trustee tries to rationalize the creation of Class 3 on the grounds that the claims are small; the holders have not been actively involved in the Heritage chapter 11 case; and "the administration of such Claims as General Unsecured Claims under the terms of the Plan would be impracticable in light of the probable fractional distributional amounts that would be determined in relation to interim distributions on such Claims from the Creditor Trust."  *See* Trustee's Objections and Responses to Kornman Parties' First Set of Written Discovery Requests Propounded to the Trustee, Response to Interrogatory No. 5.  In other words, the Trustee wants

---

[2]    Although the Trustee identified nine Class 5 "Insider" creditors in his discovery responses, the Disclosure Statement estimates that there are ten creditors in Class 5.  *See* Disclosure Statement at 3.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
                    Page 7

415931v5

this Court to believe that it would be impracticable for the Trustee to write sixteen small checks for each interim distribution to holders of general unsecured claims.  Under the "reasonable and necessary" test of section 1122(b) and applicable authorities, this lame rationalization cannot pass muster.

8.      To begin with, section 1122(b) says nothing about a creditor's level of involvement in a chapter 11 case being a sufficient justification for separately classifying creditors as a "convenience" class; hence, this purported justification offered by the Trustee must be disregarded.  Beyond that, the Trustee cannot meet his burden of establishing that the separate classification of sixteen creditors is "reasonable" *and* "necessary;" as required by section 1122(b):

> In order to show that a classification is reasonable, the debtor must show that the administrative benefits the debtor will derive from the classification at issue outweigh the adverse effects that the classification may render upon other entities and the Bankruptcy Code policies. . . .The debtor must also demonstrate that the administrative convenience class is necessary. ***Necessary has been interpreted to mean something more than just tending to ease the administrative burden.***

*Beal Bank, S.S.B. v. Way Apartments (In re Way Apartments)*, 201 B.R. 444, 451-52 (N.D. Tex. 1996) (emphasis added; quotations omitted).  "'[N]ecessary' in the context of Section 1122(b) means something more than just tending to ease the administrative burden. Treating the unsecured claims as members of the same class must be ***truly burdensome*** before a bankruptcy court should consider deviating from the general rule and classifying them separately. . ."  *In re S&W Enter.*, 37 B.R. 153, 162 (Bankr. N.D. Ill. 1984) (emphasis added).

9.      It is absurd for the Trustee to suggest that it would be unduly burdensome for him to write sixteen distribution checks to the Class 3 creditors on more than one occasion if there are a number of interim distributions.  Although it might make the Trustee's life marginally simpler if he did not have to write a few "small" checks whenever he makes an interim distribution, this supposed "administrative burden" is overstated for two reasons, and is in any

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 8

415931v5

event legally insufficient to support separate classification. <u>First</u>, inasmuch as any meaningful distribution to unsecured creditors depends on the outcome of the Kornman Litigation, this is not likely to be a case with multiple interim distributions. To the contrary, there is not likely to be any distribution to unsecured creditors until that litigation is resolved, because the Trustee will have to reserve cash in the estate to fund the litigation. *Cf.* Memorandum Opinion and Order [Docket No. 802], at 8 n.6 ("Unfortunately, the Case is nothing but litigation – and distributions to the Debtor's legitimate creditors will likely be delayed for years in any event."). <u>Second</u>, even without creating a "convenience" class, the Plan already ameliorates any "burden" associated with writing small checks by including a *de minimus* distribution provision which provides that no distribution of less than $10 will be made to any creditor. *See* Plan § 9.8. Moreover, even if might "tend[ ]to ease the administrative burden" on the Trustee if he could avoid writing a few small checks to Class 3 creditors, this is not sufficient to render the creation of a separate "convenience" class "necessary," as required by section 1122(b) of the Code. *See In re Northwest Timberline Enterprises, Inc.*, 348 B.R. 412, 439-40 (Bankr. N.D. Tex. 2006).

10.     The absurdity of any argument that it is "necessary" for administrative convenience to place sixteen claims in a separate, so-called "convenience" class reveals that the only reason to separately classify such claims is to gerrymander a vote in support of the Plan, by keeping creditors in Class 3 out of Class 4. "There is no suggestion in the Code, however, that a class may be created under § 1122(b) in order to manipulate the outcome of the vote on a plan, rather than simply to enhance administration of the plan." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278, n.4 (5th Cir. 1991).[3]

---

[3]     *See also In re Paolini*, 312 B.R. 295, 315 n.32 (Bankr. E.D. Va. 2004) ("Use of an administrative convenience class may not be used to create an accepting class of creditors."); *S&W Enter.*, 37 B.R. at 158 ("[U]sing Section 1122(b) for the sole purpose of meeting the requirement of Section 1129(a)(10) was not a use contemplated by Congress. . . .[A] faulty use of Section 1122(b) in classifying unsecured claims gives rise most appropriately to a denial of confirmation under Section 1129(a)(1).").

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 9

415931v5

11.    In *In re Northwest Timberline Enterprises, Inc.*, *supra*. 348 B.R. 412, the debtors proposed a plan of reorganization that separately classified a large unsecured deficiency claim from the debtor's fourteen other unsecured creditors.  The Court declined to accept the debtors' argument on reconsideration that they properly separately classified the fourteen general unsecured creditors as an administrative convenience class pursuant to Section 1122(b), and found that the true purpose of the classification scheme was to gerrymander an impaired accepting class of claims.  In so doing, the Court reasoned:

> The creation of an administrative convenience class is not merely a matter of showing that there are a group of small claims that could be nicely segregated; rather, the debtor must show that it is reasonable and necessary to create a separate class *and that it is about something more than just tending to ease the administrative burden.*  In other words, there is not only an administrative burden eased (*e.g., such as eliminating hundreds or thousands of small claims from the ledger and avoiding the nuisance of having to pay those out over time*), but unless the unsecured creditors are paid quickly, they will cease to provide services that are necessary to the debtor's survival.  Here, it would hardly seem plausible that it would ease an administrative burden to be allowed to pay nine trade creditors in [one debtor's case] and five trade creditors in [the other debtor's case] differently than [the deficiency claimant]; . . .

*Id*. at 439-40 (internal citations and quotations omitted; emphasis added).

12.    Similarly, the fact that separately classifying sixteen creditors here may "tend[] to ease the administrative burden" does not make the separate classification of those creditors "necessary."  *See also Steele v. Cho (In re Cho)*, 164 B.R. 730, 734 n.3 (Bankr. E.D. Va. 1994) ("According to the proposed disclosure statement this class consists of three creditors, all of whom are under $500 and will be paid 90% cash in full payment upon confirmation.  This class does not fit the test of an administrative convenience class prescribed by 11 U.S.C. § 1122(b), and as such they cannot be separately classified on that basis."); *S&W Enter.*, 37 B.R. at 162 ("[A] negligible administrative burden, and thus no necessity, exists. There are, after all, only three unsecured claimants, two of which comprise only $850 in claims.  The complexity of

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 10

415931v5

dealing with these claims is not exactly mind-boggling. . . .[N]ot only is the separation of claims unnecessary to promote administrative convenience, it falls decisively short of being 'reasonable.'").  The Trustee has failed to satisfy his burden under section 1122(b) of justifying the separate classification of the Class 3 creditors.

**2.      The Separate Classification of Nine Creditors in Class 5 Solely on the Basis That They are "Insiders" Violates Section 1122(a).**

13.      Class 5 consists of all allowed claims of "Insiders," and is said to include nine claims.  "Insider" status *per se* is, however, insufficient to support the separate classification of non-priority unsecured claims from other non-priority unsecured claims.  *See In re Frascella Enters., Inc.*, 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007) ("There is no per se requirement that unsecured insider claims be separately classified from other unsecured claims.  Insider status alone does not make a claim dissimilar."); *In re United Marine, Inc.*, 197 B.R. 942, 949 (Bankr. S.D. Fla. 1996) (same); *In re Austin Ocala Ltd.*, 152 B.R. 773, 775 (Bankr. M.D. Fla. 1993) ("The claims of the trade creditors, [certain other creditors,] and the insiders are all substantially similar -- pure general unsecured claims and should be classified accordingly.  The Debtor has not demonstrated sufficient justification for separate classification of these substantially similar claims.").

14.      Moreover, the fact that the debtor may contemplate seeking equitable subordination or any other cause of action against the Insiders is also insufficient to justify separate classification of their claims.  *See In re Frascella Enters.*, 360 B.R. at 444 ("[W]hile the claims would properly be classified separately had they been subordinated . . . [t]hat remedy requires the commencement of an adversary proceeding which has not been pursued. . . ."); *In re Boston Harbor Marina Co.*, 157 B.R. 726, 793 (Bankr. D. Mass. 1993) (overruling the debtor's argument that the subordinated nature of a claim justified its separate classification, court noted that it had not issued any such order -- the debtor would thus have to bring an adversary proceeding and obtain an order subordinating the claim to maintain separate classification of the claim).

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 11

415931v5

15.     Similar to the present situation, in *In re Waterways Barge P'ship*, 104 B.R. 776 (Bankr. N.D. Miss. 1989), the debtor separately classified an unsecured deficiency creditor that did not support its plan from three other unsecured creditors that did.  The debtor's proffered justification for doing so was that two of the creditors placed in the other class continued to work for the debtor, while the separately classified creditor attempted to thwart the debtor, and that the debtor contemplated future litigation against that creditor.  *Id*. at 784.  The court declined to accept this argument, and denied confirmation of the plan, finding it

> patently obvious that the only reason that the debtor has separately classified the unsecured claims . . . is to create a favorable class that will vote to accept the plan to meet the test of § 1129(a)(1). Although there is no direct prohibition against this separate classification in the Bankruptcy Code, the manipulative approach in this case is unfair and inequitable.  Class IV was 'loaded' with two pre-petition creditors who could obviously control the class for the debtor's benefit. . . .
>
> The debtor's argument . . . that the claims are dissimilar is without merit.  The claims are all unsecured pre-petition claims.

*Id*. at 785.

16.     Cases that have found a "good business reason" to separately classify unsecured creditors are clearly distinguishable from the present situation, because there are no "good business reasons" here to separately classify the Insider unsecured claims, as there will be no ongoing business emerging from bankruptcy:  This is a liquidating case.  *See Heartland Fed. Savings & Loan Ass'n (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1167 (5th Cir. 1993) (distinguishing the finding of a good business justification for separate classification in *U.S. Truck* from *Greystone*, noting that there was no legitimate business justification for separate classification in *Greystone* because "there was no evidence that the debtor's ongoing business would be affected if separate classification were not permitted").  The only possible motive for separately classifying these claims is to gerrymander the confirmation vote--an impermissible abuse of the Bankruptcy Code.

_____
OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 12

415931v5

17.     In responding to discovery by the Kornman Parties, the Trustee has proffered two justifications for the separate classification of *all* Insider claims in Class 5. First, he claims that based upon their "inequitable conduct", each of their claims is subject to equitable subordination under section 510 of the Bankruptcy Code, rendering them not "substantially similar" to General Unsecured Claims. Second, he asserts that each of the Insiders has a "non-creditor interest", *i.e.*, litigation exposure, that has "impacted their perspective as to the Bankruptcy Case." *See* Trustee's Objections and Responses to Kornman Parties' First Set of Written Discovery Requests Propounded to the Trustee, Response to Interrogatory No. 6. Neither rationale, nor the authorities cited by the Trustee to support them, supports the separate classification of the Insider claims here.

18.     To begin with, while the Trustee may *allege* that equitable subordination is appropriate, he has not even *commenced* equitable subordination proceedings against all of the Class 5 creditors, let alone obtained an order of equitable subordination against *any* of them. Moreover, as to each "Insider" creditor in Class 5, the Trustee will have the burden of demonstrating misconduct on the part of *that creditor* sufficient to warrant equitable subordination of the claims of *that creditor*.  Even if the Trustee meets his burden of showing misconduct sufficient to warrant equitable subordination of the claims of a particular creditor, that alone will not suffice to obtain equitable subordination of the claims of some other "Insider" creditor who provided goods or services to the Debtor, even if the creditors are somehow related. *See generally Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.)*, 622 F.2d 709, 723-26 (5th Cir. 1980) (affirming equitable subordination of claim of debtor's director, but reversing equitable subordination of claim of director's 100%-owned subsidiary, Court of Appeals noted that, "the mere fact that Biehl [the director] owned 100% of the stock of Machinery Rental does not alone show an alter ego relationship").  The case law does not support the Trustee's theory that he can separately classify the Insiders in a liquidating chapter 11 plan merely because he has alleged they should be equitably subordinated — especially where, as here, the Plan expressly

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 13

415931v5

provides that any Class 5 creditor whose claim is not equitably subordinated *will be treated exactly like a Class 4 creditor.  Cf. In re Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir. 1992) ("Where all unsecured claims receive the same treatment in terms of the Plan distribution, separate classification on the basis of natural and unnatural recourse claims is, at a minimum, highly suspect.")

          19.     The cases cited by the Trustee in his discovery response clearly are distinguishable and do not support his contrived classification regime.  For example, in *Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc)*, 622 F.2d 872 (5th Cir. 1980), a case decided under the former Bankruptcy Act that is cited by the Trustee, the court determined that it was appropriate to separately classify unsecured claims of certain insiders (family members and business associates of the general partner) of the debtor[4] from unsecured trade creditors, over the objection of the general partner's brother.  However, in *LeBlanc*, such discriminatory classification was found to be permissible because the proponents of the plan needed to maintain good relations with the debtor's trade creditors in their ongoing future operation of the debtor's hotel, whereas the separately-classified insider equity holders were to have no ongoing relationship with the hotel after confirmation.  *Id*. at 879.  In contrast, there is no such justification here, as there will be no post-confirmation operations.

---

[4]    The debtor, Jules B. Leblanc, III-Corporate Hotel Partnership, was a form of limited liability partnership, with Jules B. LeBlanc, III acting as general partner and holding a 70 percent interest in the debtor.  A true and correct copy of the *Careline* opinion is attached as Exhibit "E" to the Omnibus Appendix In Support Of (I) Motion of Creditors Gary M. Kornman And GMK Family Holdings, LLC Pursuant To 11 U.S.C. §§ 1125(b) And 1126(e) For An Order Designating And Disallowing Votes Of Client Claimants; (II) Objection Of Creditors Gary M. Kornman And GMK Family Holdings, LLC To Confirmation Of "Trustee's And Client Claimants' First Amended Joint Plan Of Liquidation Under Chapter 11 Of The United States Bankruptcy Code" [Docket 1090]; Objection And Supporting Brief Of Gary M. Kornman And GMK Family Holdings, LLC To Trustee's Motion For Approval Of Compromise And Settlement With Client Claimants And Mikron Industries, Inc. [Docket No. 1040]; And Supplement To Objection And Request For Hearing Re Trustee's Motion For Approval Of Compromise And Settlement With Carl E. Berg [Docket No. 1079] (the "Omnibus Appendix"), which is being filed concurrently with this Objection.

---

415931v5

20.    The *LeBlanc* court also noted that the separately-classified insiders made loans to the debtor at a time when they knew of the debtor's precarious financial position and the risks involved with those loans.  *Id*.; *accord In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990); *In re Careline Nat'l Corp.*, No. 95-16574-DAS, 1995 WL 750160, at *2 (Bankr. E.D. Pa. Dec. 15, 1995).[5]  In contrast, the Trustee has proffered no evidence that any of the separately-classified Insiders believed that the Debtors' financial position was precarious when Heritage incurred its obligations to them.  The claims of the Insiders are not for loans made while they knew (or even thought) that the Debtor was in a precarious financial condition.

21.    In addition, the insiders in *Careline* and *11,111*, held, or were intended to hold,[6] equity interests in debtor.  In contrast, not all of the Insiders here held equity stakes in the Debtor.  Nor has the Trustee demonstrated that it otherwise would be appropriate to re-characterize all (or even any) of the Class 5 claims as contributions of equity.

22.    This distinction should not be overlooked.  In *Careline*, for example, the court explained:

> One of the appropriate consideration in determining how a claim should be treated is ascertaining the nature of the claim.  A threshold issue in ascertaining the nature of an insider's claim is whether an insider is a creditor of the debtor at all, or instead is simply an equity holder in the debtor. . . .

---

[5]    In addition, in *LeBlanc*, the objecting insider creditor was the only member of that class to object to the plan's classification scheme, which provided further evidence that the plan was equitable.  *LeBlanc,* 622 F.2d at 879.

[6]    In *11,111*, it was originally contemplated that the objecting insiders who were separately classified would make a capital contribution to the debtor to acquire the assets of a second company (for which purpose the debtor was formed), of whom they were employees, but they never made such contributions prior to the debtor's purchase of the company.  *Id.*, 117 B.R. at 472, n.1.  Instead, after its purchase, one of the objecting insiders actually loaned money to the debtor's owner, who then contributed it to the debtor in exchange for a promissory note which was then assigned to the insider, in order to circumvent a demand by the selling shareholder of the acquired company that any capital contribution made by that insider be applied to the balance he was owed under the sale.  *Id.* at 473.  The other objecting insider did make a post-sale capital contribution to the debtor and became a shareholder, but he also made a loan to the debtor, which was the basis of his unsecured claim.  *Id.*

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 15

415931v5

> A conclusion that [the objecting insider, a director, officer, board member, and large shareholder's] advances could possibly be characterized as equity contributions as opposed to loans strongly suggesting [sic] that the issue of whether a treatment of [the insider's] claim in a manner different and far less generous to her than to an "outside creditor" appears appropriate.

*Id.*, 1995 WL 750160, at *2-3. Finally, and quite significantly, in each of these "insider" cases cited by the Trustee, there was *no* evidence that the classification scheme served the impermissible purpose of vote gerrymandering, as there is here.

23. Cases cited by the Trustee where a plan has separately classified non-insider unsecured claimants with a unique interest in the *future viability* of the reorganized debtor, which would motivate such creditors to vote against the plan for reasons unrelated to the treatment of their claims under the plan, are also inapposite to the situation at hand, as there is no such unique interest of the Insiders in this *liquidating* chapter 11 case. *See Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc., (In re U.S. Truck Co., Inc.)*, 800 F.2d 581, 587 (6th Cir. 1986) ("[T]he union employees have a 'virtually unique interest.' . . . The Teamsters Committee may choose to reject the plan not because the plan is less than optimal to it as a creditor, but because the Teamsters Committee has a noncreditor interest – *e.g.*, rejection will benefit its members in the ongoing employment relationship."); *In re Premiere Network Servs., Inc.*, 333 B.R. 130, 133-35 (Bankr. N.D. Tex. 2005) (the court found "a 'good business reason' independent from gerrymandering of classes" to separately classify the objecting creditor, because the creditor directly competed with the debtor, would likely continue to compete with its successor under the plan, and would thus benefit from rejection of the plan due to the decreased competition.). *Cf. Beal Bank, S.S.B. v. Waters Edge Ltd.*, 248 B.R. 668, 691-92 (D. Mass. 2000) (separately classifying a non-recourse deficiency claim because the creditor had "a very different voting motivation than the other unsecured claim holders" as it was expected to vote in the interest of its secured claim; this holding is directly contrary to the controlling precedent in *Greystone*; *see Greystone*, 995 F.2d at 1279). In sum, the Insiders in this liquidating chapter 11

---

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 16

415931v5

case have no "unique interest" in the Debtor's ongoing operations that would justify the separate classification of their claims, and their separate classification from other general unsecured creditors therefore violates section 1122(a) of the Code.

**B.     The Plan Fails to Comply with Section 1129(a)(2) Because it Includes Provisions for the Settlement of Claims Against the Estate That are Not Authorized by Section 1123 of the Code.**

24.     The "applicable provisions of this title" with which a plan must comply in order to pass muster under section 1129(a)(2) also include the provisions of section 1123, which sets forth comprehensively the terms that must or may be included in a plan.  Provisions not authorized by section 1123 may not be included in a plan.  *See In re Drexel Burnham Lambert Group*, 138 B.R. 723, 757-58 (Bankr. S.D.N.Y. 1992).  The provisions of the Plan here go beyond those authorized by section 1123, and therefore violate section 1129(a)(2), because the Plan provides for the settlement of disputed claims against the estate.  Although section 1123(b)(3) expressly authorizes a plan to provide for the settlement or adjustment of any claim belonging *to* the debtor or the estate, it includes no parallel provision authorizing the settlement of a claim *against* the estate.

25.     The Plan specifically provides for the settlement of a number of disputed claims against the estate, including the disputed claims of the Client Tax Claimants and the Sandwith Claimants.  *See* Plan Sections 7.1.1, 7.2.3.  The Kornman Parties believe that the Plan Proponents incorporated these settlements into the Plan in the hope of maximizing the likelihood that the Plan Proponents could moot any appeal in the event that this Court approves the settlements, by making the settlements part of the Plan; consummating the Plan; and then arguing that any appeal from the settlements has been mooted by the consummation of the Plan incorporating the settlements.  Whatever the Plan Proponents' motivations, however, these Plan provisions are not authorized by the Code and preclude confirmation of the Plan.  Unlike settlements of claims *by* the estate, which may be part of a plan, the settlement of claims *against* an estate may only be presented by separate motions and effectuated outside of a plan.

---

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 17

415931v5

26.    Section 1123(b)(3) of the Code expressly provides that a plan may provide for: "(A) the settlement or adjustment of any claim or interest *belonging to the debtor or to the estate*; . . . " (emphasis added).  In contrast, neither section 1123 nor any other provision in the Code contains a counterpart that permits a plan to provide for the "settlement or adjustment of any claim or interest *against* the debtor or the estate." [7]  As the Ninth Circuit Bankruptcy Appellate Panel observed in holding that a chapter 11 plan could not be used to reduce a creditor's claim without compliance with claim objection procedures:

> The conclusion that an objection under *Rule 3007* is required in order to change the amount of a claim, over a creditor's objection in a chapter 11 case, is further supported by an examination of the list of matters that Congress authorized to be included in chapter 11 plans.  *See* 11 U.S.C. § 1123(b).  ***The only reference in that statute to adjustments of claims is the authorization for a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."***  11 U.S.C. § 1123(b)(3)(A) (emphasis supplied).  ***It is significant that there is no parallel authorization regarding claims against the estate***.

*Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 496 (9th Cir. B.A.P. 2003) (emphasis added).

27.    The Kornman Parties' interpretation of section 1123(b) finds further support in the familiar canon of statutory construction *expressio unius est exclusio alterius* (the inclusion of one is the exclusion of another).  This maxim "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions."  *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991).  *See also Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) (this maxim "cautions us against

---

[7]    Although the legislative history does not explain why Congress chose to treat the settlement of claims of the estate differently from the settlement of claims against the estate for purposes of determining the permissible scope of a plan, this dichotomy is supported by sound policy considerations:  Permitting a plan to provide for the settlement of claims against the estate would encourage the allowance of disputed claims for non-merit based reasons, as a means of procuring the vote of the holder of the disputed claim whose claim would be resolved under the plan.  Indeed, that is exactly what happened in this case.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 18

415931v5

engrafting an additional exception to what is an already complex [] code"), *cert. denied*, 519 U.S.

1028 (1996).  *Expressio unius est exclusio alterius* has been routinely applied in interpreting the

Bankruptcy Code.  *See, e.g., Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen*

*House Interstate, Inc.)*, 177 F.3d 719, 722 n.4 (8th Cir. 1999), *aff'd sub nom. Hartford*

*Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000); *Magill v. Newman (In re*

*Newman)*, 903 F.2d 1150, 1154 (7th Cir. 1990).  Under this principle, the express statutory grant

of authority to provide for the settlement of claims by the estate under a plan leads to the

implication that there is no comparable authority to include a settlement of claims against the

estate in a plan.  Otherwise, section 1123(b)(3)(A) would be superfluous.

      28.     Thus, the provisions of the Plan exceed the authority provided under

section 1123 of the Code, and confirmation must be denied.

**C.     The Plan Does Not Satisfy the Requirements of Sections 1129(a)(2) and
1129(a)(3) of the Bankruptcy Code Because the Trustee Solicited the Votes of
Client Claimants to Accept the Plan Prior to the Transmission of a Court-
Approved Disclosure Statement in Violation of Section 1125(b) of the Code.**

      29.     Section 1129(a)(2) of the Code provides in pertinent part that:

    (a) The court shall confirm a plan *only if* all of the following
conditions are met.

               . . .

    (2) The proponent of the plan complies with the applicable
provisions of this title.

11 U.S.C. § 1129(a)(2)(3) (emphasis added).  The Plan Proponents have the burden of proof to

establish compliance with section 1129(a)(2).  *See Everett v. Perez (In re Perez)*, 30 F.3d 1209,

1214 n.5 (9th Cir. 1994).  The Plan Proponents cannot meet their burden of establishing

compliance with the "applicable provisions of this title," because the Trustee violated section

1125(b) of the Bankruptcy Code by soliciting the Client Claimants' votes to accept the Plan

*months* before they received a court-approved disclosure statement.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 19

415931v5

30.     Section 1125(b) of the Code provides in pertinent part that:

An acceptance or rejection of a plan *may not be solicited after the commencement of the case* under this title from a holder of a claim or interest with respect to such claim or interest, *unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information* . . .

11 U.S.C. § 1125(b) (emphasis added).  The Trustee openly violated that prohibition here.[8]

31.     On or about February 20, 2007, over two months *before* a disclosure statement was approved, the Trustee entered into a "Liquidating Plan Term Sheet" with each of the Client Claimants, which *requires* in paragraph 15, that, "the Client Claimants and the Sandwith Claimants *will vote to accept the Plan*." (emphasis added).[9]  Thereafter, on May 2, 2007, over two months *after* the Trustee had already solicited and obtained the agreement of each of the Client Claimants to vote for the Plan, the Court approved the Disclosure Statement for the Plan, which subsequently was transmitted to the Client Claimants and other creditors.[10]  Long before then, however, the Trustee already had turned the entire disclosure statement process into a charade, because the Trustee *already* had solicited and "locked up" the vote of the only class on which he intends to rely to confirm the Plan, before the disclosure statement approval process even *began*.

32.     The plain language of section 1125(b) flatly prohibits a party from using a

_____

[8]     Concurrently herewith, the Kornman Parties have filed the Motion of Creditors Gary M. Kornman and GMK Family Holdings, LLC Pursuant to 11 U.S.C. §§ 1125(b) and 1126(e) for an Order Designating and Disallowing Votes of Client Claimants, in which they seek to designate any and all votes of the Client Claimants on the basis that the Trustee solicited their acceptances of the Plan in violation of § 1125(b).

[9]     A true and correct copy of the Liquidating Plan Term Sheet is attached as Exhibit "A" to the Omnibus Appendix.

[10]    *See* "Order Granting Trustee's and Client Claimants' Joint Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Scheduling a Hearing to Consider Confirmation of the Plan, (C) Establishing Voting and Objection Deadlines, and (D) Approving Forms of Ballots and Solicitation Procedures," entered May 2, 2007 [Docket No. 1092].

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 20

415931v5

post-petition "lock-up" agreement to solicit the acceptance or rejection of a plan prior to court approval of a disclosure statement.  *See In re Stations Holding Co, Inc.*, No. 02-10882, 2004 Bankr. LEXIS 1220, at *4 (Bankr. D. Del. August 18, 2004) (noting that court previously granted U.S. Trustee motion to designate votes obtained pursuant to post-petition "lock-up" agreements based upon finding that such agreements constituted improper solicitations in violation of section 1125 [confirmation order reported at 2002 Bankr. LEXIS 1617]);[11] Daniel J. DeFranceschi, *Delaware Bankruptcy Court Announces Bright-line Rule for Use of Lock-up Agreements in Chapter 11 Cases*, 22-1 ABIJ 16, 16 (2003) ("[B]ench rulings in two recent cases, *In re NII Holdings, Inc.* [confirmation order reported at 288 B.R. 356 (Bankr. D. Del. 2002)], and *In re Stations Holdings* . . . together establish a bright-line rule for use of lock-up agreements in connection with voting on a chapter 11 plan. . . . [V]otes cast by parties who entered lock-up agreements post-petition and prior to the court having approved a written disclosure statement may not be counted. . . . [P]ost-petition lock-up agreements violated § 1125(b) of the Bankruptcy Code because they amounted to post-petition solicitation of acceptances of a chapter 11 plan without a court-approved written disclosure statement having been provided in advance to the locked-up parties.").[12] *Cf. In re General Homes Corp. FGMC, Inc.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991) ("[Section 1125(b)] contemplates that there will be solicitation other than the disclosure statement, and merely imposes a requirement that the disclosure statement and plan or summary be transmitted *first*.") (emphasis added).

33.     Where, as here, the language of the statute is plain, "'the sole function of the courts is to enforce [the statute] according to its terms.'"  *United States v. Ron Pair Enters.*, 489 U.S. 235, 241; 109 S.Ct. 1026, 1030, *quoting Caminetti v. United States*, 242 U.S. 470, 485; 37 S.Ct. 192, 194 (1917). "When the words of a statute are unambiguous . . . 'judicial inquiry is

---

[11]  A true and correct copy of the *Stations Holding Co., Inc.* orders are attached as Exhibit "B" to the Omnibus Appendix.

[12]  A true and correct copy of the DeFranceschi article is attached as Exhibit "C" to the Omnibus Appendix.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 21

415931v5

complete'."  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149 (1992)

(citations omitted).  The Supreme Court has placed particular emphasis on this canon of statutory

construction when interpreting the Bankruptcy Code.  *See id.*

      34.    Thus, by soliciting the Client Claimants' acceptance of the Plan via the

post-petition Liquidating Plan Term Sheet prior to the Court's approval of the Disclosure

Statement, the Trustee violated section 1125(b).  The Liquidating Plan Term Sheet expressly

*required* the Client Claimants to "vote to accept the Plan"; the Trustee could not have engaged in

a more open and unequivocal act of solicitation.  The Liquidating Plan Term Sheet is dated

February 20, 2007, almost one month before the Trustee filed the initial versions of the

Disclosure Statement and the Plan, and almost three months before the Court approved the final

version of the Disclosure Statement.  It is indisputable that the Trustee's solicitation of the Client

Claimants occurred post-petition and prior to the Court's approval of the Disclosure Statement.

Therefore, the plain language of section 1125(b), which does not provide any exception or other

basis for discretion, leads to the inescapable conclusion that the Trustee improperly solicited the

Client Claimant votes.

      35.    The Trustee's solicitation of acceptances of the Plan by the Client

Claimants in violation of section 1125 bars confirmation of the Plan.

> It is of course beyond doubt that a plan may not be confirmed if the
> proponent solicits votes before approval and distribution of a
> disclosure statement.  That result flows from the text of Section
> 1125(b). . . .Section 1129(a)(2)[, which provides that a plan may
> only be confirmed if the plan proponent complies with the
> applicable provisions of the Bankruptcy Code,] then elevates
> Section 1125(b)'s prohibition into a confirmation requirement.

*In re Trans Max Techs., Inc.*, 349 B.R. 80, 86 (Bankr. D. Nev. 2006) (footnote omitted).  *See*

*also Resolution Trust Corp. v. Dooley (In re Dooley)*, No. 92-3121, 1992 U.S. App. LEXIS

28730, at *2 (6th Cir. Oct. 26, 1992) ("A bankruptcy court shall confirm a reorganization plan

only if the plan complies with the applicable provisions of Chapter 11.  11 U.S.C. § 1129(a)(1).

One such applicable provision requires that a disclosure statement must precede confirmation of

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 22

415931v5

a reorganization plan.  11 U.S.C. §§ 1125(b) and 1129(a)(2).") [13]; *In re Worldcom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401, at *143-44 (Bankr. S.D.N.Y. Oct. 31, 2003) ("The legislative history to section 1128(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.") [14]; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ("Code § 1129(a)(2) requires that the proponent of the plan must comply with Chapter 11.  Thus, the proponent must comply with the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with Code §§ 1125 and 1126.").  In fact, it has been noted that "[t]he principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in solicitation of acceptances to the plan." *In re Treasure Bay Corp.*, 212 B.R. 520, 540-41 (Bankr. S.D. Miss. 1997); *In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988). [15]

---

[13]   A true and correct copy of the *Dooley* opinion is attached as Exhibit "F" to the Omnibus Appendix.

[14]   A true and correct copy of the *Worldcom* opinion is attached as Exhibit "G" to the Omnibus Appendix.

[15]   Strangely, however, in *In re NII Holdings*, 288 B.R. 356, 362 (Bankr. D. Del. 2002), the court held, in the very same paragraph, that certain "locked-up" votes must be designated as solicited in violation of section 1125(b), and that the Debtors acted in good faith and in compliance with section 1129(a)(2) and 1125 (without elaboration on the disconnect there):

> The Debtors have complied with the applicable provisions of the Bankruptcy Code with respect to the Plan, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Solicitation Order. The Court determined that the Debtors solicited the votes of certain parties (the "Designated Parties") in violation of section 1125(b) of the Bankruptcy Code and, accordingly, the Court has designated the Designated Parties pursuant to section 1126(c) [sic] of the Bankruptcy Code. The Debtors, the Debtors' officers, directors and professionals, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code. The Designated Parties' votes have not been included as acceptances of the Plan, pursuant to section 1126(e) of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(2) of the

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 23

415931v5

36.     The fact that section 1126(e) permits the designation of an acceptance or rejection solicited in violation of section 1125(b) does not in any way undercut the straightforward requirement that confirmation must be denied if the plan *proponent* violates section 1125(b).  Section 1126(e) contemplates vote designation, regardless of the party that engaged in the improper solicitation.  Thus, for example, if one creditor solicits the acceptance of a plan by another creditor in violation of section 1125(b), section 1126(e) is available, but section 1129(a)(2) is not implicated (because the plan proponent was not involved and did not engage in an illegal vote solicitation).  In contrast, where a plan proponent itself engages in a pre-disclosure statement solicitation prohibited by section 1125(b), the plan fails to satisfy section 1129(a)(2).[16]

---

Bankruptcy Code.

It is unclear whether any party in NII Holdings raised an objection under section 1129(a)(2) of the Code based upon the improper solicitation that warranted the vote designation.  In any event, upon designation of the votes of the Client Claimants, no impaired consenting class (nor even a single creditor) will have voted to accept this Plan, which precludes the Plan from satisfying the confirmation requirement of section 1129(a)(10) of the Code.

[16]     In *In re Stations Holding Co.*, No. 02-10882, 2004 Bankr. LEXIS 1220, at *4 (Bankr. D. Del. Aug. 18, 2004), it appears that the creditors committee obtained the "lock up" agreements that led to the designation of certain votes, although the debtor was a party to the merger agreement that was conditioned on obtaining certain "lock-up" agreements.  The court in *Stations Holding* confirmed the plan, holding that it was in compliance with section1129(a)(2), but did not address the issue of whether the debtor's role in the existence of the lock-up agreement violated section 1129(a)(2):

The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. In particular, the solicitation of acceptances or rejections of the Plan was solicited after disclosure to holders of Claims and Equity Interests of "adequate information", as defined in section 1125(a) of the Bankruptcy Code. For purposes of this finding, the Court has excluded the votes of those Holders of Claims and Equity Interests in Classes 4, 5 and 6 who have executed a lock-up agreement (a "Lock-Up Agreement")

*Id.*, 2002 Bankr. LEXIS 1617, at *9 (Bankr. D. Del. Sept. 30, 2002).  Thus, it is not clear whether the improper solicitation that warranted vote designation in *Stations* was committed

---

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 24

415931v5

37.     In addition, the Trustee's violation of section 1125(b) of the Code also prevents the Plan from satisfying the requirement of section 1129(a)(3) of the Code, that, "The Plan has been proposed in good faith *and not by any means forbidden by law*."  11 U.S.C. § 1129(a)(3) (emphasis added).  Here, the Plan *was* proposed "by means forbidden by law," because it was proposed through an illegal, pre-disclosure statement solicitation.  Accordingly, confirmation must be denied on this ground as well.  *Cf. In re Clamp-All Corp.*, 233 B.R. 198, 210 n.10 (Bankr. D. Mass. 1999) (although court determined that advance disapproval of any plans that might be submitted by creditors who engaged in improper solicitation under section 1125(b) would be premature, court noted that "any . . . plan filed by [the creditors] would now have substantial obstacles to confirmation, not the least of which would be the task of overcoming the requirements of 11 U.S.C. § 1129(a)(2) and (3)").

**D.      Upon the Designation of the Votes of the Client Claimants, the Plan Will Not be Able to Satisfy the Requirements of Section 1129(a)(10) of the Bankruptcy Code.**

38.     Section 1129(a)(10) of the Bankruptcy Code establishes, as one of the requirements for confirmation, that:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10).  In this case, there is no question that the only class on which the Trustee intends to rely to satisfy the "one impaired consenting class" requirement is Class 4, on the basis of the votes of the Client Claimants whose disputed claims will be settled under the Plan.  The Kornman Parties have, however, moved under section 1126(e) of the Code to designate the vote of each of the Client Claimants, on the grounds that such votes were solicited prior to the transmittal to such Client Claimants of a court-approved Disclosure Statement, in violation of section 1125(b).  *See* "Motion of Creditors Gary M. Kornman and GMK Family

---

by the plan proponent (i.e. the Debtor), nor is it clear whether any party filed an objection under section 1129(a)(2) of the Code based upon this improper solicitation.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 25

415931v5

Holdings, LLC Pursuant to 11 U.S.C. §§ 1125(b) and 1126(e) for an Order Designating and

Disallowing Votes of Client Claimants."  If that Motion is granted, there will not be a single vote

to accept the Plan in Class 4 or, the Kornman Parties believe, any other class, and the Plan will

not be able to satisfy the requirements of section 1129(a)(10).

**E.      The Trustee Has Not Met His Burden of Demonstrating That the Plan Is
         Feasible.**

39.      Section 1129(a)(11) of the Bankruptcy Code, the "feasibility" requirement,

requires, as a condition to confirmation of a plan, that "confirmation of the plan is not likely to

be followed by the liquidation, or the need for further financial reorganization, of the debtor or

any successor to the debtor under the plan, unless such liquidation or reorganization is proposed

in the plan."  In the case of a liquidating plan such as the Plan, section 1129(a)(11) requires the

Trustee to demonstrate that there will be sufficient cash available to pay, not only all

administrative and priority claims, but all of the ongoing, post-effective date expenses of the

liquidation.  As with all other requirements for confirmation, the Plan Proponents have the

burden of proof to establish feasibility.  *See In re Barnes*, 309 B.R. 888, 895 (Bankr. N.D. Tex.

2004).

40.      The Disclosure Statement estimates that the Allowed Administrative

Claims as of the Effective Date of the Plan will be approximately $1.4 million, and that the

Priority Tax Claims will be approximately $913,000.  *See* Disclosure Statement at 3.[17]  Although

the amounts to be received from Mikron and Berg if their respective settlements are approved

appear to exceed these amounts, that does not end the analysis, because there are two important

caveats that the Trustee must address.  First, in light of the extensive litigation over the Trustee's

proposed settlements and plan confirmation, the estimate for Administrative Claims through the

Effective Date, *i.e.*, professional compensation for professionals employed by the estate, may be

too low.  Second, the Disclosure Statement contains, and the Trustee has provided, *no* estimate

---

[17]     The Kornman Parties dispute these Priority Tax Claims and reserve their right to object to
         any and all administrative claims.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 26

415931v5

of the post-effective date costs of administration, such as litigation costs, including most notably the substantial cost of pursuing the Kornman Litigation, which is likely to be hotly contested by multiple defendants.[18]  The Trustee did not include any such estimate in his initial disclosures in discovery, and the Kornman Parties have not seen a shred of evidence that the Trustee has formulated any estimate of the post-effective date costs of administration or, if he has, the amount of those estimates or the basis therefor.  Therefore, the Trustee has not met his burden on feasibility because he has not proven that there will be sufficient cash available to pay all administrative and priority claims and post-effective date expenses of the liquidation.

**F.    The Plan Cannot Be Confirmed Over the Rejection of the Plan by Class 5, Because the Plan Discriminates Unfairly Against Class 5.**

41.    Section 1129(a)(8) of the Code requires, as one of the conditions to confirmation of the Plan, that, with respect to each class of claims or interests, such class must either have "accepted the plan" or "is not impaired under the plan."  11 U.S.C. § 1129(a)(8).  In the likely event that Class 5 rejects the Plan, the requirements of section 1129(a)(8) will not be satisfied, because Class 5 is impaired under the Plan.

42.    Section 1129(b)(1) of the Code provides, however, that if all requirements of section 1129(a) other than the requirements of section 1129(a)(8) are satisfied, the Court shall confirm the plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  The "cramdown" requirements of section 1129(b)(1) are not, however, satisfied here, because the Plan *does* "discriminate unfairly" against Class 5.

43.    Under the Plan, Class 5 ultimately will consist of claims of Insiders that are not equitably subordinated (those that are equitably subordinated will be reclassified in Class

---

[18]    Importantly, in estimating the cost of the Kornman Litigation, the Trustee must include the cost of establishing insolvency — which will include the cost of trying to establish the validity of the Client Claims and the uncollectability of the client notes in that litigation. This aspect of the Kornman Litigation expense estimate highlights the emptiness of the Trustee's claim that the proposed settlements of the Client Claims and various client notes will eliminate the cost of litigating those claims and notes.

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 27

415931v5

6). The Plan discriminates unfairly against such Class 5 claims, because, notwithstanding the fact that Class 5 claims are non-priority, general unsecured claims that rank on a parity with the claims in Class 3, Class 5 claims will receive dramatically worse treatment under the Plan than Class 3 claims. Whereas Allowed Claims in Class 3 will be paid 100 cents on the dollar, Allowed Claims in Class 5 will share ratably with Class 4 claims in whatever residual value remains after the estate has completed litigating its claims against third parties, and has satisfied all costs of administration and priority claims. Thus, Class 3 creditors with claims as high as $30,000[19] receive a certain recovery of 100 cents on the dollar, while Class 5 creditors of equal rank and priority will receive a speculative distribution at some indeterminate time in the future. Such a construct "discriminates unfairly" under any reasonable construction of the term.

44.    There is no business or other justification for this distribution construct that can withstand scrutiny. To begin with, even if the Court determines that the separate classification of Class 3 claims on "convenience" grounds is reasonable and necessary, the Trustee still must demonstrate that the Plan does not unfairly discriminate among the separate classes of unsecured creditors. *See In re Mortgage Inv. Co. of El Paso, Texas*, 111 B.R. 604, 614 (Bankr. W.D. Tex. 1990) ("A finding that the plan classification scheme is proper does not necessarily resolve the question of unfair discrimination."). "[A] dissident class must . . . receive treatment which allocates value to the class consistent with the treatment afforded other classes with similar legal claims." *Id*.

45.    Some courts have applied the following four-part test to determine whether discrimination is unfair:

(1)   Whether the discrimination is supported by a reasonable basis;

(2)   Whether the debtor can confirm and consummate a plan without the

---

[19]   The discriminatory nature of this distribution game is highlighted by the fact that Class 3 includes a claim for $30,000, and Class 5 includes a claim for $25,000 and an unliquidated claim which could be allowed for less than $30,000. *See* Trustee's Objections and Responses to Kornman Parties' First Set of Written Discovery Requests Propounded to the Trustee, Response to Interrogatory Nos. 2 (listing Class 3 Claims), 4 (listing Class 5 Claims).

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 28

415931v5

discrimination;

(3) Whether the discrimination is proposed in good faith; and

(4) The treatment of the classes discriminated against.

*Id*. at 614. In other words, "for payment to be preferred to one creditor or class over others, the Court must find an articulable basis for the preference." *Mortgage Inv. Co. of El Paso,* 111 B.R. at 615.

46. In *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850 (Bankr. S.D. Tex. 2001), the Bankruptcy Court for the Southern District of Texas adopted the following parameters:

> [A] Chapter 11 plan is presumptively subject to denial of confirmation on the basis of unfair discrimination, even through it provides fair and equitable treatment for all classes, when there is (1) a dissenting class; (2) another class of the same priority, and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class . . . or (b) . . . an allocation under the plan of materially greater risk to the dissenting class. . . .

*Id*. at 863-64 (adopting proposed test presented by then-Professor Bruce A. Markell in his article *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227 (1998)). This presumption can only be overcome by proof that "a lower recovery for the dissenting class is consistent with the result that would obtain outside of bankruptcy, or that a greater recovery for the other class is offset by contributions from that class to the reorganization." *Id.*

47. The Trustee cannot satisfy either of these two tests for "unfair discrimination" with regard to the wide disparity in treatment between unsecured creditors in Classes 3 and 5. First, that disparity presumptively subjects the Plan to denial of confirmation on "unfair discrimination" grounds under the test adopted by *Sentry Operating Co. of Texas*, 264 B.R. 850, because the unsecured creditor claims classified in Class 3 are of the same rank and priority (i.e., unsecured, non-priority) as the claims in Class 5 that are not equitably subordinated, yet Class 5 creditors will receive a speculative recovery at some indeterminate time in the future, while those in Class 3 will receive immediate payment in full. The separate

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 29

415931v5

grouping of these claims, even if properly done for convenience purposes, does not elevate the legal priority of Class 3 claims.

48.    Second, no "articulable basis" for the substantial preferential treatment of Class 3 creditors exists, either to overcome the presumption of "unfair discrimination" under *Sentry Operating Co. of Texas* by showing "that a greater recovery for the other class is offset by contributions from that class to the reorganization," or to satisfy the "reasonable basis" requirement under the four-part test applied in cases such as *Mortgage Investment Co. of El Paso*, 111 B.R. 604. The rationale for the creation of a separate convenience class itself in no way justifies such radically disparate treatment of different classes of unsecured creditors of the same rank and priority; it is just as "convenient" for the Trustee to write a check for 30 or 50 cents on the dollar to a Class 3 "convenience" claimant as it is to write a check for 100 cents on the dollar.

49.    Moreover, a rationale that is typically offered for granting more favorable treatment to the "convenience" creditors, i.e., that they typically consist of trade creditors who provide goods and services to the debtor, and with whom the debtor wishes to continue to deal following confirmation, is wholly inapplicable here. *See Mortgage Inv. Co. of El Paso*, 111 B.R. at 615 (finding unfair discrimination where officers of debtor admitted that replacement trade creditors could be obtained, thus discrediting the argument that preferential treatment of trade creditors was justified by the debtors' desire to continue their business relationships). This is a liquidating chapter 11 plan and, following confirmation, the Debtor will have no need to continue doing business with any Class 3 Claimant.

50.    Moreover, the Plan's discriminatory distribution scheme also fails to pass muster under other elements of the four-part test of *Mortgage Inv. Co. of El Paso, Texas*. For example, no reason has been articulated why a plan could not be confirmed and consummated without this disparity in treatment. Moreover, the disparity is not a small one, but is substantial; the treatment of the class discriminated against is substantially worse than the treatment of the

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 30

415931v5

class that benefits from the discrimination.

51.     Thus, the disparity in treatment between Classes 3 and 5 violates the mandate of section 1129(b)(1), and confirmation of the Plan must be denied.

## II.

## RESERVATION OF RIGHT TO AMEND OR SUPPLEMENT

Discovery in this matter has not yet been completed, and the Kornman Parties reserve the right to amend or supplement this Objection based on the results of discovery.

## III.

## REQUEST FOR PERMISSION TO EXCEED PAGE LIMIT

The Kornman Parties respectfully request that the Court authorize the filing of this brief in excess of 25 pages.

## IV.

## CONCLUSION

52.     For the reasons and based on the authorities presented above, the Kornman Parties respectfully request that the Court deny confirmation of the Plan.

Dated: June 1, 2007

Respectfully submitted,

/s/ Andrew M. Parlen
Isaac M. Pachulski (Cal. State Bar No. 62337)
Frank A. Merola (Cal. State Bar No. 136934)
Andrew M. Parlen (Cal. State Bar No. 230429)
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600 Telephone
(310) 228-5788 Facsimile

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
John Volney

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 31

415931v5

Texas Bar No. 24003118
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page 32

415931v5

## CERTIFICATE OF SERVICE

This is to certify that on June 1, 2007, a true and correct copy of the foregoing document was served (i) by U.S. first class mail, and where shown, by e-mail, on the parties listed below; and (ii) by e-mail on the parties who receive electronic notice in this case pursuant to the Court's ECF filing system.

Chapter 11 Trustee's Counsel
E. Lee Morris
Munsch Hardt Kopf& Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
lmorris@Munsch.com

James G. Munisteri
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
jmunisteri@gardere.com

Michael J. Gearin
Kirkpatrick & Lockhart Preston
Gates & Ellis LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
michael.gearin@klgates.com

Jay A. Brandt, Esq.
Law Offices of Jay A. Brandt, P.C.
3506 Cedar Springs Rd.
Dallas, TX 75219
jbrandt@smalouf.com

Dan S. Boyd, Esq.
The Boyd Law Firm, P.C.
400 Providence Towers
East 5001 Spring Valley Road
Dallas, Texas 75244
dan@boydlawfirmpc.com

Lawrence R. Elleman
Dinsmore & Shohl LLP
255 East 5th Street, Suite 1900
Cincinnati, OH 45202
ELLEMAN@DINSLAW.com

Paul M. Koning
Hughes & Luce LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
KONINGP@HughesLuce.com

Debtor's Counsel
David W. Parham
Baker & McKenzie
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
David.W.Parham@bakernet.com

Cole B. Ramey
Crouch & Ramey, L.L.P.
1445 Ross Ave., Suite 3600
Dallas, TX 75202
CRamey@crouchfirm.com

United States Trustee
c/o Nancy Sue Resnick, Esq.
Office of U.S. Trustee
1100 Commerce Street, Room 9C60
Dallas, Texas 75242
nancy.s.resnick@usdoj.gov

John P. Lewis, Jr.
1412 Main Street, No. 210
Dallas, Texas 75202
jplewisjr@mindspring.com

Jim Flegle
Loewinsohn Flegle Deary, LLP
12377 Merit Drive, Suite 900
Dallas, Texas 75251
jimf@texasverdict.com

Scott Everett
Haynes and Boone, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
scott.everett@haynesboone.com

The Heritage Organization, LLC
c/o Vickie A. Walker
P.O. Box 910
Addison, TX 75001-0910

Chapter 11 Trustee
Dennis S. Faulkner
Lain, Faulkner & Co. P.C.
400 N. St. Paul, Suite 600
Dallas, TX 75201

W. Ralph Canada, Jr.
Shore Deary LLP
2525 McKinney Ave., Suite 156
Dallas, TX 75201

Valiant Leasing, LLC
c/o Vickie A. Walker
P.O. Box 910
Addison, TX 75001-0910

Steadfast Investments, LP
c/o Vickie A. Walker
P.O. Box 910
Addison, TX 75001-0910

Strategic Leasing, LP
c/o Vickie A. Walker
P.O. Box 910
Addison, TX 75001-0910

Brian L. Czerwinski
3572 Corkwood Drive
Frisco, TX 75034

Buchanan Visual
Communications
12400 Ford Road
Farmers Branch, TX 75234

---

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"

415931v5

Timothy W. Seaberg
8506 Silverton Drive
Frisco, TX 75034

Collin R. Moore
6405 Castlemere Drive
Plano, TX 75093

Brian A. Turchi
5329 Golfside Drive
Frisco, TX 75035

Gary M. Kornman
3640 Haynie
Dallas, TX 75205

Dallas County Tax Assessor
P.O. Box 560368
Dallas, TX 75356

Julie A. Galek
305 Shelmar
Euless, TX 76039

Kroney-Mincey, Inc.
12221 Merit Drive
Dallas, TX 75251

Federal Express
P.O. Box 1140, Dept. A
Memphis, TN 38101-1140

Michel M. Kornman
6707 Brookshire
Dallas, TX 75230

Westin Galleria Dallas
13340 Dallas Parkway
Dallas, TX 75240

McShan Florist, Inc.
P.O. Box 18085
Dallas, TX 75218

Holland Neff O'Neil
Jason N. Bramlett
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm
Dallas, TX 75201

RIA Group
P.O. Box 6159
Carol Stream, IL 60197-6159

Dallas Refinishing
2615 Sedgeway Lane
Carrollton, TX 75006

Alexander C. Chae
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, TX 77002

Richard S. Anigian
Amy M. Walters
Haynes and Boone LLP
901 Main Street, Suite 3100
Dallas, TX75202-3789

Laurie A. Spindler
Linebarger Goggan Blair & Sampson
LLP
2323 Bryan Street, Ste. 1600
Dallas, TX 75201

Meredyth A. Purdy
Special Assistant, US Atty
Office of Chief Counsel for IRS
4050 Alpha Rd., 13th Floor
Mail Code 2000NWSAT
Dallas, TX 75244-4203

Jim L. Flegle
Loewinshn Flegle Deary LLP
12377 Merit Drive, Suite 900
Dallas, TX 75251

Koshland Family Partnership LP
P.O. Box 7310
Menlo Park, CA 94026-7310

Stephen F. Malouf
Law Ofc of Stephen F. Malouf,
PC
Nancy E. Freeman, Esq.
Law Offices of Nancy E.
Freeman, PC
Jay A. Brandt, Esq.
J3811 Turtle Creek Blvd.
Suite 1600
Dallas, TX 75219

Elizabeth H. Sandwith
Estate of W. Ronald Sandwith
Linda K. Sandwith
c/o Mikron Industries, Inc.
1034 6th Avenue North
Kent, WA 98032
J. Robert Forshey
Jeff P. Prostok
Forshey & Prostok LLP
777 Main Street, Suite 1290
Fort Worth, TX 76102

John Rockney Wilferth
c/o Richards and Valdez
Attn: John E. Richards
J.P. Morgan International Plaza
14221 Dallas Parkway, Suite 1400
Dallas TX 75254
Frank Hill/Robert A. Gammage
Michael D. Schattman
Hill Gilstrap, PC
1400 W. Abram
Arlington, TX 76013

Donald H. Flanary, Jr.
The Flanary Group
325 N. St. Paul St., Suite 2100
Dallas, TX 75201-3871

Internal Revenue Service
Special Procedures Staff
Mail Code 5020-DAL
1100 Commerce St, Room 9B8
Dallas, TX 75242

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"

415931v5

Shawn M. Christianson
Buckhalter, Nemer, Fields &
Younger, PC
333 Market Street, 25th Floor
San Francisco, CA 94105-2130

Gilbert A. Lazarus
Lazarus & Lazarus, PC
240 Madison Avenue, 8th Floor
New York, NY 10016

Marsha L. Dekan
Cliff A. Wade
SettlePou
3333 Lee Parkway, 8th Floor
Dallas, TX 75219

Rosa Orenstein, Esq.
Orenstein and Associates, P.C.
1401 Elm Street, Suite 3700
Dallas, TX 75202

John S. Clayman
Frederic Dorwart
Old City Hall
124 East Fourth Street
Tulsa, OK 74103-5010

Gretchen M. Santamour
Wolf, Block, Schorr & Solis-
Cohen LLP
1650 Arch Street, 22nd Fl.
Philadelphia, PA 19103

Elizabeth Banda
Perdue, Brandon, Fielder, Collins &
Mott, LLP
P.O. Box 13430
Arlington, TX 76094-0430
Mr. David A. Sandwith
2435 74th Ave., SE
Mercer Island, WA 98040

Scott Everett
Haynes and Boone LLP
901 Main Street, Suite 3100
Dallas, TX 75202

Mr. Jeffrey S. Sandwith
205 Betsy Lane
Richmond, KY 40475

Mr. Mark A. Sandwith
5904 SE 20th St.
Mercer, Island, WA 98040

David N. Neale/Beth Ann R.
Young
Levene, Neale, Bender, Rankin
& Brill LLP
10250 Constellation Blvd.,
Suite 1700
Los Angeles, CA 90067

Cole B. Ramey, Esq.
Courch & Ramey
1445 Ross Avenue, Ste. 3600
Dallas, TX 75202
David Bryant, Esq.
Cox Smith Matthews, Inc.
1201 Elm Street, Suite 3300
Dallas, TX 75270

Ms. Susan Sandwith Crader
22736 Sweet Meadow
Mission Viejo, CA 92692

J. Scott Rose/Toni Price
Jackson Walker LLP
112 East Pecan St., Suite 2400
San Antonio, TX 78205

/s/ Andrew M. Parlen
Andrew M. Parlen

---

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"

Page 35

415931v5

## TABLE OF CONTENTS

                                                                    **Page(s)**

I.    ARGUMENT ....................................................................................................4

      A.    The Plan Does Not Comply with the Applicable Provisions of the
            Bankruptcy Code, as Required by Section 1129(a)(2) of the Code,
            Because the Separate Classification of "Substantially Similar"
            Non-Priority Unsecured Claims Into Three Separate Classes
            Violates Section 1122 of the Code and Represents an Improper
            Effort to Gerrymander an Impaired Consenting Class for Purposes
            of Section 1129(a)(10). .....................................................................4

            1.    The Separate Classification of Sixteen Creditors Into Class
                  3 Is Not "Reasonable And Necessary For Administrative
                  Convenience," As Required By Section 1122(b)........................7

            2.    The Separate Classification of Nine Creditors in Class 5
                  Solely on the Basis That They are "Insiders" Violates
                  Section 1122(a). .......................................................................11

      B.    The Plan Fails to Comply with Section 1129(a)(2) Because it
            Includes Provisions for the Settlement of Claims Against the Estate
            That are Not Authorized by Section 1123 of the Code...........................17

      C.    The Plan Does Not Satisfy the Requirements of Sections 1129(a)(2)
            and 1129(a)(3) of the Bankruptcy Code Because the Trustee
            Solicited the Votes of Client Claimants to Accept the Plan Prior to
            the Transmission of a Court-Approved Disclosure Statement in
            Violation of Section 1125(b) of the Code................................................19

      D.    Upon the Designation of the Votes of the Client Claimants, the Plan
            Will Not be Able to Satisfy the Requirements of Section
            1129(a)(10) of the Bankruptcy Code. .....................................................25

      E.    The Trustee Has Not Met His Burden of Demonstrating That the
            Plan Is Feasible. .....................................................................................26

      F.    The Plan Cannot Be Confirmed Over the Rejection of the Plan by
            Class 5, Because the Plan Discriminates Unfairly Against Class 5........27

II.   RESERVATION OF RIGHT TO AMEND OR SUPPLEMENT .......................31

III.  REQUEST FOR PERMISSION TO EXCEED PAGE LIMIT ...........................31

IV.   CONCLUSION .................................................................................................31

_____
OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page i

415931v5

## TABLE OF AUTHORITIES

**CASES**

In re 11,111, Inc.,
   117 B.R. 471 .................................................................................... 14, 15

In re Austin Ocala Ltd.,
   152 B.R. 773 (Bankr. M.D. Fla. 1993) ............................................ 11

In re Barnes,
   309 B.R. 888 (Bankr. N.D. Tex. 2004) ........................................... 26

Beal Bank, S.S.B. v. Waters Edge Ltd.,
   248 B.R. 668 (D. Mass. 2000) ......................................................... 16

Beal Bank, S.S.B. v. Way Apartments (In re Way Apartments),
   201 B.R. 444 (N.D. Tex. 1996)........................................................ 8

In re Boston Harbor Marina Co.,
   157 B.R. 726 (Bankr. D. Mass. 1993) ............................................ 11

Boudette v. Barnette,
   923 F.2d 754 (9th Cir. 1991) .......................................................... 18

Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc),
   622 F.2d 872 (5th Cir. 1980) .......................................................... 14

In re Bryson Properties, XVIII,
   961 F.2d 496 (4th Cir. 1992) .......................................................... 14

Caminetti v. United States,
   242 U.S. 470, 485; 37 S.Ct. 192, 194 (1917)................................. 21

In re Careline Nat'l Corp.,
   No. 95-16574-D 1995 WL. 750160 ............................................ 14, 15

In re Clamp-All Corp.,
   233 B.R. 198 (Bankr. D. Mass. 1999) ............................................ 25

Connecticut Nat'l Bank v. Germain,
   503 U.S. 249, 112 S. Ct. 1146 (1992).............................................. 21

In re Drexel Burnham Lambert Group,
   138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............................................ 17

Everett v. Perez (In re Perez),
   30 F.3d 1209 (9th Cir. 1994) .......................................................... 19

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page ii

415931v5

Fairfield Executive Assocs. v. Hyperion Credit Capital Partners, L.P.,
    161 B.R. 595 (D.N.J. 1993) ........................................................................... 5

In re Frascella Enters., Inc.,
    360 B.R. 435 (Bankr. E.D. Pa. 2007) ........................................................ 11

In re General Homes Corp. FGMC, Inc.,
    134 B.R. 853 (Bankr. S.D. Tex. 1991) ....................................................... 21

Greene v. United States,
    79 F.3d 1348 (2d Cir. 1996), *cert. denied*, 519 U.S. 1028 (1996) ..................... 18

Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate,
    Inc.),
    177 F.3d 719 (8th Cir. 1999), *aff'd sub nom* ........................................ 18

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
    530 U.S. 1 (2000) ........................................................................................ 19

Heartland Fed. Savings & Loan Ass'n (In re Briscoe Enters., Ltd., II),
    994 F.2d 1160 (5th Cir. 1993) ................................................................... 12

In re J T Thorpe Co.,
    308 B.R. 782 (Bankr. S.D. Tex. 2003), *aff'd, adopted* ......................... 4

Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.),
    622 F.2d 709 (5th Cir. 1980) ..................................................................... 13

Magill v. Newman (In re Newman),
    903 F.2d 1150 (7th Cir. 1990) ................................................................... 19

In re Mortgage Inv. Co. of El Paso, Texas,
    111 B.R. 604 (Bankr. W.D. Tex. 1990) ......................................... 28, 29, 30

In re NII Holdings,
    288 B.R. 356 (Bankr. D. Del. 2002) ................................................... 21, 23

In re Northwest Timberline Enterprises, Inc.,
    348 B.R. 412 (Bankr. N.D. Tex. 2006) ................................................ 9, 10

In re Paolini,
    312 B.R. 295 (Bankr. E.D. Va. 2004) ......................................................... 9

Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III
    Joint Venture),
    995 F.2d 1274 (5th Cir. 1991) ................................................. 6, 9, 12, 16

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"

Page iii

415931v5

In re Premiere Network Servs., Inc.,
   333 B.R. 130 (Bankr. N.D. Tex. 2005) ............................................................ 16

Resolution Trust Corp. v. Dooley (In re Dooley),
   No. 92-3121, 1992 U.S. App. LEXIS 28730 (6th Cir. Oct. 26, 1992) ................ 22

In re S&W Enter.,
   37 B.R. 153 (Bankr. N.D. Ill. 1984) ......................................................... 8, 9, 10

In re Sentry Operating Co. of Tex., Inc.,
   264 B.R. 850 (Bankr. S.D. Tex. 2001) ...................................................... 6, 7, 29

In re Stations Holding Co, Inc.,
   No. 02-10882, 2004 Bankr. LEXIS 1220 ........................................... 20, 21, 24

Steele v. Cho (In re Cho),
   164 B.R. 730 (Bankr. E.D. Va. 1994) ............................................................ 10

Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc., (In re
   U.S. Truck Co., Inc.),
   800 F.2d 581 (6th Cir. 1986) .................................................................... 12, 16

In re Texaco Inc.,
   84 B.R. 893 (Bankr. S.D.N.Y. 1988) ............................................................ 23

In re Toy & Sports Warehouse, Inc.,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984) ("Code § 1129(a)(2) ............................ 23

In re Trans Max Techs., Inc.,
   349 B.R. 80 (Bankr. D. Nev. 2006) ............................................................... 22

In re Treasure Bay Corp.,
   212 B.R. 520 (Bankr. S.D. Miss. 1997) ........................................................ 23

In re United Marine, Inc.,
   197 B.R. 942 (Bankr. S.D. Fla. 1996) ........................................................... 11

United States v. Ron Pair Enters.,
   489 U.S. 235 ................................................................................................ 21

Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.),
   293 B.R. 489 (9th Cir. B.A.P. 2003) ............................................................. 18

In re Waterways Barge P'ship,
   104 B.R. 776 (Bankr. N.D. Miss. 1989) ........................................................ 12

_____

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"

In re Worldcom, Inc.,
    No. 02-13533, 2003 Bankr. LEXIS 1401 ................................................................ 22, 23

**STATUTES**

11 U.S.C. § 1122 .................................................................................................... 2, 4, 5
11 U.S.C. § 1123(b) ............................................................................................. 17, 18, 19
11 U.S.C. § 1125(b) .................................................................................................. *passim*
11 U.S.C. § 1129(a) .................................................................................................. *passim*

OBJECTION OF CREDITORS GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO
CONFIRMATION OF "TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE"
Page v

415931v5