IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 04-35574-BJH-11 |
| THE HERITAGE ORGANIZATION, L.L.C., | § | (CHAPTER 11) |
| | § | |
| Debtor. | § | Hearing: June 11, 2007 @ 9:00 a.m. |

**PLAN PROPONENTS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE TRUSTEE'S AND CLIENT CLAIMANTS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE AND JOINT REPLY TO OBJECTIONS TO CONFIRMATION FILED BY GARY M. KORNMAN, GMK FAMILY HOLDINGS, LLC AND W. RALPH CANADA, JR.**

TO THE HONORABLE BARBARA J. HOUSER, U.S. BANKRUPTCY JUDGE:

COME NOW Dennis S. Faulkner (the "Trustee"), the duly-appointed Chapter 11 Trustee, and the Client Claimants[1] (together with the Trustee, the "Plan Proponents") and file this Memorandum of Law in Support of Confirmation of the Trustee's and Client Claimants' First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code and Joint Reply To Objections To Confirmation Filed By Gary M. Kornman ("G. Kornman"), GMK Family Holdings, LLC ("GMK") (collectively, the "Kornman Parties") and Ralph Canada, Jr. ("Canada") (collectively, the "Plan Objectors"), respectfully stating as follows:[2]

[continued on next page]

---

[1] The Client Claimants consist of the Fluharty Claimants, the Jenkins Claimants, Love, Patterson, the Powell Claimants, the Rainwater Claimants, the Sandwith Claimants, the Skinner Claimants, the Troutt Claimants and Woodruff (all as further defined in the Plan). The Client Tax Claimants consist of all of the Client Claimants with the exception of the Sandwith Claimants.

[2] Unless separately defined herein, all capitalized terms used herein shall have the same meanings ascribed to them in the Plan.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS...........................................................................................1

III.  ALL OF THE STATUTORY REQUIREMENTS FOR CONFIRMATION
OF THE PLAN HAVE BEEN MET ................................................................................3

    A.    Section 1129(a)(1): The Plan Complies with All Applicable
Provisions of the Bankruptcy Code ......................................................................3

        1.    The Plan Complies with the Requirements of Section 1122:
The Separate Classification of Classes 3, 4 and 5 is
Reasonable and Appropriate ......................................................................4

            (a)    Separate Classification of Classes 4 and 5 Pursuant
to § 1122(a) is Appropriate ............................................................5

                i.    Inequitable Conduct to the Detriment of
Creditors...............................................................................6

                ii.    Different Interests in the Plan and
Bankruptcy Case ..................................................................9

                iii.    Disparities Between Legal Rights......................................12

                iv.    Legitimate Business Reason ...............................................14

                v.    The Debtor's Own Plan Supports Separate
Classification of Insiders....................................................15

            (b)    Separate Classification of Class 3 Convenience
Claims Pursuant to § 1122(b) is Appropriate ................................17

        2.    The Plan Complies with the Requirements of Section
1123(a) ......................................................................................................22

            (a)    Section 1123(a)(1): The Plan Designates Classes .........................22

            (b)    Section 1123(a)(2): The Plan Identifies Impaired
Classes............................................................................................23

            (c)    Section 1123(a)(3): The Plan Specifies Treatment of
Impaired Classes ............................................................................23

            (d)    Section 1123(a)(4): The Plan Provides for Equality
of Treatment...................................................................................23

            (e)    Section 1123(a)(5): Contains Adequate Means of
Implementation ..............................................................................23

            (f)    Section 1123(a)(6): Charter Provisions are
Inapplicable to the Debtor.............................................................24

            (g)    Section 1123(a)(7): Plan Includes Provisions for
Selection of Officers and Directors that are
Consistent with Public Interest ......................................................24

         3.    The Plan Contains Appropriate Discretionary Plan
Provisions Under Section 1123(b)............................................................25

            (a)    Section 1123(b)(2): Assumption or Rejection of
Executory Contracts and Unexpired Leases ..................................25

            (b)    Section 1123(b)(3): Settlement and Enforcement of
Causes of Action.............................................................................25

         (c)     Section 1123(b)(6): The Inclusion of Provisions
Which are Not Inconsistent with Title 11 .....................................29

B.     Section 1129(a)(2): The Plan Proponents Have Complied with the
Bankruptcy Code .....................................................................................29

C.     Section 1129(a)(3): The Plan Was Proposed in Good Faith and Not
by Any Means Forbidden by Law ............................................................31

D.     Section 1129(a)(4): Payments in Connection with the Case Have
Been Approved or Are Subject to Approval..............................................33

E.     Section 1129(a)(5): The Plan Proponents Have Disclosed the
Identity and Affiliations of Future Officers and Directors of, and
Successors to, the Debtor..........................................................................34

F.     Section 1129(a)(6): The Debtor Does Not Charge Any Rates
Subject to Regulatory Approval................................................................35

G.     Section 1129(a)(7): The Plan is in the Best Interests of Creditors ............35

H.     Section 1129(a)(8): The Plan's Acceptance by Each Impaired
Class .......................................................................................................38

I.     Section 1129(a)(9): The Plan Provides for Proper Treatment of
Priority Claims.........................................................................................38

J.     Section 1129(a)(10): At Least One Impaired Class of Claims Has
Accepted the Plan ....................................................................................39

K.     Section 1129(a)(11): The Plan Meets the Feasibility Requirements ...................39

L.     Section 1129(a)(12): The Plan Provides for the Payment of All
Fees Payable Under 28 U.S.C. § 1930......................................................40

M.     Section 1129(a)(13): The Debtor Has No Retiree Benefits Subject
to Continuation.........................................................................................40

N.     Section 1129(b): The Plan is Fair and Equitable to, and Does Not
Discriminate Unfairly Against, Classes 5 and 6 ........................................40

     1.     The Plan Does Not Discriminate Unfairly Against Classes
5 and 6.........................................................................................41

     2.     The Plan is Fair and Equitable to Class 5 .................................42

     3.     The Plan is Fair and Equitable to Class 6 .................................43

O.     Section 1129(c): There are No Competing Plans ......................................43

P.     Section 1129(d): There are No Tax or Security Motives Behind the
Plan .......................................................................................................43

IV.  CONCLUSION...........................................................................................44

# TABLE OF AUTHORITIES

## Cases

*Beal Bank, S.S.B. v. The Way Apartments* (*In re The Way Apartments, D.T.*), 201 B.R. 444 (N.D. Tex. 1996) .................................................................................................................. 14

*Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp.* (*In re Boston Post Rd. Ltd. P'ship*), 21 F.3d 477 (2nd Cir. 1994) .................................................................................................. 5

*Brinkley v. Chase Manhattan Mortgage & Realty Trust* (*In re LeBlanc*), 622 F.2d 872 (5th Cir. 1980) .............................................................................................................. 6, 7, 8

*Financial Sec. Assurance Inc. v. T-H New Orleans Limited Partnership* (*In re T-H New Orleans Limited Partnership*), 116 F.3d 790 (5th Cir. 1997) ............................................ 32

*Heartland Fed. Savs. & Loan Assoc. v. Briscoe Enters., Ltd., II* (*In re Briscoe Enters., Ltd.*), 994 F.2d 1160 (5th Cir. 1993) ............................................................................... 6

*In re 11,111, Inc.*, 117 B.R. 471 (Bankr. D. Minn. 1990) ................................................ 8, 9, 41

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986) ............................. 32

*In re Adelphia Communications Corp.*, — B.R. —, 2007 WL 866643 (Bankr. S.D. N.Y. 2007) 26

*In re Apex Oil Co.*, 118 B.R. 683 (Bankr. E.D. Mo. 1990) ..................................................... 34

*In re Arden*, 176 F.3d 1226 (9th Cir. 1999) ........................................................................... 28

*In re Armstrong World Indus., Inc.*, 348 B.R. 136 (D. Del. 2006) ...................................... 26, 33

*In re Austin Ocala Ltd.*, 152 B.R. 773 (Bankr. M.D. Fla. 1993) .............................................. 6

*In re Briscoe Enters., Ltd.*, 994 F.2d 1160 (5th Cir. 1993) ............................................ 6, 14, 35

*In re Coram Healthcare Corp.*, 315 B.R. 321 (D. Del. 2004) ................................................. 29

*In re Corcoran Hosp. Dist.*, 233 B.R. 449 (Bankr. E.D.Cal. 1999) ........................................ 42

*In re Cornwall Personal Ins. Agency, Inc.*, No. 02-50463-RLJ, Memorandum Opinion at 6 (Bankr. N.D. Tex. 2003) ................................................................... 5, 6, 9, 11, 12, 13, 19

*In re D&F Constr. Inc.*,  865 F.2d 673 (5th Cir. 1989) ............................................................. 3

*In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723 (Bankr. S.D. N.Y. 1992) (by reference to § 1123(b)(3)(A)) ................................................................................... 26, 27, 33

*In re Eagle Bus Mfg. Inc.*, 134 B.R. 584, 598 (S.D. Tex. 1991),*aff'd*, 158 B.R. 421 (S.D. Tex. 1993) ............................................................................................................................... 30

*In re Elder*, 325 B.R. 292 (Bankr. N.D. Cal. 2005) ................................................................ 29

*In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988) ................................ 33, 34, 41

*In re Gulf Coast Holdings, Inc.*, No. 06-31695, 2007 WL 1340802, slip opinion at 2 (Bankr. N.D. Tex. April 30, 2007)................................................................................................. 18

*In re Hendrick*, 45 B.R. 976 (Bankr. M.D. La. 1985)............................................................. 37

*In re Labrum & Doak, LLP*, 227 B.R. 372 (Bankr. E.D. Pa. 1998) .......................................... 37

*In re Jartran, Inc.*, 44 B.R. 331 (Bankr. N.D.Ill. 1984)................................................... 18, 42

*In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part & remanded in part*, 78 B.R. 407 (S.D.N.Y. 1987) .............................................................. 30, 41

*In re Landing Assocs., Ltd.*, 157 B.R. 791 (Bankr. W.D. Tex. 1993).......................................... 32

*In re Leser*, 939 F.2d 669 n.4 (8th Cir. 1991) ....................................................................... 18

*In re Madison Hotel Assocs.*, 749 F.2d 410 (7th Cir. 1984) .................................................... 32

*In re Mid-State Raceway, Inc.*, 2006 WL 4050809, (Bankr. N.D. N.Y. 2006) ..................... 26, 33

*In re Mirant Corp.*, No. 03-46590, 2007 WL 1258932, slip op. at 7 (Bankr. N.D. Tex. April 27, 2007) ............................................................................................................................. 5, 40

*In re Mortgage Investment Co.*, 111 B.R. 604 (Bankr. W.D. Tex. 1990) ..................................... 41

*In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17 (Bankr. D. Mass. 2002)...................................... 20

*In re Northwest Timberline Enterprises*, 348 B.R. 412 (Bankr. N.D. Tex. 2006).................. 18, 19

*In re Paolini*, 312 B.R. 295 (Bankr. E.D. Va. 2004) ................................................................. 22

*In re PWS Holding Corp.*, 228 F.3d 224 (3rd Cir. 2000)................................................................. 31

*In re Rivera Echevarria*, 129 B.R. 11 (Bankr. D.P.R. 1991)........................................................ 41

*In re South Aiken, Ltd.*, 121 B.R. 7 (Bankr. W.D. Penn. 1990)................................................... 19

*In re Stratford Assocs. Ltd. Partnership*, 145 B.R. 689 (Bankr. D. Kan. 1992)........................... 34

*In re Texas Extrusion Corp.*, 844 F.2d 1142 n.23 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988)
........................................................................... 10, 12, 21, 36, 44, 45, 46, 47

*In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141 (Bankr. S.D.N.Y. 1984)................................ 30

*In re U.S. Truck Co., Inc.*, 800 F.2d 581 (6th Cir. 1986)......................................................... 5, 14

*In re United Marine, Inc.*, 197 B.R. 942 (Bankr. S.D. Fla. 1996 ................................................... 6

*In re Wabash Valley Power Ass'n*, 72 F.3d 1305 (7th Cir. 1995) ......................................... 6, 9, 15, 16

*In re Waterways Barge P'ship*, 104 B.R. 776 (Bankr. N.D. Miss. 1989)..................................... 22

*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Cooperative, Inc.)*, 150 F.3d
503 (5th Cir. 1998) (quoting *T-H New Orleans*), *cert. denied*, 526 U.S. 1144 (1999)............. 32

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995
F.2d 1274 (5th Cir. 1992) ................................................................................................................. 17

*Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323 (9th Cir. 1994) ............................ 11, 20

*Steele v. Cho (In re Cho)*, 164 B.R. 730 (Bankr. E.D. Va. 1994)............................................... 22

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co.,
Inc.)*, 800 F.2d 581 (6th Cir. 1986) ................................................................................................... 5

*Valera v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489 (9th B.A.P. 2003)
........................................................................................................................................................ 27

## Statutes

11 U.S.C. § 1122 ................................................................................................................... 4, 5

11 U.S.C. § 1123 ................................................................. 22, 23, 24, 25, 26, 27, 28, 29

11 U.S.C. § 1126 ........................................................................................................ 16, 20, 36

11 U.S.C. § 1129 ................................. 3, 29, 31, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43

11 U.S.C. § 1129(a)(1)............................................................................................................ i, 3

11 U.S.C. § 502 ........................................................................................................................ 16

11 U.S.C. §§ 510(c) ........................................................................................................... 42, 43

# I.  INTRODUCTION

The Plan Proponents have proposed a Plan which has been accepted by at least one impaired class of creditors in this case.  The only impediments to confirmation are those objections lodged by parties who were all insiders of the Debtor.  The insiders' objections should not be sustained and confirmation of the Plan should not be derailed.  For the reasons set forth herein, the Plan Proponents submit that all of the requisite statutory requirements for confirmation of the Plan have been met and that, therefore, the Plan should be confirmed.

# II.  STATEMENT OF FACTS

The pertinent facts are set forth in the Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of the Trustee's and Client Claimants' First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "<u>Disclosure Statement</u>") and the Declaration of Dennis S. Faulkner in support of confirmation of the Plan (the "<u>Faulkner Affidavit</u>" or "<u>Faulkner Decl.</u>") which are both on file in this bankruptcy case (the "<u>Case</u>").  The following is a brief summary of facts pertinent to the Plan which are discussed more thoroughly in the Disclosure Statement and the Faulkner Declaration.

When the Trustee was appointed in August 2004, other than certain cash and office equipment of nominal value, the Debtor's primary assets were causes of action.  The Debtor had scheduled liabilities of nearly $9,571,996.42 and at least 93 proofs of claim were filed in the Bankruptcy Case, aggregating approximately $482,639,628.  Excluding duplicate proofs of claim and proofs of claim that have been amended, the total is approximately $212,382,348 and this number does not take into account proofs of claim which do not state a liquidated amount.  *Id.* The Trustee estimates the Debtor's liabilities as of April 30, 2007, *assuming the Plan is approved*, to be between $21,826,616 and $34,328,852.  The Trustee estimates the Debtor's assets as of April 30, 2007, *assuming the Plan is approved*, to be between $3,681,340 and

$63,283,815. The vast majority of the assets are comprised of causes of action that the estate possesses.

The Trustee has conducted an extensive investigation into the cause of the Debtor's financial downfall and assessed the viability of the various causes of action held by the Debtor/estate. Certain key proceedings are described below while all of the litigation being pursued by the Trustee is more specifically described in the Disclosure Statement. The highest dollar adversary proceeding brought by the Trustee was instituted against the former management of the Debtor and various insiders of the Debtor, including G. Kornman and GMK, as more particularly described in Section VI.G.12. of the Disclosure Statement. The Trustee also brought contested claim objection proceedings or instituted adversary proceedings against all of the Client Claimants as more particularly described in Section VI.E. and G of the Disclosure Statement. Lastly, the Trustee also instituted an adversary proceeding against Mikron Industries, Inc. ("Mikron") which is more particularly described in Section VI.G.8. of the Disclosure Statement.

In large part, the Plan is structured around, and dependent upon, approval of the Trustee's settlement with the Client Tax Claimants and the Sandwith Claimants/Mikron (the "Settling Parties"). The Plan provides for the liquidation of the Debtor and the consummation of the overall settlement reached with the Settling Parties. The settlement can be conceptually broken down into two component settlements: (a) first, the Plan provides for the settlement of the estate's claims against the Client Tax Claimants, and for the settlement of the Client Tax Claimants' claims against the estate; and (b) next, the Plan provides for the settlement of the estate's claims against the Sandwith Claimants and Mikron and for the settlement of the Sandwith Claimants and Mikron's claims against the estate. See Plan, art. 7.

The Plan has been accepted by the holders of Class 4 General Unsecured Claims (holding in excess of $17,510,526.36 in allowable claims for voting purposes) who have all voted to accept the Plan. *See* Faulkner Decl., ¶ 30. The only parties-in-interest who have filed objections to confirmation of the Plan are parties who were insiders of the Debtor, including G. Kornman, GMK and Canada. G. Kornman is the founder of the Debtor. *See* Joint Pre-Hearing Order ¶ 7. GMK is the managing member of the Debtor and G. Kornman was the manager of GMK between January 1, 1999 and at least April 1, 2004. *See* Joint Pre-Hearing Order ¶¶ 10, 24. Canada is the former president of the Debtor. *See* Joint Pre-Hearing Order ¶ 13. The Plan Objectors' objections to the Plan are without merit and should be denied.

### III. ALL OF THE STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN HAVE BEEN MET

**A.      Section 1129(a)(1): The Plan Complies with All Applicable Provisions of the Bankruptcy Code**

Pursuant to Section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). In determining whether a plan complies with Section 1129(a)(1), the Court "must consider the entire plan in the context of … the particular facts and circumstances [of the case]." *In re D&F Constr. Inc.*, 865 F.2d 673, 675 (5th Cir. 1989). The legislative history of Section 1129(a)(1) explains that it embodies and incorporates the requirements of Sections 1122 and 1123 governing the classification of claims and the contents of the plan, respectively. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 214 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978). Thus, each of these sections is considered below.

1.      **The Plan Complies with the Requirements of Section 1122: The Separate
        Classification of Classes 3, 4 and 5 is Reasonable and Appropriate**

The three unsecured-creditor classes under the Plan mirror the three primary unsecured-creditor interests in this bankruptcy case:

- Gary Kornman and his insiders, affiliates, and associates, who have non-creditor interests in this case or have claims that the Client Claimants assert are derived from Heritage's superior and hidden knowledge of the risks associated with what the Client Claimants assert are Heritage's fraudulent tax shelters and practices.

- The Client Claimants, who have claims that they assert are derived from Heritage's fraudulent tax shelters and practices and have reasonable settlements with the Trustee concerning their claims.

- The sixteen Convenience Claimants, who have claims as small as $2.74 and who have a different stake in this case than do the Client Claimants or Insiders.

As explained below, the Plan's classes are consistent with the Bankruptcy Code, consistent with this Court's prior opinions, and consistent with the Debtor's own plan filed in August 2004.

Section 1122 governs the classification of claims in a plan of reorganization:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  The Plan's classes satisfy both § 1122(a) and (b).

(a)    Separate Classification of Classes 4 and 5 Pursuant to § 1122(a) is
        Appropriate

Section 1122(a) addresses what types of claims may be placed in the same class and
requires that such claims be "substantially similar."  11 U.S.C. § 1122(a).  However, § 1122 does
not expressly require that all substantially similar claims be classified together.  *In re Cornwall
Personal Ins. Agency, Inc.*, No. 02-50463-RLJ, Memorandum Opinion at 6 (Bankr. N.D. Tex.
2003)  (unpublished memorandum opinion available on the "Opinions" link of this Court's web
page, [http://www.txnb.uscourts.gov/opinions](http://www.txnb.uscourts.gov/opinions)) (hereinafter "*In re Cornwall*");[3] *In re Mirant
Corp.*, No. 03-46590, 2007 WL 1258932, slip op. at 7 (Bankr. N.D. Tex. April 27, 2007)
(Findings of Fact and Conclusions of Law in support of the Amended Chapter 11 Plan of
Reorganization Proposed by Mirant NY-Gen, LLC) (hereinafter "*In re Mirant*");[4] *see also
Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp.* (*In re Boston Post Rd. Ltd. P'ship*), 21
F.3d 477, 481 (2nd Cir. 1994); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck
Co., Inc.* (*In re U.S. Truck Co., Inc.*), 800 F.2d 581, 585 (6th Cir. 1986).

Instead, as this Court has noted, "a plan proponent is afforded significant flexibility in
classifying claims under section 1122(a) of the Bankruptcy Code provided there is a *reasonable*
basis for the classification scheme and all claims within a particular class are substantially
similar."  *In re Mirant* at 7; (emphasis added); *In re Cornwall* at 6 ("In this regard, the debtor has
**considerable**, albeit not unlimited, discretion in classifying claims.  The court likewise has
**substantial** discretion in confirming a plan that separately classifies similar claims.") (internal
citations omitted) (emphasis added).

The reasonable basis for separate classification "generally falls within one or more of
three categories:   (1) legitimate business reason; (2) disparities between the legal rights of

---

[3] A true and correct copy of *In re Cornwall* is attached hereto as **Exhibit A**.

[4] A true and correct copy of *In re Mirant*  is attached hereto as **Exhibit B**.

holders of different claims; or (3) claimants have sufficiently different interests in the plan." *In re Cornwall* at 7 (citing *In re Wabash Valley Power Ass'n*, 72 F.3d 1305, 1321 (7th Cir. 1995)); *see also Heartland Fed. Savs. & Loan Assoc. v. Briscoe Enters., Ltd., II* (*In re Briscoe Enters., Ltd.*), 994 F.2d 1160, 1167 (5th Cir. 1993) (noting that good business reasons may support separate classification and finding that certain non-creditor interests justified the separate classification). Courts have also upheld separate classification on the basis of certain inequitable conduct and special knowledge of risks that is used to the detriment of creditors, although it is not clear whether this basis falls into one of the categories above or is a separate category. *See Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc)*, 622 F.2d 872, 879 (5th Cir. 1980) (case decided under the Bankruptcy Act). The separate classification of Classes 4 and 5 is supported by each of these reasonable bases, as well as by the Debtor's own proposed plan.[5]

i.   Inequitable Conduct to the Detriment of Creditors

The leading case discussing inequitable conduct as a basis for separate classification is *Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc)*, 622 F.2d 872 (5th Cir. 1980). In *LeBlanc*, the court analyzed the propriety of a plan that placed insiders in a separate class from unsecured trade creditors. The court recognized that a "plan should not arbitrarily classify or discriminate against creditors." *Id.* at 879. The court further recognized, however, that "[t]he fact that bankruptcy courts are courts of equity . . . allows exceptions to any strict rules of classification of claims. A bankruptcy court can permit discrimination when the facts of

---

[5] Both Canada and the Kornman parties mistakenly suggest that Class 5 members are separately classified simply because they are "insiders," and cite in support, for example, *In re United Marine, Inc.*, 197 B.R. 942 (Bankr. S.D. Fla. 1996 (rejecting argument that insider votes are per se disqualified in determining class acceptance under 1126; mere fact that claims are held by insiders is insufficient to require separate classification); *In re Austin Ocala Ltd.*, 152 B.R. 773 (Bankr. M.D. Fla. 1993) (denying confirmation where debtor separately classified insiders for sole purpose of obtaining accepting class; no allegations of inequitable conduct or noncreditor interests that made insiders' claims different).

It is true that the members of Class 5 are insiders, but the reasons for their separate classification involve much more than simply their status as insiders.

the case justify it." *Id.*  The court held that the facts at issue justified such an exception because: (1) the insiders would have taken nothing under a liquidation; (2) the great majority of insiders had not objected to the plan's classification scheme; and (3) it was "far from clear that the classification scheme in this case was arbitrary and discriminatory." *Id.*  The court expanded on the third reason, noting that the trade creditors "advanced goods and services to the debtor in the ordinary course of business, frequently without any knowledge of the debtor's financially perilous condition and without any real opportunity to protect themselves." *Id.*  In contrast, the insiders made loans to the debtor when they were in a position to know of the debtor's perilous financial condition and the risks involved with those loans.  *Id.*

LeBlanc supports the separate classification of the Insiders under the Plan.  First, just as the insiders in *LeBlanc* would recover nothing in a liquidation, the Insiders here would recover significantly less in a Chapter 7 liquidation considering the new bar date for client claims that would be established, the additional Chapter 7 administrative expenses, and the Chapter 7 trustee's fees.  *See* Disclosure Statement Article XII, at 75-76.  Second, as in *LeBlanc*, the great majority of Insiders (here, 6 of 9) have not filed a confirmation objection to the Plan's class structure.  And third, even though the Debtor no longer is an operating company as was the case in *LeBlanc*, the Client Claimants contend that the classification is not arbitrary or discriminatory given that Gary Kornman, Ralph Canada, and other Insiders knew of the high risks involved with the Debtor's abusive tax shelters[6] and practices and used that information and those practices to the disadvantage of the Client Claimants.

Ralph Canada, after leaving the Debtor's employment, made a living attacking the very type of inequitable conduct that justifies separate classification of Insiders under the Plan: Canada and his firm filed hundreds of complaints against tax shelter promoters, alleging that (a)

---

[6] As described by the Internal Revenue Service in its investigation of the Debtor.

tax shelter promoters knew or should have known that their tax shelters lacked economic substance and business purpose; (b) parties cannot contractually waive fraud claims because the contracts are instrumentalities of the tax shelter promoter's own fraud; (c) tax shelter promoters provided legal advice to client claimants; and (d) tax shelter promoters commit inequitable conduct when they promote "independent" legal counsel who in fact are part of the tax promotion scheme.  See **Exhibit C** attached hereto.

The principles of *LeBlanc* have been applied in other cases to support separate classification of inequitable insiders, even when formal equitable subordination complaints were not pending or granted.  For example, in *In re 11,111, Inc.*, 117 B.R. 471 (Bankr. D. Minn. 1990), the court considered a plan that placed general unsecured claims in a class that paid 40% of such claims.  A separate class was created for unsecured claims of former insiders who made loans to the debtor.  The plan provided that these claimants would receive nothing.  In addition, the debtor had objected to the insiders' claims, alleging that the claims should be equitably subordinated to other general unsecured claims.  The court held in a prior order that the claims would be allowed and that they were not subject to equitable subordination.  At confirmation, the insiders objected to the plan, arguing that it violated § 1122(a) by placing the insiders in a separate class solely for the purposes of manipulating voting and that it also unfairly discriminated against them.  The court, citing *LeBlanc*, rejected the insiders' arguments on classification and unfair discrimination:

> While the debtor's proposed treatment of [the insiders] may be discriminatory, I do not think that discrimination is unfair.  Like the insiders in *LeBlanc*, [the insiders here] knew they were putting their money at risk when they loaned money to the debtor.  As officers, directors, and employees of the debtor, they were fully aware of the financial condition of the debtor at the time they made their loans, and for several years thereafter.  As officers, directors, and employees of the debtor, they were in a unique position to influence the ongoing financial and business operations of the debtor.  ***Therefore, the debtor's proposed classification of [the insiders'] claims separately from those of other general***

> *unsecured claimants without the same knowledge or influence has a reasonable basis* and is not unfairly discriminatory.

*In re 11,111, Inc.*, 117 B.R. at 475 (emphasis added).

Because of the inequitable conduct of the Insiders described above, and the other inequitable conduct that overlaps into the categories below (such as failing to turn over documents, refusing to cooperate in discovery, and the apparent use of delay in this case to assist Gary Kornman in his criminal case), the separate classification of Insiders in Class 5 is reasonable and appropriate.

ii.    <u>Different Interests in the Plan and Bankruptcy Case</u>

Both the Client Claimants and the Insiders have different interests in the Plan and in this case that justify classifying them separately.  For example, the Client Claimants have entered into settlements with the Trustee under Article 7 of the Plan, the effectiveness of which depends upon Plan confirmation.  The claims of the Insiders are not similarly dependent upon confirmation of the Plan.  In *Cornwall*, this Court noted that such an interest in a proposed settlement under a plan justifies separate classification, citing *In re Wabash Valley Power Ass'n*, 72 F.3d 1305 (7th Cir. 1995).  In connection with its plan of reorganization, Wabash Valley Power Cooperative ("Wabash") settled litigation with PSI Energy, Inc. ("PSI") and proposed separately classifying PSI's unsecured claim from the claims of other unsecured creditors.  A creditor, REA, objected to the classification, alleging gerrymandering.  The Seventh Circuit specifically noted that separate classification is appropriate when there are significant disparities in legal rights of creditors, *or* good business reasons, *or* if claimants have different interests in a plan.  *Id.*  The Seventh Circuit correctly concluded that "because the confirmation of the Plan affects PSI's interests both with respect to its settlement of other litigation between it and Wabash and with respect to its ongoing business relationship with Wabash, its stake in the

Wabash reorganization differs significantly enough from that of the other unsecured creditors to warrant the separate classification of its claims." *Id.* at 1321.

The Insiders also have different interests in the Plan that justify classifying them separately. First, all but one of the Insiders have been sued by the Trustee for, among other things, (i) fraudulent conveyance pursuant to Section 544 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act, (ii) fraudulent conveyance pursuant to Section 548 of the Bankruptcy Code, (iii) preferential transfer pursuant to Section 547 of the Bankruptcy Code, (iv) breach of fiduciary duty, (v) gross negligence, (vi) breach of duty to creditors, (vii) waste and diversion of assets, (viii) single business enterprise, (ix) sham to perpetrate injustice, (x) alter ego, and (xi) civil conspiracy. The Trustee, among other things, seeks to recover in excess of $40 million in avoidable transfers and compensatory damages, plus exemplary damages in an amount greater than $10 million. The Insiders realize that approval of the reasonable settlements under the Plan will enable the Trustee to pursue these causes of action. The Insiders have a significant interest in making sure this litigation against Insiders does not continue. Even Ralph Canada recognized that Gary Kornman and the other defendants in that litigation have a unique interest in the bankruptcy case in not returning the transferred property. *See* Canada Dep. 141:21-142:14, June 2, 2007*, excerpt attached hereto as **Exhibit D**.

The Kornman parties' efforts to thwart the estate's litigation against Insiders manifests itself most clearly in the Kornman parties' repeated efforts to obstruct the discovery efforts of the Client Claimants—discovery efforts that the Client Claimants hoped would lead to helpful, discoverable evidence with which to win at trial or negotiate a favorable settlement with the estate. The Court has repeatedly admonished the Kornman parties for their multiple failures to comply with discovery requests, but those warnings have landed on deaf ears. As pointed out in the Trustee's renewed contempt motion and in the Client Claimants' renewed sanctions motion,

the Kornman parties have just recently produced, for the first time, thousands of tapes and additional documents that contain information that is highly relevant and responsive to discovery requests. The Plan Proponents have serious doubts that the Kornman parties—even to this date—have produced all responsive documents and tapes.

This Court has lamented several times that this case is nothing but litigation. The proposed settlement will put an end to significant litigation with the Client Claimants, leaving the Trustee's litigation with the Insiders. This Court has previously held that a creditor's claim can be separately classified when that creditor alone is involved in ongoing litigation with the debtor. *In re Cornwall* at 16-17 (upholding separate classification of creditor's claim: "Additionally, of all of the unsecured creditors, Brenholz alone is involved in ongoing litigation with [the debtor] Cornwall.") (citing *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) (same: approving separate classification and noting that "the bankruptcy court did not commit clear error in finding that Steelcase was the only unsecured creditor whose claim is currently being litigated")).

Second, Gary Kornman has a noncreditor interest in using delay tactics and discovery games in this case to his advantage in pending criminal proceedings against him. Throughout most of this bankruptcy case, Gary Kornman has refused to testify or otherwise participate, citing his Fifth Amendment privilege as a result of a criminal indictment. On April 9, 2007, Kornman entered into a Plea Agreement with the Government pursuant to which, among other things, Kornman pled guilty to one count of making false statements to the SEC. Kornman also obtained the Government's agreement to the following: "The government further agrees not to bring any additional charges against Kornman for . . . alleged obstructive conduct relating to the production of records to the bankruptcy trustee appointed over the Heritage Organization, L.L.C. after his appointment on or about August 16, 2004." (See Exhibit A attached to Doc. 1058).

Given the pattern of conduct by Gary Kornman, the Debtor out of possession, and GMK throughout the case, it is easy to understand why Gary Kornman negotiated this concession as part of his Plea Agreement.

Third, Gary Kornman and his affiliates and other insiders appear to have a noncreditor interest in making sure the Trustee does not settle with the Client Claimants because that settlement could further adversely affect ongoing non-bankruptcy litigation related to Gary Kornman.  Gary Kornman and his entity, COLM Producers, are appealing the District Court's rejection of the exact same strategy the Debtor sold to the Client Tax Claimants.  *See generally* docket for *Colm Producer, Inc. v. United States*, Civil Action No. 3:03-CV-3042-N, United States District Court for the Northern District of Texas, available through ECF.  Indeed, Gary Kornman's continued defense of the Heritage tax shelter strategies in the face of their complete rejection by the IRS and the courts may be a defensive mechanism by Gary Kornman in anticipation of possible further criminal charges relating to the Heritage tax shelters.  *See* Plan Proponents' Exhibit P251, Indictment against Ernst & Young professionals related to tax shelters, *United States v. Coplan*, 07 Crim. 453, United States District Court for the Southern District of New York.  For these reasons, Gary Kornman and his affiliates and other insiders appear to have a strong noncreditor interest in putting the kaibash on the proposed settlement.

### iii.   Disparities Between Legal Rights

This Court in *Cornwall* noted that different legal rights can justify separate classification. There are at least two different types of legal rights held by Insiders that justify separate classification of their claims.  First, "Contingent claims are legally different from fixed claims, and the holders of contingent claims have different legal rights against the estate."  *In re Cornwall* at 10.  Only three of the nine Insiders filed a confirmation objection to the Plan's

classification, and two of them have asserted sweeping, contingent indemnification claims.[7]

Gary Kornman, in his Notice of Rule 3018 Limitations, indicated that his contingent

indemnification claim may be as high as $64.5 million.  *See Kornman Affiliate Claimants' Notice*

*of Rule 3018 Limitations* at 2 [Docket No. 1105].  The sweeping, contingent indemnification

claims of the Insiders justify separately classifying their claims from the settled, fixed, liquidated

claims of the Client Claimants.

In addition, as Ralph Canada frequently points out, he currently has the only allowed

claim in Class 4 or Class 5.[8]  In that respect, his claim is legally different than the claims of the

Client Claimants, which are not yet allowed.  Because of the other factors supporting separate

classification of his claim (including inequitable conduct), Canada's claim properly belongs in

Class 5.  To the extent necessary, however, the Plan Proponents would agree to modify the Plan

and place Canada in his own class.

Finally, this Court in *Cornwall* upheld separate classification of an unsecured creditor's

claim in part because the creditor asserted a claim not only against the debtor, but also against

other jointly and severally liable nondebtor parties.  "[N]o other unsecured claim is therefore

subject to a variable amount of debt depending on the amount of payment from other parties."

---

[7] On September 14, 2004, GMK filed a proof of claim in the Bankruptcy Case (Claim No. 26) asserting a non-priority unsecured claim against the Debtor.  On September 15, 2004, GMK filed an amended proof of claim (the "POC") in the Bankruptcy Case (Claim No. 46) to assert a non-priority unsecured claim against the Debtor for indemnity (the "Claim").  As reflected in the attachment to the POC, GMK asserts in a sweeping fashion that it is generally entitled to indemnity, contribution and reimbursement to the extent allowed by agreement and/or applicable law.  However, GMK does not provide any specifics as to any amounts claimed or the basis for same.

On May 10, 2007, Gary Kornman filed an amended proof of claim in the Bankruptcy Case to assert a non-priority, unsecured claim against the Debtor in the partially liquidated amounts of $25,770.00 for alleged wages, $6,512,002.09 for indemnity, contribution and reimbursement (over $5.1 million of which was incurred in civil and criminal proceedings brought against him by the government), plus an additional unliquidated claim for indemnity, contribution and reimbursement.  With respect to the contingent indemnity claim, Gary Kornman asserts in sweeping fashion that he is generally entitled to indemnity, contribution and reimbursement to the extent allowed by agreement and/or applicable law.  In his Notice of Rule 3018 Limitations, Gary Kornman indicated that his contingent indemnification claim may be as high as $64.5 million.

[8] The Court has determined that his claim may be subject to equitable subordination notwithstanding allowance.  *See* Memorandum Opinion and Order dated 1/5/06, at 22, Adv. No. 04-3338.

---

*Cornwall* at 16.  In this case, many of the Client Claimants have asserted claims not only against

the Debtor, but also against nondebtor affiliates of the Debtor and its abusive tax shelter

promotion, including Gary Kornman, Ahrens & DeAngeli, and Lewis Rice.  The nature of the

Client Claimants' claims justifies classifying them separately.

iv.    <u>Legitimate Business Reason</u>

This category overlaps somewhat with the categories above.  When addressing whether a

good business reason exists for separately classifying similar claims, non-creditor interests

should be considered.  *In re Briscoe Enters., Ltd.*, 994 F.2d 1160, 1167 (5th Cir. 1993)

(upholding separate classification of the city of Fort Worth's claim from other unsecured

creditors in an apartment complex bankruptcy case; court recognized that city had non-creditor

interests relating to its urban housing program); *Beal Bank, S.S.B. v. The Way Apartments* (*In re

The Way Apartments, D.T.*), 201 B.R. 444 (N.D. Tex. 1996) (approving separate classification

upon demonstration of the Housing and Urban Development's non-creditor interests in an

apartment complex); *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 587 (6th Cir. 1986) (debtor

separately classified the claims of the Teamster's Committee from the other unsecured creditors;

court considered the ongoing employee relationship with the debtor when identifying non-

creditor interests that supported separate classification of claims).  Commentators, including the

National Bankruptcy Review Commission, have embraced the concept that debtors should be

able to separately classify similar claims when legitimate business reasons are present.  National

Bankruptcy Review Commission Final Report, Bankruptcy:  The Next Twenty Years (October

20, 1997) at 569.

It is true that the Debtor currently has no ongoing operations.  The Trustee, however, has

the obligation under the Plan to wind up the Debtor's affairs pursuant to Heritage's governing

LLC Agreement and Section 18-803 of the Delaware Limited Liability Company Act.  Plan §

6.2.  The Trustee, in exercising his business and legal responsibilities under applicable law, has a legitimate business justification for proposing a settlement that finally puts an end to substantial litigation with the Client Claimants involving the Debtor's tax strategies and practices.  As noted above, Gary Kornman and possibly other insiders appear to have potential criminal and other nonbusiness concerns.

v.   The Debtor's Own Plan Supports Separate Classification of Insiders

In upholding the debtor's separate classification of a creditor's claim in *Wabash*, the Seventh Circuit found it persuasive that the objecting party, REA, had also separately classified that same creditor in REA's proposed plan.  *In re Wabash*, 72 F.3d at 1321 ("Indeed, REA apparently recognized this fact [different interest in the bankruptcy case] since its own proposed reorganization plan also classified PSI's claims separately.").  Here, the Kornman parties must recognize the justification for separately classifying the claims of insiders because the Debtor's own plan of reorganization, filed in August 2004, likewise contained a separate Insider Claims class.  *See* Plan of Reorganization Proposed by Debtor The Heritage Organization, L.L.C. Article II, filed August 11, 2004 [Docket No. 138] (the "THO Plan").  The Kornman parties must also recognize the justification for the contemplated treatment of their claims under the current Plan because the THO Plan provided for the subordination of Insider claims until all allowed client claims were paid in full.  *See* THO Plan Article V.

The Kornman parties' last two classification arguments are also without merit.  The Kornman parties argue that the Plan Proponents must be gerrymandering because the treatment for Classes 4 and 5 is the same—in other words, identical claims are being put in two different classes but are receiving identical treatment, so the Plan Proponents must be doing it to obtain an impaired, accepting class.  Wrong.  For all of the reasons already described, there is ample

justification for separately classifying Classes 4 and 5.  In addition, pursuant to the Plan, the

Client Tax Claimants are contractually agreeing to reduce their claims to an amount equal to

65% of the fees paid, and are also contractually agreeing to waive penalties, interest, and other

rights they have asserted against the estate.  Likewise, the Sandwith Parties and Mikron are

contractually agreeing to limit rights of appeal, defenses to the Mikron Note, rights to seek

amendments to claims based on fraudulent inducement, and other asserted rights in exchange for

payment of a sum certain and allowance of a claim against the estate.  *Cf. In re Wabash Valley*

*Power Ass'n*, 72 F.3d 1305 (7th Cir. 1995) (upholding separate classification of creditor's claim

when creditor's contested legal rights were contractually settled under the plan).  The Kornman

parties and other Insiders are doing no such thing—their claims will be determined in accordance

with applicable law and likely not be contractually reduced to 65% of their claims.  Moreover,

there is ample evidence to demonstrate a high probability that the Insiders' claims should be and

will be equitably subordinated; the Kornman Parties have never suggested that the Client

Claimants' claims should be subject to equitable subordination.

Finally, the Kornman parties argue that the Plan Proponents separately classified Classes

4 and 5 to obtain the necessary "two-thirds in amount" requirement of § 1126(c).  Wrong again.

The Insiders' claims are illegitimate or vastly overstated, and upon proper disallowance or

reduction, the Client Claimants would obtain the necessary two-thirds in amount even if Classes

4 and 5 were combined.  The Trustee has recently objected to the claims of several Insiders on

several grounds, including that the claims should be disallowed under 11 U.S.C. §§ 502(b),

502(d), and 502(e).  The Insiders' claims will be disallowed in their entirety or allowed in some

amount in touch with reality.  For one example only, in his amended proof of claim filed on May

10, 2007 (Claim No. 95), Gary Kornman asserted a liquidated indemnity claim in the amount of

$6,512,002.09, of which $5,196,620.56 is allocated to Gary Kornman's costs, expenses and fees

allegedly incurred by Gary Kornman in defending himself in two proceedings brought by the Securities and Exchange Commission ("SEC") and the United States of America, styled respectively *United States of America v. Gary M. Kornman*, Crim. Action No. 3:05-CR-0298-P (the "Criminal Proceeding") and *SEC v. Gary M. Kornman*, Civil Action No. 3:04-CV-1803-L (the "SEC Proceeding"). In the Criminal Proceeding, Gary Kornman was indicted on two counts of securities fraud, one count of making false statements to the SEC and one count of obstruction of justice. On April 9, 2007, Gary Kornman entered a plea agreement pleading guilty to making false statements to the SEC. Gary Kornman will be sentenced on July 11, 2007. The assertion that the estate should be responsible for indemnifying Gary Kornman for fees, expenses and costs incurred as a result of conduct the subject of a criminal proceeding which has culminated in a guilty plea by Gary Kornman is particularly shocking to the conscience.[9]

In short, the separate classification of Classes 4 and 5 is appropriate and is not an attempt to obtain an impaired, accepting class for the Plan. As a result, the Plan Proponents have adhered to the Fifth Circuit's "one clear rule" that "thou shalt not classify claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1992).

(b)    Separate Classification of Class 3 Convenience Claims Pursuant to § 1122(b) is Appropriate

The convenience class established in Article 2.3 of the Plan is valid because it does not offend the policy of the Bankruptcy Code and is expressly allowed by § 1122(b). Section 1122(b) states that "a plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable

---

[9] The conduct that led to the conviction of Gary Kornman was not within the scope of his employment by Heritage.

and necessary for administrative convenience." 11 U.S.C. §1122(b). The legislative history to §

1122(b) suggests that the provision was formed to allow smaller claims to be paid in full and

thus eliminate the need to solicit their votes. *See* H.R. REP. NO. 989, at 118 n.26 (1978),

*reprinted in* 1978 U.S.C.C.A.N. 5787, 5094 n.26. Accordingly, the Eighth Circuit has stated that

§ 1122(b) serves to "allow special treatment for small claims, so that they could be eliminated

early and reduce the number of claims that would have to be paid over time." *In re Leser,* 939

F.2d 669, 671 n.4 (8th Cir. 1991); *see also In re Jartran, Inc.*, 44 B.R. 331, 397 (Bankr. N.D. Ill.

1984); *In re S & W Enters.*, 37 B.R. 153, 162 n.35 (Bankr. N.D Ill. 1984). Both the language and

legislative history of § 1122(b) authorize the Class 3 Convenience class under the Plan.

Citing *In re Northwest Timberline Enterprises*, 348 B.R. 412 (Bankr. N.D. Tex. 2006),

the Kornman parties argue that no liquidating Chapter 11 plan—including this one—could ever

have a convenience class because the business is liquidating and the debtor will not have

ongoing relationships with vendors; thus no "business purpose" can exist for the class. The

Kornman parties do not understand § 1122(b) or the *Northwest Timberline* case. First, if

Congress had wanted § 1122(b) to apply only to Chapter 11 reorganizations, it could have said

so; instead, § 1122(b) makes no distinction between Chapter 11 reorganizations and liquidations.

Moreover, this Court and other courts have previously confirmed liquidating Chapter 11 plans

that contained a convenience class, without any requirement of a separate "business purpose"

related to ongoing operations. For example, in *In re Gulf Coast Holdings, Inc.*, No. 06-31695,

2007 WL 1340802, slip opinion at 2 (Bankr. N.D. Tex. April 30, 2007), as in this case, the

debtor will not have an ongoing, postconfirmation relationship with the trade creditors. Still, this

Court concluded that the classification of a separate convenience class was appropriate under §

1122(b) and confirmed the plan. *See also In re South Aiken, Ltd.*, 121 B.R. 7, 9 (Bankr. W.D.

Penn. 1990) (confirming liquidating plan that contained a separately classified convenience class consisting of trade creditor claims of under $20,000).

In *Northwest Timberline*, this Court made findings of fact and conclusions of law in connection with a creditor's motion for relief from stay. In support of the lift-stay motion, the Court found that the debtor's plan was patently unconfirmable (based primarily on interest-rate issues) and thus the debtor had no reasonable prospects for reorganization. The Court went on to find that the debtors had improperly separately classified a class of creditors with claims of $10,000 or less for purposes of gerrymandering. On motion for reconsideration of the lift-stay order, the Court refused to alter its finding of gerrymandering, concluding that there must be "not only an administrative burden eased . . . , but unless the unsecured creditors are paid quickly, they will cease to provide services that are necessary to the debtor's survival." *In re Northwest Timberline Enters.*, 348 B.R. at 440. Read in context, the *Northwest Timberline* case teaches that in a reorganization case, a convenience class cannot be approved—even if it tends to ease an administrative burden—if the class is created to gerrymander an impaired, accepting class and not to help the debtor reorganize. The Court's statements in *Northwest Timberline* that applied to attempted gerrymandering in that reorganization case simply have no relevance here.

Moreover, even if a "business purpose" or other requirement from § 1122(a) were required for every § 1122(b) convenience class, this Court has concluded that a reasonable basis for separate classification "generally falls within one or more of three categories: (1) legitimate business reason; (2) disparities between the legal rights of holders of different claims; or (3) claimants have sufficiently different interests in the plan." *In re Cornwall* at 7. When determining whether there are disparities between the legal rights of holders of different claims that justify separate classification, "[t]he court considers the practical differences in the legal rights of [a creditor] compared to those of other unsecured creditors." *In re Cornwall* at 16

(citing *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) (noting that the legal nature of a claim is not dependent only on technical definitions, but on ordinary and practical differences); *In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17, 27-28 (Bankr. D. Mass. 2002)).

The practical differences between the claims of the Convenience Claimants and those of the other unsecured creditors in the case are obvious, and a review of the Convenience Class claims under the Plan belies the Kornman parties' argument that Class 3 was created to gerrymander an impaired, accepting class (by obtaining the "majority in number" requirement of § 1126(c)) rather than to ease an administrative burden:

| | Claimant | POC/Scheduled | Claim Amount | Running Total of Convenience Claims |
|---|---|---|---|---|
| 1 | Verizon Wireless | Scheduled | $2.74 | |
| 2 | Law Journal Press | 3 | $12.64 | |
| 3 | T-Mobile | Scheduled | $13.36 | |
| 4 | AT&T Wireless | Scheduled | $28.33 | |
| 5 | Bradley Bodily | Scheduled | $45.06 | $102.13 |
| 6 | Practicing Law Institute | Scheduled | $115.50 | |
| 7 | Choicepoint Services, Inc. | Scheduled | $154.80 | $372.43 |
| 8 | Dallas Refinishing | Scheduled | $200.00 | |
| 9 | RIA Group | Scheduled | $239.73 | |
| 10 | Kristen Bazan | 9 | $280.00 | |
| 11 | McShan Florist | Scheduled | $449.24 | $1,541.40 |
| 12 | Jackson Lewis | 9 | $839.24 | |
| 13 | Buchanan Visual Communications | Scheduled | $1,070.32 | |
| 14 | Qwest Communications | 18 | $1,341.64 | $4,792.60 |
| 15 | Vinson & Elkins | 40 | $10,720.58 | |
| 16 | Praxis | Allowed per Order | $30,000.00 | $45,513.18 |

The five smallest Convenience claims total only $102; the seven smallest total only $372; the eleven smallest total only $1541, and the fourteen smallest total only $4793. Even with the two largest convenience claims thrown in, the total Convenience class totals only $45,514, which is just over one tenth of one percent of the total claims in the case, assuming aggregate claims of approximately $30 million. The expense (hourly rates and out of pocket expenses) for the

Trustee, his staff, and his counsel to simply prepare and send solicitation materials to the vast majority of the Convenience claimants would have exceeded their claim amounts, yet the Kornman parties suggest that the Trustee should administer their claims for years to come. The Kornman parties cannot be serious.

The Kornman parties' suggestion that the Convenience Class allows the Plan Proponents to obtain the required number of votes for an impaired, accepting class that they otherwise would not obtain likewise is detached from reality. If the Convenience class (16 claims) were combined with the General Unsecured Class (14 claims), the total number of claims in the combined class would be 30. Even assuming the implausible—that *all 16* Convenience claimants vote (including Verizon, which holds a $2.74 claim)—only two of those 16 would need to vote for the Plan for the combined class to carry. And if Classes 3, 4, and 5 were all combined, the total number of claims eligible to vote would be 39. With a very liberal assumption that Convenience Claimants with claims greater than $300 vote (6 of them), only one of those six would need to vote for the Plan for the class to carry. In addition, the Convenience claimants are not engaged in litigation with the Trustee and have completely different interests than either the Class 4 or Class 5 claimants.

The Plan Proponents did not gerrymander Class 3 to obtain an impaired, accepting class. Instead, the Kornman entities are dreaming up improbable scenarios under which the Plan Proponents would not obtain an accepting class.[10] The gerrymandering cases cited by the Kornman entities are not on point because they involve creation of convenience classes to be *the* impaired, accepting class, or because they involve gerrymandering without which the plan proponent could not possibly obtain an impaired, accepting class. *See, e.g., In re S&W Enter.*, 37

---

[10] Kind of like dreaming up hypotheticals on how the Republicans can fail to carry Texas (an overwhelming "red" state) or how the Democrats can fail to carry New York (a deep "blue" state) in the next presidential election.

B.R. 153 (Bankr. N. Ill. 1984) (convenience class of 2 creditors with aggregate claims of approximately $900 was created for the sole purpose of being *the* accepting, impaired class; the only other unsecured creditor (the objecting creditor) had a deficiency, unsecured claim of $454,940, which would have swamped the other 2 claims and voted the class down); *In re Paolini*, 312 B.R. 295 (Bankr. E.D. Va. 2004) (same:  gerrymandered convenience class cannot be *the* impaired, consenting class); *Steele v. Cho (In re Cho)*, 164 B.R. 730, 733-35 (Bankr. E.D. Va. 1994) (finding plan of reorganization was unconfirmable because the debtor gerrymandered a convenience class of creditors for the purpose of being *the* impaired class of creditors; the separately classified, accepting class consisted of three creditors with claims under $500 and who would receive payment of 90% of their claims); *cf. In re Waterways Barge P'ship*, 104 B.R. 776 (Bankr. N.D. Miss. 1989) (§ 1122(a) case where debtor put creditor's unsecured deficiency claim of nearly $5 million in a separate class from three other unsecured creditors whose claims totaled $13,000; the 3-creditor class was the impaired, consenting class.  The court found that the obvious purpose was gerrymandering).

In short, the Convenience class is appropriate and is not an attempt to obtain an impaired, accepting class for the Plan.

**2.      The Plan Complies with the Requirements of Section 1123(a)**

(a)      Section 1123(a)(1): The Plan Designates Classes

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate, subject to the limitations of Section 1122, classes of claims other than claims of the kind specified in Sections 507(a)(1) (administrative expenses), 507(a)(2) (gap creditors), and 507(a)(8) (taxes and customs duties).  11 U.S.C. § 1123(a)(1).  As set forth in Article 2 of the Plan, the Plan designates Classes of Claims for all Claims other than those specified in said sections of the Bankruptcy Code. Accordingly, the Plan complies with Section 1123(a)(1).

       (b)     <u>Section 1123(a)(2): The Plan Identifies Impaired Classes</u>

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). The Plan specifies the impaired status of each Class of Claims in Article 4 of the Plan. As set forth therein, Classes 1-3 are not impaired under the Plan, and Classes 4-7 are impaired. Accordingly, the Plan complies with Section 1123(a)(2).

       (c)     <u>Section 1123(a)(3): The Plan Specifies Treatment of Impaired Classes</u>

Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any impaired class of claims. 11 U.S.C. § 1123(a)(3). The treatment of each impaired Class is set forth in Article 4, in conjunction with Articles 9 and 10. The Plan, therefore, complies with Section 1123(a)(3).

       (d)     <u>Section 1123(a)(4): The Plan Provides for Equality of Treatment</u>

Section 1123(a)(4) of the Bankruptcy Code states that a plan must "provide the same treatment for each claim … of a particular class, unless the holder of a particular claim … agrees to a less favorable treatment of such particular claim…." 11 U.S.C. § 1123(a)(4). In relation to Classes 1-7, all claims contained within each such class will receive the same treatment, unless the holder of a particular claim within such class agrees to a less favorable treatment of its claim. *See* Plan, §§ 4.1.1, 4.2.1, 4.3.1, 4.4.1, 4.5.1, 4.5.3, 4.6.1, 4.7.1. Accordingly, the Plan complies with Section 1123(a)(4) of the Bankruptcy Code.

       (e)     <u>Section 1123(a)(5): Contains Adequate Means of Implementation</u>

Section 1123(a)(5) of the Bankruptcy Code requires a plan to include adequate means for its implementation. 11 U.S.C. § 1123(a)(5). Article 6 of the Plan sets forth the means for implementation of the Plan. The Plan provides for, among other things, the creation of a Creditor Trust into which the assets of the Debtor will vest, and from which such assets and

payments will be distributed.  The Plan also provides for the appointment of the Creditor Trust

Trustee and the Creditor Trust Oversight Committee (and their successors).  *See* Plan § 6.1.

Sections 6.1 and 6.2 of the Plan provide for the post-confirmation management and eventual

dissolution of the Debtor.  Section 6.3, Article 7 and Article 13 of the Plan provide for the

consummation of the settlements proposed by and through the Plan.  Articles 9 and 10 of the

Plan detail how Disputed Claims will be resolved and how distributions will be made under the

Plan.  Accordingly, the Plan complies with Section 1123(a)(5).

(f)     Section 1123(a)(6): Charter Provisions are Inapplicable to the Debtor

Section 1123(a)(6) of the Bankruptcy Code mandates that the Debtor's charter include

certain provisions in relation to the equity securities of the Debtor.  *See* 11 U.S.C. § 1123(a)(6).

The Debtor is a limited liability company which has not issued, and will not issue, any equity

securities.  Accordingly, Section 1123(a)(6) is inapplicable in this case.

(g)     Section 1123(a)(7): Plan Includes Provisions for Selection of Officers and
Directors that are Consistent with Public Interest

Section 1123(a)(7) of the Bankruptcy Code requires that a plan's provisions with respect

to the manner of selection of any director, officer, or trustee be consistent with the interests of

creditors and public policy.  11 U.S.C. § 1123(a)(7).  The Plan satisfies Section 1123(a)(7).  On

the Effective Date of the Plan, Dennis S. Faulkner (the Trustee) will be appointed as the initial

Creditor Trust Trustee of the Creditor Trust.  *See* Plan, § 6.1.7.  Also on the Effective Date, each

of the managers and managing members of the Debtor, if any, shall be deemed terminated, and

Dennis S. Faulkner, in his capacity as the initially appointed Creditor Trust Trustee, shall be

deemed appointed as the Debtor's sole manager and person authorized to wind up the Debtor's

affairs and the Debtor's President.[11]  *See* Plan § 6.2.  Given Dennis S. Faulkner's role as the

---

[11] There are currently no employees or existing officers of the Debtor.

Trustee in the Case, such appointments are consistent with both the best interests of the Creditors and public policy.

Pursuant to Section 6.1.8 of the Plan, the Creditor Trust Oversight Committee will have the power to appoint a successor Creditor Trust Trustee, should that ever come to pass.  Plan, § 6.1.8.  Similarly, the Creditor Trust Agreement provides for such successor Creditor Trust Trustee to assume management of the Debtor.  <u>See</u> Plan, Exh. A (¶¶ 3.15).  These provisions likewise comport with the best interests of creditors and public policy.  Therefore, the Plan satisfies the requirements of Section 1123(a)(7).

**3.      The Plan Contains Appropriate Discretionary Plan Provisions Under Section 1123(b)**

The Plan also contains appropriate discretionary provisions allowed by Section 1123(b) of the Bankruptcy Code.

(a)      <u>Section 1123(b)(2): Assumption or Rejection of Executory Contracts and Unexpired Leases</u>

Section 1123(b)(2) of the Bankruptcy Code permits the assumption or rejection of executory contracts and unexpired leases as part of a plan.  *See* 11 U.S.C. § 1123(b)(2).  Article 8 of the Plan sets out the provisions for the assumption or rejection of all remaining executory contracts and unexpired leases under Section 365 of the Bankruptcy Code.  Pursuant to Section 8.1 of the Plan, all remaining executory contracts and unexpired leases, not the subject of a motion to assume which is pending as of the first date set for the hearing on confirmation of the Plan, will be rejected on the Effective Date of the Plan.  Such provisions are permissible under Section 1123(b)(2).  However, there are no pending motions to assume any executory contracts and unexpired leases and the Trustee is unaware of any executory contracts that have not already been assumed or rejected.

(b)      <u>Section 1123(b)(3): Settlement and Enforcement of Causes of Action</u>

Section 1123(b)(3) of the Bankruptcy Code permits the settlement of claims belonging to the debtor/estate as part of a plan. *See* 11 U.S.C. § 1123(b)(3)(A). Section 1123(b)(3) further permits the retention and enforcement of causes of action by a representative of the estate appointed for such purpose. *See* 11 U.S.C. § 1123(b)(3)(B). Article 7 of the Plan sets out the provisions applicable to the Settlement with Client Tax Claimants and the Settlement with Mikron and Sandwith Claimants. The Plan's inclusion of these settlements is permitted under the terms of Section 1123(b)(3)(A). Additionally, the Plan provides for the retention and transfer of Causes of Action to the Creditor Trust, and for the appointment of the Creditor Trust Trustee as the representative of the Estate to pursue such Causes of Action. *See* Plan, § 6.5. Such provisions are permissible under Section 1123(b)(3)(B).

The Kornman Parties assert that the Plan fails to comply with Section 1129(a)(2) because it includes provisions for settlement of claims that allegedly are not authorized by Section 1123 of the Bankruptcy Code. The Kornman Parties' reading of § 1123(b) is both flawed and incomplete. According to their objection, the Plan Proponents (including the Trustee) have no ability to formulate a plan that provides for the compromise of claims against the Debtor's estate. In truth, bankruptcy courts regularly confirm chapter 11 plans compromising claims belonging to *and* asserted against debtors.[12] Indeed, the United States Bankruptcy Court for the Southern District of New York recently confirmed a plan of reorganization in the *Adelphia* case that provided as one of its centerpieces a global settlement of massive claims against the various estates.[13]

---

[12] *See, e.g.*, *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162-63 (D. Del. 2006) (holding that the inclusion of "claims settlement guidelines" providing for the compromise and settlement of claims asserted against the debtors satisfied § 1123(b)(3)(A)); *In re Mid-State Raceway, Inc.*, 2006 WL 4050809, (Bankr. N.D. N.Y. 2006) (confirming chapter 11 plan that provided, *inter alia*, for the compromise of claims asserted against the debtor); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758-59 (Bankr. S.D. N.Y. 1992) (by reference to § 1123(b)(3)(A), confirming a plan providing for the compromise and settlement of various claims asserted against the debtors).

[13] *In re Adelphia Communications Corp.*, — B.R. —, 2007 WL 866643 (Bankr. S.D. N.Y. 2007).

In the first instance, the Kornman Parties' reliance on the *Dynamic Brokers* case is misplaced.[14]   In *Dynamic Brokers* – the sole case cited to support the Kornman Parties' argument – the debtor proposed in its plan to pay only approximately two-thirds of a particular creditor's claim after filing an earlier plan that proposed to pay such claim in the full amount listed in the debtor's schedules.[15]   Quite rightly, the Ninth Circuit concluded that a debtor could not circumvent the otherwise "deemed allowed" status of a creditor's scheduled claim without complying with Bankruptcy Rule 3007 and filing an objection to the claim.[16]   Neither, held the Ninth Circuit, is there any rule permitting the claim objection "to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007."[17]   It was in *that* context, then, that the Ninth Circuit stated (as the Kornman Parties accurately quoted, if nothing else)—

> The conclusion that *an objection under Rule 3007 is required in order to change the amount of a claim, over a creditor's objection in a chapter 11 case*, is further supported by an examination of the list of matters that Congress authorized to be included in chapter 11 plans.   *See* 11 U.S.C. § 1123(b).  The only reference in that statute to adjustments of claims is the authorization for a plan to provide for "the settlement or adjustment of any claim or interest *belonging to* the debtor or to the estate."   11 U.S.C. § 1123(b)(3)(A) (emphasis supplied).   It is significant that there is no parallel authorization regarding claims against the estate.

Both common sense and Rule 3007 support the Ninth Circuit's obvious conclusion that § 1123(b)(3)(A), by itself, does not empower a debtor to change the amount of a claim over a creditor's objection.   The Kornman Parties' extension of that conclusion, however, to support

---

[14] As an aside, neither does the *Drexel Burnham* opinion cited in the Objection anywhere stand for the proposition for which the Kornman Parties cite it.
[15] *Valera v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489 (9th B.A.P. 2003).  According to those schedules, the creditor's claim was listed neither as contingent, unliquidated nor disputed.
[16] *In re Dynamic Brokers*, 293 B.R. at 496.
[17] *In re Dynamic Brokers*, 293 B.R. at 496.

their belief that § 1123(b)(3)(A) does not permit the compromise of a creditor's claims *against* a debtor, is nowhere to be found in the Ninth Circuit's rulings.[18]

In further support of their blinkered reading of § 1123(b), the Kornman Parties turn to "policy considerations," suggesting that to permit the settlement of disputed claims in a plan context would "encourage the allowance of disputed claims for non-merit based reasons, as a means of procuring the vote."[19]  Not surprisingly, the Kornman Parties cite no authority for this perceived "policy consideration."   In any event, the application of Rule 9019 and the well-established standards for approving compromises and settlements in bankruptcy cases ensure that "non-merit based reasons" render it unlikely that any bankruptcy court would — or, indeed, could — approve a proposed settlement in a plan context based solely upon such "non-merit based reasons."

The Kornman Parties' reliance on the rules of statutory construction is equally unavailing because it fails to take account of the catch-all provided in § 1123(b)(6).  Chapter 11 affords a trustee or debtor in possession tremendous flexibility in formulating and proposing a chapter 11 plan provided that the plan does not otherwise conflict with the provisions of title 11.   As one commentator put it, under § 1123(b), "the imagination and ingenuity of the debtor, its creditors, and interest holders are limited only by the requirement of compliance with other Code provisions."[20]  To that end, the final subsection of § 1123(b) — which is intended to quantify all the possible terms that *may* be included in a plan — permits a plan to "include any other appropriate provision not inconsistent with the applicable provisions of this title."[21]    For example, § 1123(b)(6) has been held (ironically, by a California court) to allow for a plan to

---

[18] *Cf. In re Arden*, 176 F.3d 1226, 1228 (9th Cir. 1999) (reviewing the bankruptcy court's analysis of the settlement of a landlord's claim against the debtor-tenant in the context of a plan).

[19] Objection, at 18 n.7.

[20] HILLMAN, WILLIAM C. & MARGARET M. CROUCH, BANKR. DESKBOOK § 11.5.3[B] (4th ed. 2006).

[21] 11 U.S.C. § 1123(b)(6) (2005).

appoint a plan administrator for the purpose of compromising claims against a debtor).[22]   The

maxim quoted by the Kornman Parties is therefore inapplicable.   Where there is a catch-all

effectively permitting the inclusion of any other term not inconsistent with the provisions of title

11, it cannot be said that the failure to expressly specify one such term excludes it from

consideration.[23]

(c)   Section 1123(b)(6): The Inclusion of Provisions Which are Not
Inconsistent with Title 11

Section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any other

appropriate provision not inconsistent with the applicable provisions of this title."   11 U.S.C.

§1123(b)(6)   In this regard, the Plan sets out the terms and conditions of the Settlement with

Client Tax Claimants and the Settlement with Mikron and Sandwith Claimants.

Neither the Settlement with Client Tax Claimants or the Settlement with Mikron and

Sandwith Claimants, nor the implementation of their terms and conditions, are inconsistent with

any of the provisions of the Bankruptcy Code.   Accordingly, the Settlements' inclusion within

the Plan is permitted by Section 1123(b)(6) of the Bankruptcy Code.

**B.**      **Section 1129(a)(2): The Plan Proponents Have Complied with the Bankruptcy Code**

Pursuant to Section 1129(a)(2) of the Bankruptcy Code, confirmation of a plan is

dependent upon the plan proponent's compliance with provisions of the Bankruptcy Code.   11

U.S.C. § 1129(a)(2).   The Plan Proponents have complied with all applicable provisions of the

Bankruptcy Code.

---

[22] *In re Elder*, 325 B.R. 292, 300 (Bankr. N.D. Cal. 2005).

[23] Indeed, the Kornman Parties' argument proves too much, as there are countless terms and obligations not specifically identified in either § 1123(a) or 1123(b) that nevertheless clearly must be included in any confirmable plan of reorganization.   Similarly, it would be both bizarre and counterproductive to construe § 1123(b) in a way that permits a trustee to compromise claims it holds against a creditor without simultaneously permitting the compromise of the inevitable counterclaims held by that creditor against the estate.   *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 334-35 (D. Del. 2004) (holding that trustee's request for approval of various settlements of claims held both by and against the debtors as part of the proposed plan was permitted by § 1123(b)(3)(A)).

The principal purpose of Section 1129(a)(2) is to ensure that the proponent of the plan has complied with the provisions of Sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912. Section 1129(a)(2) is, thus, intended to ensure that a plan proponent has complied with the disclosure and solicitation requirements set forth in the Bankruptcy Code and Bankruptcy Rules. *See In re Eagle Bus Mfg. Inc.*, 134 B.R. 584, 598 (S.D. Tex. 1991) (finding that the debtors satisfied Section 1129(a)(2) by complying with, among other things, "all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation"), *aff'd*, 158 B.R. 421 (S.D. Tex. 1993); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part & remanded in part*, 78 B.R. 407 (S.D.N.Y. 1987); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

First, in relation to Section 1125, on May 2, 2007, the Court entered an order (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information," thereby meeting one of the key requirements of Section 1125(b) of the Bankruptcy Code. See 11 U.S.C. § 1125(b). The Disclosure Statement Order further approved procedures for the transmittal of the Disclosure Statement and certain additional materials to creditors, and authorized the Plan Proponents to begin soliciting acceptances on the Plan following such transmittal. See id. In accordance with Sections 1125(b) and the Disclosure Statement Order, the Plan Proponents did not solicit acceptances on the Plan prior to the transmission of the Court-approved solicitation materials. See Faulkner Decl., ¶ 25.

Next, in an effort to ensure compliance with Section 1126 and corresponding applicable Bankruptcy Rules, the Plan Proponents sought approval of procedures applicable to the tabulation of votes on the Plan. The Court approved same and they are also included within the

Disclosure Statement Order.   The Plan Proponents have complied with such procedures in determining the outcome of voting on the Plan.   *See* Faulkner Decl., ¶¶ 27-31.

The Kornman Parties have asserted that the Plan does not satisfy the requirements of Section 1129(a)(2) because allegedly "the Trustee violated section 1125(b) of the Bankruptcy Code by soliciting the Client Claimants' votes to accept the Plan *months* before they received a court-approved disclosure statement."   Kornman Obj. at 19.   As briefed in the Plan Proponents' Objection to Motion of Creditors Gary M. Kornman and GMK Family Holdings, LLC Pursuant to 11 U.S.C. §§ 1125(b) and 1126(e) for an Order Designating and Disallowing Votes of Client Claimants (the "Designation Objection"), the Trustee did not violate section 1125(b) of the Bankruptcy Code.   Further, it is completely illogical for the Kornman Parties to claim that a plan proponent can be solicited to vote for the plan that it is proposing.   The Designation Objection is incorporated herein by reference as though fully set forth herein.   Based upon the foregoing, the requirements of Section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**C.    Section 1129(a)(3): The Plan Was Proposed in Good Faith and Not by Any Means Forbidden by Law**

Pursuant to Section 1129(a)(3) of the Bankruptcy Code, a plan may only be confirmed if it was proposed in good faith and not by any means forbidden by law.   11 U.S.C. § 1129(a)(3). The Bankruptcy Code does not define the term "good faith."   Courts, however, have generally found good faith to exist if, in light of the totality of circumstances surrounding the plan's development, the plan was established for a legitimate and honest purpose consistent with the objectives and purposes of the Bankruptcy Code, and the plan has a reasonable prospect for success.   *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3rd Cir. 2000) ("'For purposes of determining good faith under section 1129(a)(3) … the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and

purposes of the Bankruptcy Code'") (quoting *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150 n.5 (3rd Cir. 1986), in turn quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)); *Financial Sec. Assurance Inc. v. T-H New Orleans Limited Partnership (In re T-H New Orleans Limited Partnership),* 116 F.3d 790, 802 (5th Cir. 1997) ("The requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a Chapter 11 plan….Where the plan is proposed with [a] legitimate and honest purpose … and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied"); *In re Landing Assocs., Ltd.*, 157 B.R. 791, 811 (Bankr. W.D. Tex. 1993) ("the court's inquiry must include a consideration of all facts and circumstances surrounding the plan to determine if the plan will 'fairly achieve a result consistent with the Bankruptcy Code'") (quoting *Madison Hotel*); see also *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Cooperative, Inc.*), 150 F.3d 503, 519 (5th Cir. 1998) (quoting *T-H New Orleans*), *cert. denied*, 526 U.S. 1144 (1999).  The Plan Proponents proposed the Plan for a legitimate and honest purpose, with good faith intentions in mind, and not by any means forbidden by law.

The Kornman Parties have asserted that the Plan has been proposed in bad faith because it "was proposed 'by means forbidden by law,' because it was proposed through an illegal, pre-disclosure statement solicitation'."   Kornman Obj. at 25.   As briefed in the Designation Objection, the Trustee did not engage in illegal, pre-disclosure statement solicitation. Accordingly, the Kornman Parties' argument that the Plan does not satisfy Section 1129(a)(3) fails.

Canada has asserted that the Plan was not proposed in good faith because it was allegedly proposed for the purpose of accommodating or effectuating the settlements with the Client Claimants and Mikron and not for legitimate reorganization purposes.   However, bankruptcy courts regularly confirm plans that have as a major component the approval of compromise and

settlements.  *See*, e.g. *In re Armstrong World Indus. Inc.*, 348 B.R. 136, 162-163 (D. Del. 2006);

*In re Mid-State Raceway, Inc.*, 2006 WL 4050809, (Bankr. N.D.N.Y. 2006); *In re Drexel*

*Burnham Lambert Group, Inc.*, 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992).  Accordingly, this

argument fails.

As outlined above, the Plan Objectors' arguments that the Plan was not proposed in good

faith fail.  Taking into account the nature and amount of the claims scheduled and asserted in the

Bankruptcy Case, the Debtor's remaining tangible assets and the causes of action held by the

Debtor and estate against third parties, the Plan Proponents formulated and proposed the Plan

with the legitimate and honest purpose of effecting an expedient liquidation of the Debtor's

remaining assets, with the proceeds thereof to be distributed as expediently and efficiently as

possible to the holders of Allowed Claims in the Bankruptcy Case consistent with the priorities

established under the Bankruptcy Code.  *See* Faulkner Decl., ¶ 24.  Accordingly, the

requirements of Section 1129(a)(3) of the Bankruptcy Code have been satisfied.

**D.     Section 1129(a)(4): Payments in Connection with the Case Have Been Approved or Are Subject to Approval**

Section 1129(a)(4) of the Bankruptcy Code requires that payments made, or to be made,

under the Plan for services or for costs and expenses in or in connection with the case, or in

connection with the plan and incident to the case, have either been approved by the court as

reasonable or are subject to the approval of the court as reasonable.  11 U.S.C. § 1129(a)(4).

Courts have explained that Section 1129(a)(4) mandates full disclosure of all payments or

promises of payment for services, costs, and expenses in connection with the case, and subjects

the reasonableness of such payments to the scrutiny of the court.  *See In re Future Energy Corp.*,

83 B.R. 470 (Bankr. S.D. Ohio 1988).

The Plan provides that any payments made or to be made for services or for costs and

expenses in or in connection with the Bankruptcy Case are subject to the approval of the Court as

reasonable. Section 6.1.9 of the Plan sets out the provisions applicable to the payment of fees

and costs and expenses incurred in administering the Creditor Trust, which payments are subject

to the oversight of the Creditor Trust Oversight Committee pursuant to the provisions of Section

6.1.12 of the Plan. Such provisions are subject to review for reasonableness and approval by the

Court as part of confirmation of the Plan. Accordingly, the conditions to confirmation set out in

Section 1129(a)(4) of the Bankruptcy Code have been met.

**E.      Section 1129(a)(5): The Plan Proponents Have Disclosed the Identity and
         Affiliations of Future Officers and Directors of, and Successors to, the Debtor**

Section 1129(a)(5) of the Bankruptcy Code requires, as a condition to confirmation, the

disclosure of the identity and affiliations of the proposed post-confirmation directors and officers

of the debtor, and any successor to the debtor. 11 U.S.C. § 1129(a)(5)(A). This section also

requires the court to determine that such appointments are consistent with both the interests of

the creditors and public policy. *Id.*; *see also In re Stratford Assocs. Ltd. Partnership*, 145 B.R.

689, 698 (Bankr. D. Kan. 1992); *In re Apex Oil Co.*, 118 B.R. 683, 704-05 (Bankr. E.D. Mo.

1990).

Section IX(B) of the Disclosure Statement disclosed the identity and affiliation of the

individual proposed to serve as the Debtor's sole manager and President following the Effective

Date of the Plan, and Section IX(A) of the Disclosure Statement disclosed the identify and

affiliation of the individual proposed to serve as the Creditor Trust Trustee following the

Effective Date of the Plan. In each case, the Trustee is proposed to be the person initially

appointed to serve in such capacities. *See also* Faulkner Decl., ¶ 26. Given his role as Chapter

11 trustee in the Bankruptcy Case, such appointment is consistent with the interests of creditors in the Bankruptcy Case and with public policy.

Section 1129(a)(5) also requires the proponent of a plan to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.   11 U.S.C. § 1129(a)(5)(B).   It is not contemplated that any insider of the Debtor will be employed or retained by the Debtor following the Effective Date; therefore, no disclosures related to same were necessary.  *See* Faulkner Decl., ¶ 26.  Accordingly, each of the requirements of Section 1129(a)(5) of the Bankruptcy Code have been met.

**F.      Section 1129(a)(6): The Debtor Does Not Charge Any Rates Subject to Regulatory Approval**

Section 1129(a)(6) of the Bankruptcy Code sets out certain requirements in relation to debtors who charge rates which are subject to oversight by a governmental regulatory commission.   The Debtor does not charge any such rates.   *See* Faulkner Decl., ¶ 21. Accordingly, Section 1129(a)(6) is inapplicable to this Case.

**G.      Section 1129(a)(7): The Plan is in the Best Interests of Creditors**

Section 1129(a)(7) of the Bankruptcy Code sets out the "best interest of creditors" test, requiring that each holder of a claim within an impaired class has either accepted the plan or:

> will receive or retain under the plan on account of such claim …
> property of a value, as of the effective date of the plan, that is not
> less than the amount that such holder would so receive or retain if
> the debtor were liquidated under chapter 7 of this title on such
> date.

11 U.S.C. § 1129(a)(7)(A).

The "best interest of creditors" test focuses on individual dissenting creditors rather than classes of claims and requires that each non-accepting creditor "receive at least as much [under the plan] as it would receive in a Chapter 7 liquidation."  *In re Briscoe Enters., Ltd.*, 994 F.2d

1160, 1167 (5th Cir.), *cert. denied*, 510 U.S. 992 (1993); *In re Texas Extrusion Corp.*, 844 F.2d

1142, 1159 n.23 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Thus, the test is designed to

provide non-consenting holders some level of individualized protection even if the class, as a

whole, has voted to accept the plan. *See* 7 Collier on Bankruptcy ¶ 1129.03[7][b], at 1129-43

(15th ed. rev. 2004) (plan must provide at least the value that would provided under Chapter 7 if

the creditor refuses to consent to the plan). The test is also only applicable to holders of claims

within underline impaired classes. Holders of claims within underline unimpaired classes are deemed to have

accepted the plan. *See* 11 U.S.C. § 1126(f). Finally, by its terms, Section 1129(a)(7) only

applies to actual holders of clams in an impaired class, not hypothetical holders of claims.

Based upon the foregoing, the "best interest of creditors" test does not apply to Classes 1-

3 of the Plan, because each these classes are unimpaired under the Plan (*see* Plan, art. 4), does

not apply to Class 4 of the Plan, because each of the holders of claims in such class voted to

accept the Plan (*see* Faulkner Decl., ¶ 30 [and Exh. A-1 thereto]), and does not apply to Class 6

of the Plan, because there are currently no claims in such class.[24] Hence, the only class affected

is Class 5 of the Plan.

In relation to holders of allowed claims within Class 5, such holders will receive

distributions under the Plan on account of their claims having a value that is at least equal to, but

more likely in excess of, the value that they would obtain if the Bankruptcy Case were converted

to a chapter 7 liquidation. Faulkner Decl., ¶ 35. Initially, if the settlements proposed by and

through the Plan were to be kept intact in a Chapter 7 liquidation, a result which is unlikely, the

result would be no different in Chapter 7 because the Plan already provides for the Debtor's

liquidation (certain additional administrative expenses, however, could actually diminish

---

[24] Nevertheless, in connection with the cramdown standards described below, the treatment afforded to Class 6 is discussed and demonstrates that the "best interest of creditors" test would also be met.

recoveries in Chapter 7).  *Id.*; *see also In re Labrum & Doak, LLP*, 227 B.R. 372, 381 (Bankr.

E.D. Pa. 1998) ("Since the Plan is a liquidating one, and the distribution priorities established are

those which we have held are consistent with applicable law and the [debtor's partnership

agreement], it appears that a trustee would be likely, and may be obligated to, effect substantially

the same liquidation priorities as those proposed in the Plan.  It is therefore difficult to see how §

1129(a)(7) is not satisfied by the Plan on this score"); *In re Hendrick*, 45 B.R. 976, 987 (Bankr.

M.D. La. 1985) ("The Debtor/Trustee plan is a liquidating plan designed to follow Chapter 7,

and consequently, the requirements of § 1129(a)(7) are met").  The more likely scenario would

be that the settlements would not remain intact, resulting in the pursuit of litigation and a lower

return to Class 5 creditors for the following reasons:

> First, conversion of the Case to Chapter 7 would eliminate the settlements
> proposed under the Plan, which in the aggregate will result in the reduction of
> claims by an amount in excess of $137,000,000.  Absent confirmation of the Plan,
> there is no guarantee that the same settlements may be achieved in a Chapter 7
> proceeding.

> Second, there would be additional administrative costs in a Chapter 7 proceeding.
> The conversion of the Case to Chapter 7 will trigger the appointment of a Chapter
> 7 trustee who will be entitled to reasonable compensation in relation to the level
> of disbursements made to creditors.  The Chapter 7 trustee is also entitled to retain
> his or her own professionals whose fees, to the extent they are allowed are also
> entitled to priority in payment along with the Chapter 7 trustee's compensation.
> This would add an additional layer of expenses to the Case.

> Finally, conversion to Chapter 7 would result in significant claims administration
> complications.  Conversion would result in a re-opening of the bar date for
> asserting claims in the case.  During the course of the Chapter 11 proceeding, the
> Trustee has obtained disallowance of approximately $16,995,970 in claims based
> upon the existing bar date for filing proofs of claim.  Moreover, at least one ex-
> client of the Debtor, holding a potential claim in an amount equal to or in excess
> of $30,000,000 has not filed a proof of claim because of the existing bar date.[25]
> These factors are also likely to diminish the return to Class 7 creditors in a
> Chapter 7 scenario.

---

[25] After the expiration of the Chapter 11 bar date for filing proofs of claim in the Bankruptcy Case, such client
instituted litigation against G. Kornman, which litigation arises out of the tax strategies provided to such client by
the Debtor.

Faulkner Decl., ¶ 35; see also Disclosure Statement, art. XII.   Accordingly, the Plan complies

with Section 1129(a)(7) of the Bankruptcy Code.[26]

**H.      Section 1129(a)(8): The Plan's Acceptance by Each Impaired Class**

Section 1129(a)(8) of the Bankruptcy Code requires that each class has either accepted

the plan or is unimpaired under the plan.  11 U.S.C. § 1129(a)(8).  With the exception of Class 5

and Class 6 under the Plan, each of the Classes under the Plan has either accepted the Plan or is

unimpaired.  *See* Plan, art. 4; Faulkner Decl., ¶ 30.  Nevertheless, because Class 5 voted to reject

the Plan, the requirements of Section 1129(a)(8) have not been met.  This is not fatal to

confirmation.  Pursuant to Section 1129(b) of the Bankruptcy Code, a plan may still be

confirmed if all other requirements of Section 1129(a) have been met and the Plan is fair and

equitable to, and does not discriminate unfairly against, the non-accepting classes.  Such

requirements in relation to Class 5 and Class 6 under the Plan are discussed below.

**I.      Section 1129(a)(9): The Plan Provides for Proper Treatment of Priority Claims**

Pursuant to Section 1129(a)(9) of the Bankruptcy Code, a plan must provide specific

treatment for the various types of priority claims unless and to the extent the holder of such a

claim agrees to different treatment of the claim.  *See* 11 U.S.C. § 1129(a)(8).

The Plan provides the requisite treatment to priority claims.  Specifically, except to the

extent that the holder of a particular claim of the type described below agrees to a different

treatment of such claim: (a) claims of a kind specified in Section 507(a)(1) of the Bankruptcy

Code will be paid in full in cash equal to the allowed amount of such claims pursuant to the

provisions of Section 3.1 of the Plan; and (b) claims of a kind specified in Section 507(a)(8) of

the Bankruptcy Code will be paid in full in cash equal to the allowed amount of such claims

---

[26] Section 1129(a)(7)(B) sets out provisions applicable to classes who have made the § 1111(b) election.  In this case, none of the classes have made such election.

pursuant to the provisions of Section 3.2.1 of the Plan.  There are no claims in the Bankruptcy

Case of a kind specified in Sections 507(a)(2), (a)(3), (a)(4), (a)(5), (a)(6) or (a)(7) of the

Bankruptcy Code.  Accordingly, the Plan complies with Section 1129(a)(9).

**J.      Section 1129(a)(10): At Least One Impaired Class of Claims Has Accepted the Plan**

Section 1129(a)(10) of the Bankruptcy Code requires that at least one impaired class of

claims has accepted the plan, determined without including any acceptance of the plan by any

insider.  11 U.S.C. § 1129(a)(10).  Here, Class 4 has accepted the Plan.  *See* Faulkner Decl., ¶30.

Accordingly, the requirements of Section 1129(a)(10) have been met.

**K.      Section 1129(a)(11): The Plan Meets the Feasibility Requirements**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan is not

likely to be followed by the liquidation or the need for further financial reorganization of the

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is

proposed in the plan.  11 U.S.C. § 1129(a)(11).  The Plan provides for the liquidation of the

Debtor; therefore, this section is largely irrelevant to this Case.  Based upon the resources that

will be made available to the Creditor Trust on the Effective Date of the Plan, the Creditor Trust

will have sufficient cash to make all payments required by, and on the timeframes established

under, the Plan, and confirmation of the Plan is not likely to be followed by the need for any

additional financial restructuring or liquidation.

The Kornman Parties have argued that the Trustee has not met his burden to demonstrate

that the Plan is feasible.  Although they concede that the amounts to be received from the Mikron

and Berg settlements appear to exceed the amounts of the estimated Allowed Administrative

Claims and Priority Tax Claims, without citing to any legal authority, G. Kornman and GMK

argue that the Plan is not feasible in light of the extensive litigation over such settlements and the

Plan (litigation instituted by G. Kornman and GMK) and the litigation costs, including the

substantial cost of pursuing the Kornman Litigation (again instituted against multiple defendants including G. Kornman and GMK). In order for a liquidating plan to satisfy feasibility requirements it must be workable and have a reasonable likelihood of success. *In re Mirant Corp.*, 2007 WL 1258932*1, 12 (Bankr. N.D.Tex. 2007). A plan proponent must only demonstrate a reasonable probability that the plan provisions can be performed and speculative prospects of failure, such as the ones asserted by the Kornman Parties (which the Plan Proponents assert are without merit), cannot defeat feasibility as a guarantee of the future is not required in order for feasibility to be demonstrated. *Id*. at 13. The Plan satisfies such requirements accordingly the requirements of Section 1129(a)(11) are met.

**L.     Section 1129(a)(12): The Plan Provides for the Payment of All Fees Payable Under 28 U.S.C. § 1930**

Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under 28 U.S.C. § 1930 have been paid or will be paid under the terms of the plan on the effective date of the plan. 11 U.S.C. § 1129(a)(12). To the extent there are any outstanding fees as of the confirmation hearing, pursuant to the provisions of the Plan, they will promptly be paid following the Effective Date of the Plan. Any such fees assessed from and after the Effective Date will be paid by the Creditor Trust as they come due. Thus, the Plan satisfies the requirements of section 1129(a)(12).

**M.     Section 1129(a)(13): The Debtor Has No Retiree Benefits Subject to Continuation**

Section 1129(a)(13) of the Bankruptcy Code sets out certain requirements in relation to retiree benefits of a debtor. *See* 11 U.S.C. § 1129(a)(13). The Debtor does not have any retirement programs that would be subject to such provision. *See* Faulkner Decl., ¶ 21. Accordingly, Section 1129(a)(13) is inapplicable to this Case.

**N.     Section 1129(b): The Plan is Fair and Equitable to, and Does Not Discriminate Unfairly Against, Classes 5 and 6**

Section 1129(b)(1) of the Bankruptcy Code provides that a plan may be confirmed on the request of the plan proponent if all of the requirements of Section 1129(a) have been met, with the exception of Section 1129(a)(8), and the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims … that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).  Class 5 has voted to reject the Plan.  Because there are currently no claims within Class 6 under the Plan, arguably such Class has also not accepted the Plan.

**1.    The Plan Does Not Discriminate Unfairly Against Classes 5 and 6**

Section 1129(b)(1) does not prohibit discrimination between classes, only discrimination that is unfair.  *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D.Minn. 1990).  The overwhelming weight of authority holds that a plan unfairly discriminates in violation of section 1129(b) only if similar claims are treated differently without a reasonable basis for the disparate treatment.  <u>See</u>, <u>e.g.</u>, *In re Mortgage Investment Co.*, 111 B.R. 604, 614 (Bankr. W.D. Tex. 1990); *In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988).  Accordingly, as between two classes of claims, there is no unfair discrimination if: (i) the classes are comprised of dissimilar claims or interests, *see, e.g., In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part & remanded in part*, 78 B.R. 407 (S.D.N.Y. 1987); or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.  *See, e.g., In re Rivera Echevarria*, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

The Kornman Parties argue that the Plan unfairly discriminates against Class 5 because Class 5 claims receive worse treatment under the Plan than Class 3 claims.  The cases cited to by G. Kornman and GMK, however, do not involve an administrative convenience class as is the case under the Plan.  Different treatment of general unsecured creditors from administrative convenience creditors is allowable under Section 1122(a)(2) and does not constitute unfair

discrimination.  *In re Corcoran Hosp. Dist.*, 233 B.R. 449, 457 (Bankr. E.D.Cal. 1999); *In re Jartran, Inc.*, 44 B.R. 331, 383 (Bankr. N.D.Ill. 1984).  Moreover, taking into account the facts and circumstances of this case there is a reasonable basis for disparate treatment based on the arguments contained in section III.A. of this Memorandum of Law.

Class 6 consists of Allowed Subordinated Claims.  Subordinated Claims are defined in the Plan as Insider Claims which are subordinate in payment to other claims in accordance with Section 510 and/or Section 726(a)(4) of the Bankruptcy Code.  Pursuant to Section 4.6.1 of the Plan, the holders of such claims will not receive any distributions under the Plan until the allowed claims in each of the other classes of claims have been paid in full.  Such treatment is appropriate and justified based upon the subordination provisions of Sections 510 and 726(a)(4) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 510(c), 726(a)(4).  Accordingly, in light of the nature of the Subordinated Claims, namely that they are junior in priority under the Bankruptcy Code to all other unsecured claims, the Plan does not discriminate unfairly by placing such claims into a separate class under the Plan.

**2.      The Plan is Fair and Equitable to Class 5**

To be fair and equitable to a class of unsecured claims, the plan must comply with the absolute priority rule set out in Section 1129(b)(2) of the Bankruptcy Code.  Under the absolute priority rule, in general terms, the plan must either provide for the payment in full of each unsecured claim within the impaired, rejecting unsecured class, or provide nothing to any class of claims that is junior to such class.  *See* 11 U.S.C. § 1129(b)(2)(B).  The Plan does not provide for distributions to classes which are junior to Class 5 unless and until Class 5 is paid in full.  Accordingly, the Plan is fair and equitable to Class 5 under the Plan.

### 3.      The Plan is Fair and Equitable to Class 6

In relation to Class 6, Subordinated Claims include claims subject to subordination under both Section 726(a)(4) (discussed above) and Section 510.   Section 510(c) of the Bankruptcy Code provides that a claim may be subordinated if the court determines that such subordination is equitable under the circumstances involved.   *See* 11 U.S.C. § 510(c).   This would be within the court's discretion.   Accordingly, in this Case, should the Court determine that a Claim should be equitably subordinated to all other unsecured claims, then the treatment of such Claim within Class 6 is warranted and, as with Claims subordinated pursuant to Section 726(a)(4), there will be no claims of junior priority.   Accordingly, the Plan is also fair and equitable to Class 6 under the Plan.

### O.      Section 1129(c): There are No Competing Plans

Section 1129(c) provides an exception to Section 1129(a)'s mandate for approval of a plan which complies with Sections 1129(a)-(b).   The exception applies where there are competing plans in the case.   *See* 11 U.S.C. § 1129(c).   In the present Case, there are no competing plans; accordingly, Section 1129(c) is inapplicable to this Case.

### P.      Section 1129(d): There are No Tax or Security Motives Behind the Plan

Section 1129(c) provides another exception to Section 1129(a)'s mandate for approval of a plan which complies with Sections 1129(a)-(b).   It provides that the court may deny confirmation of a plan which has, as its principal purpose, the avoidance of taxes or the avoidance of complying with certain securities laws.   Neither tax nor securities problems are involved in this Case, and the Plan was not motivated by such issues.   Accordingly, Section 1129(d) is not applicable to this Case.

## IV.  CONCLUSION

For each of the foregoing reasons, the Plan Proponents submit that the Plan meets all of the statutory requirements for confirmation.   Accordingly, the Plan Proponents respectfully request that the Court confirm the Plan.

Respectfully submitted on this 7th day of June, 2007.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:____/s/ Deborah M. Perry_____
    E. Lee Morris
    Texas Bar No. 00788079
    Deborah M. Perry
    Texas Bar No. 24002755
    3800 Lincoln Plaza
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR CHAPTER 11 TRUSTEE**

**GARDERE WYNNE SEWELL, LLP**
1000 Louisiana, Suite 3400
Houston, Texas 77002-5507
Telephone: (713) 276-5500
Facsimile: (713) 276-6752

By:____/s/ John P. Melko (by permission DMP)____
    John P. Melko (TBN 13919600)

**ATTORNEYS FOR JENKINS CLAIMANTS**

**KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP**
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
Telephone: (206) 370-6666
Facsimile: (206) 370-6067

By:____/s/ Michael J. Gearin (by permission DMP)___
    Michael J. Gearin (admitted pro hac vice)

**ATTORNEYS FOR SKINNER CHILDREN'S
TRUST AND SKINNER TRUST NO. 2**

**DINSMORE & SHOHL LLP**
255 E. 5th Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8216
Facsimile: (513) 977-8141

By:_/s/ Lawrence R. Elleman (by permission DMP)_
    Lawrence R. Elleman (admitted pro hac vice)

**ATTORNEYS FOR LUTHER ROSS LOVE, JR**.

**JAY A. BRANDT, P.C.**
3811 Turtle Creek Blvd., Suite 1600
Dallas, Texas 75219
Telephone: (214) 969-7373
Facsimile: (214) 969-7648

By:＿＿＿/s/ Jay A. Brandt (by permission DMP)＿＿＿
　　Jay A. Brandt (TBN 02882100)

**ATTORNEYS FOR RAINWATER,
FLUHARTY, TROUTT, POWELL,
WOODRUFF AND PATTERSON
CLAIMANTS**

**HAYNES AND BOONE, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

By:＿＿＿/s/ Scott W. Everett (by permission DMP)＿＿＿
　　Scott W. Everett (TBN 00796522)

**ATTORNEYS FOR SANDWITH CLAIMANTS
AND MIKRON INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of June, 2007, a true and correct copy of the foregoing pleading was served by U.S. first class mail, postage prepaid, on each of the parties listed on the attached Official Service List, and also by e-mail transmission on the following parties:

Frank A. Merola
Stutman Treister & Glatt, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067-6013
and
Jeffrey M. Tillotson, Esq.
Lynn, Tillotson & Pinker, LLP
750 N. Saint Paul, Suite 1400
Dallas, TX  75201
**Attorneys for Gary Kornman, Michael**
**Kornman and GMK Family Holdings, LLC**

John P. Lewis, Jr.
1412 Main Street, Suite 210
Dallas, Texas 75202
**Attorney for W. Ralph Canada, Jr**.

/s/ Deborah M. Perry
Deborah M. Perry