IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 04-35574-BJH-11 |
| THE HERITAGE ORGANIZATION, L.L.C., | § | (Chapter 11) |
| | § | |
| Debtor. | § | **Hearing: July 31, 2007 @ 9:00 a.m.** |

## PLAN PROPONENTS' RESPONSE TO OBJECTION OF GARY M. KORNMAN AND GMK FAMILY HOLDINGS, LLC TO CONFIRMATION OF SECOND AMENDED JOINT PLAN OF LIQUIDATION, AND BRIEF IN SUPPORT

TO THE HONORABLE BARBARA J. HOUSER, CHIEF U.S. BANKRUPTCY JUDGE:

COME NOW Dennis S. Faulkner (the "Trustee"), the duly-appointed Chapter 11 trustee of the estate of The Heritage Organization, LLC (the "Debtor"), and the Client Claimants[1] (together with the Trustee, the "Plan Proponents") and file their Response to Objection of Gary M. Kornman and GMK Family Holdings, LLC to Confirmation of Second Amended Joint Plan of Liquidation, and Brief in Support, respectfully stating as follows:

### I. INTRODUCTION

On June 22, 2007, following a week-long confirmation hearing on the Plan Proponents' First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "Original Plan") conducted between June 11 and 15, 2007 (the "Confirmation Hearing"), the Plan Proponents filed their Second Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "Amended Plan") pursuant to Section 1127 of the Bankruptcy Code. The modifications made to the Original Plan by and through the Amended Plan fall into two broad categories: (a) first, the Amended Plan incorporates the definitive terms of the settlement reached with W. Ralph Canada, Jr. ("Canada") in resolution of

---

[1] The Client Claimants consist of the Fluharty Claimants, the Jenkins Claimants, Love, Patterson, the Powell Claimants, the Rainwater Claimants, the Sandwith Claimants, the Skinner Claimants, the Troutt Claimants and Woodruff (all as further defined in the Amended Plan).

his objections to confirmation, subordination and related causes of action which the estate may hold against Canada, and claims which certain of the Client Claimants may hold against Canada; and (b) second, the Amended Plan resolves the classification and treatment objections asserted by Gary M. Kornman and GMK Family Holdings, LLC (collectively, the "Kornman Parties") in relation to Class 3 of the Original Plan (the convenience class).  The Court has set a follow-up hearing for July 31, 2007 (the "Supplemental Confirmation Hearing") to consider the plan modifications and confirmation of the Amended Plan.

To ensure compliance with the disclosure and voting provisions of Section 1127 of the Bankruptcy Code, the Plan Proponents previously filed their Amended Joint Supplemental Disclosure Statement Regarding Trustee's and Client Claimants' Second Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "Supplemental Disclosure Statement"), which the Court approved by order entered on July 12, 2007, and thereafter timely transmitted the Supplemental Disclosure Statement to all requisite notice parties (including the Kornman Parties).  Holders of claims within Class 4 and Class 6 (the only classes impacted by the plan modifications) were provided the opportunity to vote on the Amended Plan. As will be shown at the Supplemental Confirmation Hearing, both Class 4 and Class 6 overwhelmingly voted to accept the Amended Plan.

Not surprisingly, however, the Kornman Parties – namely, Gary Kornman, the ex-CEO of the Debtor, and GMK Family Holdings, LLC, the Debtor's managing member, who collectively withheld a substantial amount of material information regarding the Debtor's prior operations from the Trustee for over two years and who are two of the primary targets in litigation pending under Adversary No. 06-3377 in which the Trustee is seeking to recover tens of millions of dollars of avoidable transfers and other damages (the "Kornman Litigation") – have objected to

confirmation of the Amended Plan.  Given the Plan Proponents' extensive briefing in advance of the original Confirmation Hearing[2] and the evidence and argument presented at such hearing, the Plan Proponents are not going to address herein each of the recycled confirmation objections made by the Kornman Parties.  Rather, the Plan Proponents focus herein on why the Kornman Parties' objections to the plan modifications likewise miss the mark.

In short, the Kornman Parties' objections fail for the following reasons:

*First*, the Kornman Parties' Section 1129(a)(2) objection based upon the Amended Plan's alleged violation of the classification provisions of Section 1122 fails because the Plan Proponents' classification of claims under the Amended Plan: (a) complies with Section 1122(a) of the Bankruptcy Code, (b) was not designed to gerrymander a necessary vote of acceptance for the Amended Plan, and (c) would not change the outcome of the voting even if Classes 4 and 5 (or Classes 4, 5 and 6) were combined;

*Second*, the Kornman Parties' Section 1129(a)(2) objection based upon the Amended Plan's alleged violation of Section 1123 by virtue of the addition of the Canada settlement, and the Kornman Parties' *Cajun Electric* objections to the Canada settlement, fail because: (a) the settlement's inclusion within the Amended Plan is permitted by Section 1123(b)(3) and (6) of the Bankruptcy Code, and (b) the settlement represents a fair and equitable resolution of hotly contested classification, employment agreement and subordination disputes that is in the best interests of the estate;

*Third*, the Kornman Parties' Section 1129(a)(7) "best interest of creditors" objection fails because (a) it is premised on a faulty understanding of the

---

[2] The Plan Proponents incorporate herein for all intents and purposes the following: (a) the Plan Proponents' Memorandum of Law in Support of Confirmation of the Trustee's and Client Claimants' First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code and Joint Reply to Objections to Confirmation Filed by Gary Kornman, GMK Family Holdings, LLC and W. Ralph Canada, Jr. [Docket No. 1169] (referred to herein as the "Plan Proponents' Confirmation Brief"); (b) the Trustee's Omnibus Response to (A) Objections of Gary M. Kornman and GMK Family Holdings, LLC to Trustee's Motion for Approval of Compromise and Settlement with Client Claimants and Mikron Industries, Inc.; and Trustee's Motion for Approval of Compromise and Settlement with Carl E. Berg, and (B) Objection of W. Ralph Canada, Jr. to Trustee's Motion for Approval of Compromise and Settlement with Client Claimants and Mikron Industries, Inc., and Brief in Support [Docket No. 1171]; (c) the Skinner Trusts' Combined Response to Objection of Gary M. Kornman and GMK Holdings, LLC to Trustee's Motion for Approval and Compromise (Doc. 1140) and Objection of W. Ralph Canada, Jr. to Trustee's Motion for Approval and Compromise (Doc. 1138) and Joinder of W. Ralph Canada, Jr. Regarding Same (Doc. 1146) [Docket No. 1165]; (d) L. Ross Love, Jr.'s Combined Response to Objection of Gary M. Kornman and GMK Family Holdings, LLC to Trustee's Motion for Approval and Compromise (Doc. 1140) and Objection of W. Ralph Canada, Jr. to Trustee's Motion for Approval and Compromise (Doc. 1138) and Joinder of W. Ralph Canada, Jr. Regarding Same (Doc. 1146) [Docket No. 1166]; and (e) the Sandwith/Mikron Confirmation Brief [Docket No. 1168].

Amended Plan, and (b) holders of Allowed Claims within Class 5 will receive at least as much as they would receive on account of such claims in a Chapter 7 liquidation;

**Fourth**, the Kornman Parties' Section 1129(a)(10) objection fails because (a) two impaired classes of claims (Classes 4 and 6) have voted to accept the Amended Plan, (b) the Kornman Parties' improper solicitation argument is both baseless and unsupported, and (c) even if the votes of the Client Claimants and Canada were disregarded, the Amended Plan has still been accepted by Class 4;

**Fifth**, the Kornman Parties' Section 1129(a)(11) objection fails because (a) the Amended Plan is a plan of liquidation (making the section largely inapplicable), and (b) there are sufficient resources to consummate the Amended Plan if it is confirmed; and

**Finally**, the Kornman Parties' Section 1129(b) unfair discrimination objection fails because (a) it is premised on a faulty understanding of the Amended Plan, and (b) Class 5 is not receiving any less favorable treatment under the Amended Plan than Class 4 will receive.

## II.  THE PLAN MODIFICATIONS

**A.      The Starting Point – Section 1127 of the Bankruptcy Code**

Pursuant to Section 1127 of the Bankruptcy Code, a proponent of a plan may modify the plan at any time prior to confirmation provided the modified plan meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. 11 U.S.C. § 1127(a).  Upon the filing of a plan modification, the modified plan becomes the plan for purposes of considering confirmation.  *Id.*

Section 1122 sets out the parameters for the classification of claims and interests, whereas Section 1123 relates to the contents of a plan.  In particular, Section 1122 provides in pertinence that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Section 1123, in turn, sets out certain mandatory and permissive provisions of a plan. *See* 11 U.S.C. § 1123(a)-(b).

Section 1127 of the Bankruptcy Code further provides that a plan proponent must comply with Section 1125 of the Bankruptcy Code with respect to the modified plan. 11 U.S.C. § 1127(c). Section 1125, in turn, sets out the disclosure requirements applicable to solicitation of votes on a plan. *See* 11 U.S.C. § 1125(b). If votes have already been cast in relation to the pre-modified plan, however, then "any holder of a claim or interest that has accepted or rejected [the pre-modified] plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection." 11 U.S.C. § 1127(d).

**B.** **The Plan Modifications**

As indicated above, the plan modifications made by and through the Amended Plan fall into two broad categories. First, the Amended Plan incorporates the definitive terms of the settlement reached with Canada; and second, the Amended Plan resolves the Kornman Parties' objection to the Original Plan's inclusion of Class 3, an unsecured convenience class, by eliminating Class 3 and re-classifying the Class 3 claims within Class 4 of the Amended Plan. While each of the modifications are described in detail in the Supplemental Disclosure Statement, a brief overview of the changes is set forth herein.

First, with respect to the Canada settlement, Canada holds an allowed claim in the Bankruptcy Case in the amount of $6,218,679.40 (referred to as the "Canada Claim" under the Amended Plan). Canada objected to confirmation of the Original Plan based upon, among other things: (a) his inclusion within the definition of "Insider" under the Original Plan given that he is not an officer, employee or equity owner of the Debtor, any of the Debtor's affiliates, or any of the Kornman-affiliated entities which are defendants in the Kornman Litigation and has not served as an officer or employee of the Debtor since years prior to the Debtor's bankruptcy

filing, and (b) the separate classification of the Canada Claim as an Insider Claim within Class 5 of the Original Plan (as opposed to a General Unsecured Claim within Class 4) given the prior allowance of the claim, the alleged inability of the Trustee to subordinate the Canada Claim (based upon the fact that its genesis is not directly tied to any of the Client Claims pending in the Bankruptcy Case), and the fact that Canada is not a party to the Kornman Litigation.   In resolution of Canada's confirmation objections, as well as the estate's potential employment and subordination claims against Canada, the Amended Plan provides that:

(a)   $4,042,141.61 of the Canada Claim (referred to as the Allowed Canada Non-Subordinated Claim) will constitute an Allowed General Unsecured Claim classified within Class 4 of the Amended Plan;

(b)   $2,176,537.79 of the Canada Claim referred to as the Allowed Canada Subordinated Claim) will constitute an Allowed Subordinated Claim (classified within Class 6 of the Amended Plan, and will be subordinate in payment to claims within both Class 4 <u>and Class 5</u> of the Amended Plan;

(c)   With respect to distributions to Class 4, Canada agrees to the redistribution provisions of Section 4.4.3 of the Amended Plan (described below);

(d)   The Creditor Trust Trustee will not settle the Kornman Litigation Causes of Action and the LTP Causes of Action[3] for a collective amount, net of attorneys' fees and costs, of less than $1 million without the consent of Canada; and

(e)   Canada will release the estate from any and all claims and causes of action, and the estate will release Canada from any and all claims and causes of action (and, similarly, Canada and the Client Claimants, with the exception of the Jenkins Claimants, will release each other).

---

[3] The "LTP Causes of Action" is defined in the Amended Plan as "[c]ollectively, causes of action held by the Trustee and the Estate against Lynn Tillotson & Pinker, LLP, Michael P. Lynn, P.C., Michael P. Lynn, Jeffrey M. Tillotson, P.C., Jeffrey M. Tillotson, Eric W. Pinker, P.C., Eric W. Pinker and John T. Cox, III, and their respective transferees."  The LTP Causes of Action generally consist of avoidance claims relating to the Debtor's transfer of in excess of $2 million to the LTP parties, nearly $1 million of which was made within weeks of the Debtor's bankruptcy filing.  The Amended Plan further provides that the Creditor Trust Trustee shall promptly initiate litigation to pursue the LTP Causes of Action following the Effective Date if such litigation has not already been initiated by such time.

Next, with respect to the Class 3 modifications, the Kornman Parties objected to confirmation of the Original Plan on the basis that (a) Class 3 allegedly fails to satisfy the convenience class requirements of Section 1122(b) of the Bankruptcy Code (arguing that the separate classification is not "necessary"), and (b) the treatment afforded to Class 3 (payment in full shortly after the Effective Date) is unfairly discriminatory in relation to the treatment afforded to Class 5 under the Original Plan.  While the Plan Proponents continue to believe that such classification and treatment is justified and appropriate, the Amended Plan eliminates the objections by eliminating Class 3 and re-classifying the claims that were within Class 3 (Allowed Convenience Claims, now referred to as Allowed Small General Unsecured Claims under the Amended Plan) within Class 4 (Allowed General Unsecured Claims).

Finally, the Amended Plan also includes an intraclass distribution priority provision affecting only holders of claims within Class 4 pursuant to which certain of the holders have agreed to less favorable treatment of their claims.  Specifically, pursuant to Section 4.4.3 of the Amended Plan, distributions payable to Class 4 will be redistributed in the following priority:

(a)     First, to the holders of Allowed Small General Unsecured Claims until such claims are paid in full without interest (after which no further distributions will be made on account of such claims);

(b)     Second, to Canada on account of the Allowed Canada Non-Subordinated Claim, up to a maximum of $500,000;

(c)     Third, to the holders of Allowed Class 4 Non-Canada Claims,[4] up to a maximum of $5 million; *provided, however*, that to the extent that Net Available Funds derived solely from recoveries obtained from the pursuit and/or settlement of the Kornman Litigation Causes of Action and/or LTP Causes of Action become available for distribution to Class 4, then such Net Available Funds, up to a maximum of $1 million, shall be split 50/50 between Canada (on account of the Allowed Canada Non-Subordinated Claim) and the holders of the Allowed Class 4 Non-Canada Claims; and

---

[4] Allowed Class 4 Non-Canada Claims consist of Allowed General Unsecured Claims other than the Allowed Canada Non-Subordinated Claim.

(d)     Finally, pro rata to the holders of Allowed Class 4 Claims until such claims are paid in full without interest.

## C.     The Plan Proponents Have Satisfied the Requirements of Section 1127

In filing the Amended Plan, the Plan Proponents have satisfied each of the requirements of Section 1127 of the Bankruptcy Code.

First, with respect to Section 1127's requirement that the plan modifications comply with the classification requirements of Section 1122, there are two classification modifications at issue: (a) the inclusion of the Allowed Canada Non-Subordinated Claim and the Allowed Small General Unsecured Claims within Class 4; and (b) the inclusion of the Allowed Canada Subordinated Claim within Class 6.   Both of the modifications comply with Section 1122 because all of the claims within the reconfigured classes are "substantially similar" to one another.

In the case of the modifications to Class 4, each of the claims within Class 4 is a non-priority, non-contingent unsecured claim that is not the subject of pending unresolved litigation or claims for subordination.  Such similarity is sufficient to justify their classification together, as well as apart from the claims within Classes 5.  As explained in Collier on Bankruptcy:

> Generally speaking, all unsecured claims outstanding as of the commencement of the case may be classified together as general unsecured claims.  However, the Code does not require that all such claims be placed within a single class.  Such claims may be divided into separate classes if separate classification is reasonable. Courts recognize that both the proponent of the plan and the court itself have wide latitude in determining whether similar claims may be classified separately.

7 Collier on Bankruptcy ¶ 1122.03[4][a], at 1122-11 to -12 (15th ed. rev. 2007); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd.)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 587 (6th Cir. 1986); *In*

---

*re Jersey City Medical Ctr.*, 817 F.2d 1055 (3rd Cir. 1987); Plan Proponents' Confirmation Brief, at pp. 5-16.

In the case of the modification to Class 6, the inclusion of the Allowed Canada Subordinated Claim within Class 6 is obviously appropriate given its subordination in payment to other allowed unsecured claims. It has long been recognized that the separate classification of subordinated claims is appropriate. *See, e.g.*, 7 Collier on Bankruptcy ¶ 1122.03[4][a][ii], at 1122-14 to -15 (15th ed. rev. 2007).

Next, with respect to Section 1127's requirement that the plan modifications comply with the plan content provisions of Section 1123, there are two modifications to highlight: (a) the Amended Plan's inclusion of the settlement with Canada; and (b) the intraclass priority distribution provisions of Section 4.4.3 of the Amended Plan. With respect to inclusion of the Canada settlement within the Amended Plan, for the same reasons as are set forth in the Plan Proponents' prior confirmation briefing, such provisions are permissible under Section 1123(b)(3) and (b)(6). *See* Plan Proponents' Confirmation Brief, at pp. 26-29. As for the intraclass priority distribution provisions of the Amended Plan, while Section 1123(a)(4) generally requires that a plan provide for the same treatment of each claim within a class, it also provides an exception where the "holder of a particular claim … agrees to a less favorable treatment of such particular claims." *See* 11 U.S.C. § 1123(a)(4). The exception is applicable in this case. Pursuant to Section 7.9 of the Amended Plan, both Canada and the Client Claimants have agreed to the "less favorable treatment" provisions of Section 4.4.3 of the Amended Plan.

Finally, the Plan Proponents have also complied with Section 1127's requirement that they comply with Section 1125 of the Bankruptcy Code in relation to the Amended Plan. In this regard, the Plan Proponents obtained approval of the Supplemental Disclosure Statement,

thereafter transmitted the Supplemental Disclosure Statement to all requisite notice parties, and

with approval of the Court provided an opportunity for all holders of claims within Classes 4 and

6 of the Amended Plan (the only classes affected by the plan modifications) to vote on the

Amended Plan.  The evidence will establish that none of the holders of claims within Classes 4

and 6 were solicited with respect to the Amended Plan until after transmission of both the

original Disclosure Statement and the Supplemental Disclosure Statement.

## III.  ARGUMENT

**A.**    **The Amended Plan Complies with Section 1129(a)(1) and the Plan Proponents Have Complied with Section 1129(a)(2) – The Separate Classification of Classes 4, 5 and 6 Does Not Violate Section 1122 of the Bankruptcy Code**

As correctly noted by the Kornman Parties, the Amended Plan sets out three classes of

non-priority unsecured claims: Class 4 (Allowed General Unsecured Claims); Class 5 (Allowed

Insider Claims); and Class 6 (Allowed Subordinated Claims).  These same classes existed under

the Original Plan.  Hence, the focus of the Kornman Parties' classification objection is on the re-

classification of convenience claims (which were classified within Class 3 of the Original Plan)

and the Allowed Canada Non-Subordinated Claim (which was classified within Class 5 of the

Original Plan) within Class 4 of the Amended Plan.  Curiously, this is exactly what the Kornman

Parties argued for in making their objections to the Original Plan.  The Kornman Parties cannot

have it both ways.

Even more curious is the Kornman Parties' argument that the classification of the

Allowed Canada Subordinated Claim within Class 6 of the Amended Plan (Allowed

Subordinated Claims) is likewise inappropriate.  What makes this curious is that Class 6 is

designated for claims that are subordinate in payment to both Class 4 and Class 5.  In other

words, while Class 5 will also obtain the benefit of subordination of the Allowed Canada

Subordinated Claim, totaling nearly $2.2 million, the Kornman Parties claim that the subordination is nothing more than a means to gerrymander a vote. If this is truly the Kornman Parties' concern, they can simply agree to subordination of their claims as well in order to join Class 6. The Plan Proponents doubt that they will accept the invitation.

The real gist of the Kornman Parties' complaint has nothing to do with classification per se, but rather with the individual treatment of claims within Class 4. In particular, the Kornman Parties take issue with the intraclass distribution provisions agreed to by Canada and the Client Claimants. However, they do not have a say in whether and/or to what extent the holders of claims within Class 4 agree to the less favorable treatment of their claims. "The equality addressed by section 1123(a)(4) extends only to the treatment of members of the *same class of claims*….Creditors should not confuse 'equal treatment of claims with equal treatment of claimants.'" 7 Collier on Bankruptcy ¶ 1123.01[4][b], at 1123-10 (15th ed. rev. 2007) (emphasis added).

Even so, the Kornman Parties continue to argue that the Plan Proponents' separate classification of Insider Claims within Class 5 is improper because it is allegedly designed to gerrymander a vote of acceptance on the Amended Plan. With respect to this argument, the Trustee clearly and unambiguously testified at the Confirmation Hearing that Class 5 was not constituted for the purpose of gerrymandering a vote in support of confirmation. Second, as explained in detail above and in the Plan Proponents' Confirmation Brief, the separate classification of Insider Claims within Class 5 is justified based upon the particular facts and circumstances of this case. *See* discussion in II(C) above. Finally, perhaps the best evidence of the lack of intent to gerrymander a vote is the fact that even if Classes 4 and 5 (or Classes 4, 5 and 6, for that matter) were combined into a single class, the combined class will still have voted

to accept the Amended Plan.  In this regard, attached hereto as **Exhibit A** and incorporated

herein for all intents and purposes is a chart reflecting that the hypothetical combination of

Classes 4 and 5 would result in a vote of 69% in number and nearly 74% in the amount of claims

for acceptance of the Amended Plan.  The only difference would be that the Kornman Parties

would lose their ability to argue objections under Section 1129(b) of the Bankruptcy Code

because their claims would then be within an accepting class.

**B.**     **The Amended Plan Complies with Section 1129(a)(1) and the Plan Proponents Have
         Complied with Section 1129(a)(2) – The Amended Plan's Inclusion of the Canada
         Settlement is Permitted and the Settlement is Fair and Equitable and in the Best
         Interests of the Estate**

Next, the Kornman Parties attack the addition of the Canada settlement to the Amended

Plan.  In this regard, the Kornman Parties first erroneously argue that such provisions are not

permissible under Section 1123(b) of the Bankruptcy Code.  In doing so, they merely incorporate

the same arguments that they made in relation to inclusion of the settlements with the Client

Claimants.  Such arguments fail for several reasons.  First, to the extent that the settlement is in

resolution of Canada's objection to the classification of his claim under the Original Plan, as

opposed to the resolution of claims by or against Canada, the settlement has very little to do with

Section 1123 (although certainly it is permissible under Section 1123(b)(6)).  Second, to the

extent that the settlement also resolves claims held by the estate against Canada, even the

Kornman Parties previously acknowledged in connection with the Confirmation Hearing that

Section 1123(b) permits the inclusion of terms within a plan for the settlement of claims

belonging to the estate.  *See* 11 U.S.C. § 1123(b)(3) (a plan may provide for "the settlement or

adjustment of any claim … belonging to the debtor or to the estate").

Aside from such preliminary objections, the Kornman Parties also assail the settlement

itself, arguing that the Trustee has failed to justify the settlement under the standards set forth in

---

*Cajun Electric*.  In this regard, relying solely upon the record from the Confirmation Hearing, the Kornman Parties make three erroneous statements.  First, the Kornman Parties assert that the Trustee admitted that the estate has potential claims against Canada to recover in excess of $5 million in bonus payments made on account of Canada's work with the Client Claimants.  This is incorrect.  In response to Mr. Merola's request for the Trustee to add up the amount of certain of the <u>claims</u> of the Client Claimants to be allowed under the plan (as opposed to bonus payments made to Canada), the Trustee responded that the amount would be close to $5 million, subject to figuring out how to factor in the Jenkins claim.  *See* Hearing Transcript of June 14, 2007, at p. 129 (lines 12-18).  This is very different than the amount of bonuses paid to Canada.  Second, the Kornman Parties assert that the Trustee admitted that he "made no evaluation of the amount of the estate's potential claim against Canada, much less any analysis of the validity of the claim itself."  Again, this is not accurate.  Instead, the Trustee testified that he knew which of the Client Claimants for whom Canada served as the primary contact, was generally aware of the potential claims held by the estate against Canada (although he had not specifically quantified the amount), and was generally aware of the potential defenses held by Canada against such claims.  *See id*. at pp. 128-133.  Finally, the Kornman Parties assert that the Trustee has not taken any steps to evaluate the estate's ability to subordinate Canada's claim.  What is most perplexing about this assertion is not only do the Kornman Parties fail to cite any support for it, but the nature of the settlement itself calls for the subordination of nearly $2.2 million of Canada's claim.  Apparently the Kornman Parties would have the Court believe that Canada simply volunteered to subordinate 35% of the claim that he fought so hard to protect before this Court.  In reality, the Trustee testified to certain of the factors that he understood would come into play in connection with a subordination trial.  *See id*. at pp. 134-135.

In short, the Trustee, with the assistance of his counsel, considered each of the factors set forth in the Fifth Circuit's *Cajun Electric* opinion in negotiating and ultimately reaching an agreement with Canada.  In particular, the Trustee considered the following:

### *Likelihood of Success on the Merits*

First, with respect to the employment agreement claims, the Kornman Parties point out that Canada was the primary contact for the Behnke/Skinner Claimants, Woodruff, Patterson, the Troutt Claimants and the Fluharty Claimants (collectively, the "Canada Clients"), and had involvement along with Gary Kornman with the Jenkins Tax Claimants (although the evidence clearly establishes that Gary Kornman was the principal of the Debtor responsible for that relationship).  In assessing the claims that the estate may hold against Canada for the recovery of bonuses paid, it is first important to put the potential claim in perspective.  In this regard, while the records of the Debtor are incomplete, at best, with respect to the specific bonus amounts paid in relation to each particular client with whom Canada interacted, the Debtor's records nevertheless reflect that Canada was paid bonuses totaling approximately $3 million between 1999 and 2002.  This was part of the evidence introduced at the trial before the Court in Adversary No. 04-3338 (the "Canada Trial").  A significant portion of the $3 million amount, as asserted by the Kornman Parties at the Canada Trial, was paid to Canada on account of the fees received by the Debtor from the "Connecticut Client" (who has not filed a claim in the Bankruptcy Case and is not part of the Client Claimant settlement).  With respect to the balance of the bonuses received by Canada after deduction of the "Connecticut Client" amount, it is also important to take into account the Debtor's effective retention of 35% of the fees received by the Debtor from the Canada Clients under the settlement.  With these adjustments having been made, the Trustee believes that the amount at issue is likely significantly less than the roughly $2.2

million of the Canada Claim that is subordinated under the Amended Plan to both Class 4 <u>and</u>

<u>Class 5</u>.

Nevertheless, the Trustee also took into account the following significant hurdles that he

would face in pursuing the recovery of such bonus differential.  First, Canada has asserted that

any such claim would be barred by *res judicata* and/or collateral estoppel by virtue of the prior

arbitration award and claims objection proceedings that took place in connection with the

Canada Trial.  While the Trustee believes that such defense is overstated, Canada also asserted in

connection with the Canada Trial the corollary argument that the Debtor's breach of the

employment agreement, as orally modified, bars the estate's ability to recover any amounts

against Canada under the agreement.  In this regard, it is well-known that a party is generally

relieved of the obligation to perform under a contract that has been materially breached by the

other party.  *See, e.g., Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692-93 (Tex. 1994)

("A fundamental principle of contract law is that when one party to a contract commits a material

breach of that contract, the other party is discharged or excused from any obligation to

perform"); *see also Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (citing *Hernandez*

for the same proposition).  The Trustee believes that the estate faces significant risk under this

corollary argument.

Additionally, Canada has asserted that any claim that the estate may hold against him

under the employment agreement is barred by estoppel and/or the unenforceability of the

agreement against him.  "Equitable estoppel is based on the principle that 'one who by his

conduct has induced another to act in a particular manner should not be permitted to adopt an

inconsistent position and thereby cause loss or injury to another.'"  *Fiengo v. General Motors*

*Corp.*, 225 S.W.3d 858, 861 (Tex. App. – Dallas 2007, no pet.).  The defense of equitable

estoppel is established when (1) concealment of material facts, (2) is made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted upon, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations through omission. *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998)).  In this regard, the Trustee considered, among other things, the Declaration of Anthony Ellis of the IRS (which reflects that an initial IRS notice letter was sent to the Debtor in February 2001), the Debtor's production of what appears to be the initial IRS notice letter (suggesting that the Debtor received the letter), Canada's testimony that he was not informed of the initial IRS notice letter, and the fact that most of the Canada Clients filed their tax returns (the final step in "implementing" the 752 strategy) well after February 2001.  These factors, in the Trustee's opinion, present additional risk to the estate in relation to pursuit of bonus recovery claims against Canada.  *See also In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App. – Houston [14th Dist.] 2006, no pet.) (explaining that the doctrine of "unclean hands" is applicable to "one whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equitable righteous dealing").

Turning to the estate's claim of equitable subordination, Section 510(c) of the Bankruptcy Code provides that, after notice and a hearing, the Court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim."  11 U.S.C. § 510(c).  Equitable subordination is generally justified only if (a) the claimant engaged in inequitable conduct, (b) the misconduct resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (c) equitable subordination of the claim would not be inconsistent with the provisions of the

Bankruptcy Code. *Summit Coffee Company v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 130-31 (5th Cir. 1993). "Although the exact parameters of inequitable conduct have not been comprehensively or precisely delineated, such conduct does encompass: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) the claimant's use of the debtor … as a mere instrumentality or alter ego." *Id.* at 131. While the test and parameters applicable to subordination clearly support the subordination of the Kornman Parties claims as well as the remaining claims within Class 5 of the Amended Plan, Canada asserts that they do not square with his claim because his claim is almost exclusively based upon an unpaid bonus relating to a client (the "Connecticut Client") who did not file a claim in the Bankruptcy Case. In effect, Canada argues that there is no equitable basis, vis-à-vis the claims pending in the Bankruptcy Case, to subordinate his claim. While the Trustee disagrees and believes that he has a strong likelihood of success in a subordination action, he nevertheless recognizes there is risk based upon the unique nature of the Canada Claim and the fact that the Court has the discretion in any subordination action to only subordinate a portion of a claim, as opposed to the full amount of the claim. *See Herby's Foods*, 2 F.3d at 134 ("a claim should be subordinated only to the extent necessary to correct the harm or unfair advantage caused by the inequitable conduct").

Taking into account the risks associated with both the employment agreement and subordination claims, the Trustee believes that the settlement with Canada – whereby nearly $2.2 million of his claim will be subordinated to both Class 4 and Class 5 of the Amended Plan – is a reasonable and supported outcome.

### Expense and Delay

Next, the Trustee also considered the expense and delay that would be associated with pursuit of claims against Canada. In this regard, while the Trustee did not specifically quantify

the exact expense likely to be incurred by the estate in pursuing such claims in connection with

the prior Confirmation Hearing, he nevertheless considered the following significant factors

based upon his overall experience in the Bankruptcy Case and his prior involvement with Canada

in litigation: (a) Canada would hotly contest such claims; (b) pursuit of the claims would most

likely result in the estate incurring fees well in excess of $100,000 (excluding the expense of any

appeals) based upon the level of fees incurred in other hotly contested litigation in the case; (c)

Canada would likely appeal any rulings that are significantly adverse; and (d) the estate is

currently administratively insolvent.  Hence, the Trustee believes that the settlement with Canada

is further supported by these considerations.

### *Other Factors Bearing Upon the Wisdom of the Settlement*

Finally, the Trustee also believes that the settlement is supported by the remaining

recognized factors applicable to settlements.  First, as with the Client Claimant settlement, the

Canada settlement was the product of arms-length, extensive negotiation over an extended period

of time.  Second, the settlement is either supported or unopposed by all but two alleged creditors

in the case – the Kornman Parties.

For all of the foregoing reasons, the Trustee was justified in entering into the Canada

settlement in connection with the resolution of Canada's confirmation objections to the Original

Plan, and the settlement is fair and equitable and in the best interests of the estate.

**C.     The Amended Plan Complies with Section 1129(a)(7) – Holders of Claims Within
Class 5 Will Receive or Retain Under the Amended Plan at Least as Much as They
Would Recover in a Chapter 7 Liquidation**

Next, the Kornman Parties raise the new argument that the Amended Plan fails to satisfy

the "best interest of creditors" test of Section 1129(a)(7).  The Kornman Parties did not raise this

argument in connection with confirmation of the Original Plan and, therefore, the Plan

Proponents question whether the argument has been preserved in connection with the plan modifications made by and through the Amended Plan inasmuch as the plan modifications, if anything, benefit the Kornman Parties as opposed to harm them.  In this regard, not only does the Amended Plan eliminate the priority in payment afforded to Class 3 under the Original Plan, but it also provides for the subordination of nearly $2.2 million of the Canada Claim to claims within Class 5.

Thus, the Plan Proponents believe that the Kornman Parties' new Section 1129(a)(7) objection is premised upon the faulty understanding that the Amended Plan improperly provides a priority to certain claims within Class 4 – namely, the Allowed Small General Unsecured Claims and the Canada Non-Subordinated Claim – to the detriment of Class 5.  *See Kornman Parties' Objection*, at p. 9.  Such interpretation of the Amended Plan is mistaken.  Under the Amended Plan, Allowed Claims within both Class 4 and Class 5 will continue to share in the Net Available Funds on a pro rata basis.  *See* Amended Plan, §§ 4.4.1 and 4.5.3.  With respect to the pro rata portion underline(allocable to Class 4), however, the holders of claims within Class 4 have agreed to the redistribution of such distributions pursuant to Section 4.4.3 of the Amended Plan.  To ensure no misunderstanding on this point, Section 4.5.3 of the Amended Plan (relating to the treatment of Class 5) specifically includes the following proviso: "…*provided further* that the Pro Rata Share of the Net Available Funds from the Creditor Trust distributable on account of Allowed Insider Claims within Class 5 shall not be diminished or reduced in any way by virtue of the intraclass distribution priority provisions established for Class 4 pursuant to Section 4.4.3 of the Plan."

Even so, if the case were converted to Chapter 7, there is no doubt that the claims within

Class 5 would receive less favorable treatment. First, conversion would result in a re-opening of

the bar date which, in turn, would open the door to the following (among other possible) claims:

| Claimant | Potential Claim | Comments |
|---|---|---|
| Chace Claimants | 3,249,194 | Previously disallowed as untimely. *See* Plan Proponents' Exhibits P222-227. |
| Berg | 9,270,318 | Previously disallowed as untimely. *See* Plan Proponents' Exhibits P228-229. |
| Wilferth | 750,000 | Previously disallowed as untimely. *See* Plan Proponents' Exhibit P230. |
| "Connecticut Client" | 29,000,000+ | Did not timely assert claim. Has since initiated litigation against other parties involved in the planning. *See* Plan Proponents' Exhibit P267. |
| IRS | Unknown | Did not timely assert a promoter penalty claim. Investigation ongoing. *See, e.g.*, Plan Proponents' Exhibit P209, P266. |
| TOTAL: | 41,519,512+ | |

Second, Class 5 would lose the benefit of the subordination of nearly $2.2 million of the Canada

Claim to claims classified within Class 5. Finally, conversion would lead to an additional layer

of administrative expense as a result of the appointment of a Chapter 7 trustee in a case that is

already administratively insolvent.

**D.    The Amended Plan Complies with Section 1129(a)(10) – The Amended Plan Has Been Accepted by Two Impaired Classes of Claims**

For its fourth argument, the Kornman Parties claim that the Plan Proponents will not be

able to satisfy the requirements of Section 1129(a)(10) of the Bankruptcy Code once the votes of

the Client Claimants and Canada are disregarded. Of course, the Kornman Parties' argument is

predicated on the assumption that there are sufficient grounds to invalidate such votes – which

there are not.

While Section 1125(b) does provide that post-petition solicitation of votes on a plan may

not take place until after approval and dissemination of a disclosure statement, 11 U.S.C. §

1125(b), the evidence will establish that votes on the Amended Plan were not solicited until after

the approval and dissemination of both the original Disclosure Statement and the Supplemental

Disclosure Statement.  Moreover, while the Kornman Parties have asserted that they intend to move to designate the votes of each of the Client Claimants and Canada, to date no such motion has been filed.  Even if such a motion were filed and successful, which would not be the case, Class 4 will have still have accepted the Amended Plan based upon the votes cast by the holders of other claims within Class 4.

**E.  The Amended Plan Complies with Section 1129(a)(11) – The Amended Plan is a Plan of Liquidation and There Will Be Sufficient Resources to Consummate the Amended Plan if It is Confirmed**

Next, the Kornman Parties argue that the Plan Proponents have failed to satisfy the requirements of Section 1129(a)(11) of the Bankruptcy Code.  Section 1129(a)(11) requires a plan proponent to establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, *unless such liquidation or reorganization is proposed in the plan*."  11 U.S.C. § 1129(a)(11) (emphasis added).  The Amended Plan is a plan for liquidation. Accordingly, by its nature, it satisfies the literal requirements of Section 1129(a)(11) because it provides for the liquidation of the Debtor and assets transferred to the Creditor Trust (*i.e.* reserved causes of action), and even if the Creditor Trust is ultimately unsuccessful in recovering any amounts on the reserved causes of action (an extremely unlikely scenario), the result will not lead to the necessity of further reorganization or uncontemplated liquidation.

In support of their argument, the Kornman Parties cite *In re Barnes*, 309 B.R. 888 (Bankr. N.D. Tex. 2004).  The *Barnes* case is simply not on point because it involved a plan of reorganization – not a plan of liquidation.  In *Barnes*, the debtor held an 88% interest in Asgaard Interactive Multimedia, LLC ("Asgaard"), which in turn owned and operated an on-line radio station.  *See id.* at 890.  Under the debtor's proposed plan, 6% of the debtor's interest in Asgaard

would be transferred to the Campbells in satisfaction of their claims. *See id.* at 891. The Campbells objected to the plan on, among other grounds, lack of feasibility. In this regard, they argued that the joint ownership of Asgaard with the debtor would force the Campbells to be "joined at the hip" with the debtor and ultimately *lead to a liquidation*. *See id.* at 894. In overruling the objection, the court found that the debtor had a sound business plan for the further development of the on-line radio station and its eventual sale, and that "it is not likely that this Debtor's plan will be followed by a liquidation or further reorganization of *this* Debtor." *See id.* at 895 (emphasis in original). How this case has any bearing upon a plan of liquidation escapes the Plan Proponents.

Even so, the Plan Proponents will establish that, even with the passage of time and the additional expense incurred by the estate since the Confirmation Hearing, there will be sufficient resources available upon confirmation of the Amended Plan to (a) satisfy all priority claims, (b) make an initial distribution to Classes 4 and 5 (including reserved amounts), (c) fund the Creditor Trust with seed money to pursue the retained causes of action transferred to the Creditor Trust, and (d) otherwise reserve for the costs of administering the Creditor Trust.

**F.      The Amended Plan Complies with Section 1129(b) – The Amended Plan Does Not Unfairly Discriminate Against Class 5**

For their last confirmation objection, the Kornman Parties argue that the treatment of Class 5 under the Amended Plan is unfairly discriminatory. The Kornman Parties base such argument on the faulty premise that Class 5 will receive "dramatically worse treatment under the Amended Plan than many of the Class 4 claims." This is simply not true.

To the extent that Net Available Funds in the Creditor Trust exist after the satisfaction of all higher priority claims, then the distribution of such funds shall be made on a pro rata basis between Classes 4 and 5. *See* Amended Plan, §§ 4.4.1 and 4.5.3. How the holders of claims

within Class 4 determine to allocate their share of such distributions should be of no concern to the holders of Class 5 claims and, in any event, does not provide a basis for objection under Section 1129(b).   What matters is that Class 5 is treated no worse than Class 4 under the Amended Plan – which it is not.   In fact, arguably Class 5 is receiving better treatment given that the holders of the Client Claims have agreed to a substantial reduction in the amount of their claims as part of the Client Claimant settlement, and Canada has agreed to subordinate a substantial amount of the Canada Claim as part of the Canada settlement.   Accordingly, this final argument of the Kornman Parties likewise fails.

## IV.  THE KORNMAN PARTIES' MOTION FOR STAY PENDING APPEAL

Finally, the Kornman Parties attempt to incorporate into their objection a prophylactic motion for stay pending appeal.   Not only is the inclusion of such purported motion within their objection improper, but the motion is premature.   While the Plan Proponents understand the precautionary effort of the Kornman Parties in light of the fact that the Plan Proponents have set forth a plan that is clearly confirmable under Section 1129 of the Bankruptcy Code, the Kornman Parties' request effectively seeks an advance ruling on a matter that is not currently ripe for consideration.   Accordingly, the request should be denied as premature and the Kornman Parties should be required to separately file a motion for stay pending appeal after entry of the confirmation order, at which time the Plan Proponents will respond and set out their request for the Court's requirement of a bond or other security posted with the Court in the event the Court determines that such motion should be granted.

## V.  CONCLUSION

The Plan Proponents submit that they have proposed the Amended Plan in the utmost good faith effort to bring rational closure to a substantial portion of this case.   For all of the

reasons set forth herein and in the Plan Proponents' prior confirmation briefing to the Court, the

Plan Proponents firmly believe that the Amended Plan complies with Section 1129 of the

Bankruptcy Code, that it is fair and equitable, and that its confirmation is in the best interests of

the estate and creditors.  Accordingly, the Plan Proponents respectfully urge the Court to confirm

the Amended Plan.

Respectfully submitted on this 30th day of July, 2007.

| | |
|---|---|
| **MUNSCH HARDT KOPF & HARR, P.C.** | **GARDERE WYNNE SEWELL, LLP** |
| 500 N. Akard Street, Suite 3800 | 1000 Louisiana, Suite 3400 |
| Dallas, Texas 75201-6659 | Houston, Texas 77002-5007 |
| Telephone: (214) 855-7500 | Telephone: (713) 276-5500 |
| Facsimile: (214) 855-7584 | Facsimile: (713) 276-6752 |
| | |
| By: /s/ E. Lee Morris | By: /s/ John P. Melko (by permission DMP) |
|     E. Lee Morris (TBN 00788079) |     James G. Munisteri (TBN 14667380) |
|     Deborah M. Perry (TBN 24002755) |     John P. Melko (TBN 13919600) |
| | |
| **ATTORNEYS FOR CHAPTER 11 TRUSTEE** | **ATTORNEYS FOR JENKINS CLAIMANTS** |
| | |
| **KIRKPATRICK & LOCKHART** | **DINSMORE & SHOHL LLP** |
| **PRESTON GATES ELLIS LLP** | 255 E. 5th Street, Suite 1900 |
| 925 Fourth Avenue, Suite 2900 | Cincinnati, Ohio 45202 |
| Seattle, Washington 98104-1158 | Telephone: (513) 977-8216 |
| Telephone: (206) 370-6666 | Facsimile: (513) 977-8141 |
| Facsimile: (206) 370-6067 | |
| | By: /s/ Lawrence R. Elleman (by permission DMP) |
| By: /s/ Michael J. Gearin (by permission DMP) |     Lawrence R. Elleman (admitted pro hac vice) |
|     Michael J. Gearin (admitted pro hac vice) | |
| | **ATTORNEYS FOR LUTHER ROSS LOVE, JR.** |
| **ATTORNEYS FOR SKINNER CLAIMANTS** | |
| | |
| **JAY A. BRANDT, P.C.** | **HAYNES AND BOONE, LLP** |
| 3811 Turtle Creek Blvd., Suite 1600 | 901 Main Street, Suite 3100 |
| Dallas, Texas 75219 | Dallas, Texas 75202 |
| Telephone: (214) 969-7373 | Telephone: (214) 651-5000 |
| Facsimile: (214) 969-7648 | Facsimile: (214) 651-5940 |
| | |
| By: /s/ Jay A. Brandt (by permission DMP) | By: /s/ Scott W. Everett (by permission DMP) |
|     Jay A. Brandt (TBN 02882100) |     Robin E. Phelan (TBN 15903000) |
| |     Scott W. Everett (TBN 00796522) |
| **ATTORNEYS FOR RAINWATER, FLUHARTY,** | |
| **TROUTT, POWELL, WOODRUFF AND** | **ATTORNEYS FOR SANDWITH CLAIMANTS** |
| **PATTERSON CLAIMANTS** | |

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of July, 2007, a true and correct copy of the foregoing pleading was served by electronic and facsimile transmission on the following parties:

Jeffrey M. Tillotson, Esq.
Lynn Tillotson & Pinker LLP
750 N. Saint Paul, Suite 1400
Dallas, TX 75201
Fax:  (214) 981-3839
Email: jmt@lynnllp.com
*Counsel for GMK Family Holdings, LLC and Gary M. Kornman*

Jay A. Brandt, Esq.
Jay A. Brandt, P.C.
3811 Turtle Creek Blvd., Suite 1600
Dallas, Texas 75219
Fax:  (214) 969-7648
Email: jbrandt@smalouf.com
*Counsel for Rainwater, Fluharty, Troutt, Powell, Patterson and Woodruff Claimants*

Lawrence R. Elleman, Esq.
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
Fax:  (513) 977-8141
Email: Elleman@dinslaw.com
*Counsel for L. Ross Love, Jr.*

John P. Melko, Esq.
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
Fax: (713) 276-6752
Email: jmelko@gardere.com
*Counsel for Jenkins Claimants*

United States Trustee
c/o Nancy S. Resnick, Esq.
Office of U.S. Trustee
Fax: (214) 767-8971
Email: nancy.s.resnick@usdoj.gov

John P. Lewis, Jr., Esq.
Law Offices of John P. Lewis, Jr.
1412 Main Street, Suite 210
Dallas, Texas 75202
Fax: (214) 742-5928
Email: jplewisjr@mindspring.com
*Counsel for Ralph Canada, Jr.*

Michael J. Gearin, Esq.
K&L Gates
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Fax:  (206) 370-6067
Email: Michael.gearin@klgates.com
*Counsel for Skinner Claimants*

Scott W. Everett, Esq.
Haynes and Boone, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Fax:  (214) 200-0612
Email: scott.everett@haynesboone.com
*Counsel for Sandwith Claimants and Mikron Industries, Inc.*

David W. Parham, Esq.
Baker & McKenzie
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
Fax: (214) 978-3099
Email: david.w.parham@bakernet.com
*Counsel for Debtor*

/s/ Deborah M. Perry
Deborah M. Perry